UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SAMUEL M. ROBERTS,

                      Plaintiff,

-vs.-

LOS ALAMOS NATIONAL SECURITY, LLC.,
AWE, PLC., MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

                      Defendants.

**AMENDED COMPLAINT**

Civil No. 11 CV 6206L

---

The Plaintiff, by and through his attorney, Louis J. Micca, Esq., for his Complaint against above-named Defendants, alleges as follows:

**PARTIES**

1. At all relevant times, Plaintiff, Samuel M. Roberts (hereinafter "Roberts") was and is and individual, currently residing in the city of Rochester, State of New York.

2. At all relevant times, and upon information and belief, the Defendant, Los Alamos National Security, LLC., (hereinafter "Los Alamos") was and is a limited liability company maintaining an office at 3747 West Jemez Road, Los Alamos, NM 87544.

3. At all relevant times, and upon information and belief, Hans W. Herrmann, PhD., (hereinafter "Dr. Herrmann") was an employee of the defendant Los Alamos and was acting within the scope of his employment as a principal investigator of the DT Ratio experiment being conducted at the University of Rochester Laboratory for Laser Energetics on August 6, 2008.

4. At all relevant times, and upon information and belief, George Kyrala, (hereinafter "Dr. Kyrala") was an employee of the defendant Los Alamos and was acting

within the scope of his employment as a principal investigator of the DT Ratio experiment being conducted at the University of Rochester Laboratory for Laser Energetics on August 6, 2008.

5. At all relevant times, and upon information and belief, the Defendant, AWE PLC, (hereinafter "AWE") was and is a professional liability company registered in England and Wales maintaining and office at Aldermaston, Reading, Berkshire, RG7 4PR, United Kingdom.

6. At all relevant times, and upon information and belief, Colin Horsfield, (hereinafter "Dr. Horsfield") was an employee of the Defendant, AWE, and was acting within the scope of his employment as a principal investigator of the DT Ratio experiment being conducted at the University of Rochester Laboratory for Laser Energetics on August 6, 2008.

7. At all relevant times, and upon information and belief, the Defendant, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, (hereinafter "MIT") was and is a university maintaining and office at 77 Massachusetts Avenue, Cambridge, MA 02139-4307.

8. At all relevant times, and upon information and belief, Johan Frenje, (hereinafter "Dr. Frenje") was an employee of the Defendant, MIT, and was acting within the scope of his employment as a principal investigator of the DT Ratio experiment being conducted at the University of Rochester Laboratory for Laser Energetics on August 6, 2008.

9. At all relevant times, and upon information and belief, the University of Rochester owned and operated the OMEGA laser and associated equipment as part of its Laboratory for Laser Energetics located at 250 E. River Road, Rochester, New York 14623. (hereinafter "U of R").

10. At all relevant times, Roberts was an employee of the U of R assigned to work in the Laboratory for Laser Energetics as a technician.

11. On August 6, 2008, the OMEGA laser facility was in use as part of an experiment known as "DT Ratio".

12. Dr. Herrmann, Dr. Horsfield, Dr. Frenje, Dr. Kyrala and Vladimir Glebov (hereinafter "Dr. Glebov") were Principal Investigators of the DT Ratio experiment conducted on August 6, 2008.

13. Upon information and belief, Dr. Herrmann was the primary Principal Investigator of the DT Ratio experiment conducted on August 6, 2008.

14. Upon information and belief, Principal Investigators of experiments conducted within the Laboratory for Laser Energetics are jointly and severally responsible for ensuring the safe working environment for workers at the Laboratory for Laser Energetics including but not limited to the safety of the equipment present in the facility.

15. Upon information and belief, on August 6, 2008, during the DT Ratio experiment, an instrument called the High Yield Neutron Temporal Diagnostic, (otherwise known as the "Light Pipe") was being operated under pressure.

16. On that date, at the direction and with the knowledge of Dr. Glebov, Roberts entered the target bay of the OMEGA laser for the purpose of adjusting the pressure on the Light Pipe.

