UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

SAMUEL M. ROBERTS,

                             Plaintiff,

   -vs-

LOS ALAMOS NATIONAL SECURITY, LLC,
AWE, PLC, and MASSACHUSETTS INSTITUTE
OF TECHNOLOGY,

                             Defendants,
                         Third-Party Plaintiffs,       11-cv-6206(L)

   -vs-

UNIVERSITY OF ROCHESTER,

                          Third-Party Defendant.

───────────────────────────────

## **AFFIDAVIT**

COMMONWEALTH OF MASSACHUSETTS:
COUNTY OF MIDDLESEX:    ss.

      **JOHAN FRENJE,** being duly sworn, deposes and says:

      1.    I am employed by the Massachusetts Institute of Technology ("MIT").

      2.    I am a research scientist affiliated with MIT's Plasma Science and Fusion Center.

      3.    I am personally familiar with the University of Rochester's Laboratory for Laser Energetics ("LLE"), because LLE has permitted me and a small number of other MIT employees to utilize the LLE facility for plasma science research.

4. I was not present at LLE on August 6, 2008, the date of Sam Roberts' accident.

5. I was not actively conducting any research at LLE in connection with the "shots" that were occurring on August 6, 2008.

6. My only knowledge of any research or experiments being conducted on that date arises from the fact that Hans Herrmann, who is affiliated with the Los Alamos National Laboratory ("Los Alamos") requested that two diagnostic instruments designed by MIT and located at LLE be made available to collect data for Dr. Herrmann and Los Alamos.

7. I understand that my name was listed as a principal investigator on the shot request form, submitted in connection with an experiment which was conducted, in part, on August 6, 2008.

8. I deny that I was a "principal investigator" for that experiment; I did not complete that form; nor did I design, propose, or supervise that experiment in any way. My sole involvement with that experiment, as indicated above, was to consent to have MIT diagnostic instruments collect data for that experiment.

9. To my knowledge, those two diagnostic instruments have absolutely nothing to do with Mr. Roberts' injury on August 6, 2008.

10. Rather, it is my understanding that Mr. Roberts was injured when he was struck by an instrument known as the "Light Pipe".

11. The Light Pipe was not designed, constructed, installed, maintained, repaired, or operated by MIT or MIT personnel at any time.

12. To my knowledge, the Light Pipe was designed, constructed, installed, maintained, repaired, and operated solely by the University of Rochester ("University") personnel.

13. I do not recall ever seeing the Light Pipe prior to August 6, 2008. Furthermore, to my knowledge, no other MIT researcher at LLE ever had occasion to see the Light Pipe prior to that date.

14. That is because the Light Pipe was located within the OMEGA facility, in an area where MIT personnel did not have permission to enter.

15. On August 6, 2008, I had no personal knowledge of the use of pressurized $CO_2$ in the Light Pipe. Neither I nor any other MIT employee or researcher had anything to do in any way with any decision to change the pressure within the Light Pipe on that date or at any other time, for that matter.

16. MIT did not own, nor did it have any control over, the OMEGA facility where Sam Roberts' injury occurred.

17. To my knowledge, the OMEGA facility is owned by and within the exclusive control of the University.

18. At no time did I or any MIT employee train or supervise the plaintiff.

19. None of the MIT researchers was responsible for safety at LLE. Rather, the safety at LLE was the exclusive responsibility of the University.

*s/Johan Frenje*

Johan Frenje

Sworn to before me on the
  20th day of September 2012.

*s/Jane Jackson*

**Notary Public**

JANE JACKSON
Notary Public
Commonwealth of Massachusetts
My Commission Expires Feb. 15, 2013

3