17. While Roberts was working below the Light Pipe, the Light Pipe and its support structure detached from the underside of the personnel platform structure where it was mounted causing it to fall. The Light Pipe and/or its structure struck Roberts on his head and face causing him serious personal injury.

18. Upon information and belief, at the relevant time, the Light Pipe and its support structure was secured to the underside of the personnel platform by three stainless steel ¼ – 20 bolts.

19. Upon information and belief, the mounting plate for the Light Pipe and its support structure was designed with four or five holes for mounting the structure to the underside of the personnel platform.

20. Upon information and belief, the mounting plate for the Light Pipe and its support structure was designed to be mounted with larger diameter bolts than the ¼ - 20 bolts used to secure said mounting plate.

21. Upon information and belief, the three ¼ - 20 bolts securing the mounting plate for the Light Pipe failed and the mounting plate, Light Pipe and supporting structure became detached from the underside of the personnel platform structure where it was mounted and fell injuring the Plaintiff.

22. Upon information and belief, if the mounting plate for the Light Pipe and its supporting structure had been properly secured with the proper number and sized bolts,

the Light Pipe and its supporting structure would not have detached from the underside of the personnel platform where it was mounted and would not have injured Plaintiff.

23. Upon information and belief, at the relevant time, the equipment in use during the DT Ratio experiment was not properly designed, constructed and/or maintained for safe operation during said experiment.

24. Upon information and belief, the lack of proper design, construction and/or maintenance of the equipment in use during the DT Ratio experiment contributed to the failure of the bolts securing the Light Pipe mounting plate and support structure and the injuries sustained by Plaintiff.

## AS AND FOR PLAINTIFF'S CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF ALLEGES AS FOLLOWS:

24. Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "23" above as if set forth herein at length.

25. The Principal Investigators for the DT Ratio experiment being conducted on August 8, 2008 owed a duty to Roberts to ensure a safe working environment at the Laboratory for Laser Energetics during the DT Ratio experiment conducted on August 6, 2008.

26. Defendants, Los Alamos, AWE and MIT, as employers of principal investigators Dr. Herrmann, Dr. Kyrala, Dr. Horsfield and Dr. Frenje, are jointly and severally responsible for the negligent acts and omissions of its respective employees while performing their duties in the scope of their employment as Principal Investigators in connection with the DT Ratio experiment being conducted on August 6, 2008.

27. Defendants, Los Alamos, AWE and MIT breached their duty to ensure a safe working environment including but not limited to the safety of the equipment

present in the facility on August 6, 2008 by failing to take reasonable precautions to secure the Light Pipe and its support structure to the personnel platform above the area where Roberts was working and by otherwise failing to ensure that the equipment in use during the DT Ratio experiment was properly designed, constructed and/or maintained for safe operation during said experiment.

28. The Defendants' actions and/or omissions constitute negligence.

29. As a result of the Defendants' negligence, Roberts sustained serious personal injury including but not limited to a fracture of his spine rendering him a quadriplegic, loss of an eye, fractures of multiple facial bones, disfiguring facial scarring, and severe pain and suffering that are permanent and will continue for the remainder of Robert's life without any negligence on the part of the Plaintiff contributing thereto.

30. As a further result of Defendants' negligence, Plaintiff has been damaged by reason of the uncovered cost of lost wages and decreased earning potential for the remainder of his life, as well as the uncovered cost of medical care and treatment and assistance with activities of daily living now required by reason of his injuries.

31. By reason of the foregoing, Plaintiff has been damaged in an amount of up to $15,000,000.00 plus the cost of covered medical care and treatment and covered lost wages.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants herein for damages sustained under the cause of action set forth above and in the amount of up to $15,000,000.00 plus the cost of covered medical care and treatment and covered lost wages or such other amount as a jury shall find to be fair, reasonable, adequate and just based upon the damages and pain and suffering sustained by the Plaintiff herein;

together with the costs and disbursements of this action and for such other and further relief as to this Court may seem just and proper.

DATED: July 26th, 2011
Rochester, New York

*[signature]*
LOUIS J. MICCA, ESQ.
Attorney for Plaintiff
11 State Street
Pittsford, New York 14534
Telephone: (585) 899-6031