**EXHIBIT 18**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SAMUEL M. ROBERTS,

        Plaintiff,

-vs-

LOS ALAMOS NATIONAL SECURITY, LLC,
AWE, PLC, and
MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,
        Defendants,
        Third-Party Plaintiffs,

-vs-

UNIVERSITY OF ROCHESTER,

        Third-Party Defendant.
_____

**UNIVERSITY OF ROCHESTER'S RESPONSE TO SAMUEL M. ROBERTS' RULE 36 REQUEST FOR ADMISSION**

Civil Case No.: 11-cv-6206(L)

**Third-Party Defendant, University of Rochester** ("UR"), by its attorneys, Ward Greenberg Heller & Reidy, LLP, responds to Plaintiff Samuel M. Roberts' Rule 36 Request for Admission, as follows:

**REQUEST FOR ADMISSION NO. 1:** On August 6, 2008, the date of Plaintiff's injury, an experiment known as DT Ratio (hereinafter "DT Ratio") was being conducted at the University of Rochester Laboratory for Laser Energetics (hereinafter "LLE").

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 2:** The first listed principal investigator for the DT Ratio experiment being conducted on August 6, 2008 was Dr. Hans W. Herrmann, an employee of Los Alamos National Security, LLC.

**RESPONSE:** Denied as stated. This Request fails to identify where Dr. Herrmann's name was "listed." Each shot of an experiment is associated with a UR/ LLE form entitled "Omega Shot Request Form." Upon information and belief, Request No. 2 above is based on an Omega Shot Request Form applicable to the experiment under way at the time of the incident at

**REQUEST FOR ADMISSION NO. 11:** As of August 6, 2008, the University of Rochester's Laser Facility Organization and Regulation Manual at section 4.3.1.5 provides, in part, that "During the actual execution of the experiments, the principal investigator will act as an advisor to the LLE Shot Director and may be called upon to render advice on whether to proceed with the planned experiments in the event of abnormal system performance."

**RESPONSE:** Admitted that LFORM section 4.3.1.5 contains the quoted language. However, the quoted paragraph goes on to state that "The Shot Director is in charge of the overall laser and target systems during a shot series." The Shot Director was always a UR employee. UR specifically denies that Section 4.3.1.5. or any other portion of the LFORM provided authority to a Principal Investigator employed by an entity other than UR to exercise control over the operation of the facility, including supervision of LLE employees, or the design, construction, installation, maintenance, repair or operation of the OMEGA laser or other associated diagnostics or equipment used at LLE. These responsibilities were reserved to employees of UR/LLE.

**REQUEST FOR ADMISSION NO. 12:** As of August 6, 2008, the University of Rochester maintained a National Laser Users' Facility-Users' Guide.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 13:** As of August 6, 2008, the University of Rochester required users of the LLE to comply with the regulations contained in the National Laser Users' Facility-Users' Guide.

**RESPONSE:** Denied. The National Laser Users' Facility-Users' Guide is a booklet available to users of LLE for purposes of familiarization and was (and is) not used operationally. Users of the Omega Facility were required to comply with the regulations contained in LFORM. Experiments originating from National Laboratories, such as Los Alamos were (and are) not National Laser Users' Facility experiments.

**REQUEST FOR ADMISSION NO. 14:** Los Alamos National Laboratory, LLC was a user of the LLE on August 6, 2008, as the term "user" is used in the University of Rochester's National Laser Users' Facility-Users' Guide.

**RESPONSE:** Denied. While Los Alamos National Laboratory, LLC was a user of the LLE on August 6, 2008, the experiment being conducted at the time of the incident at issue was not a National Laser Users' Facility experiment. Further, as noted in Response No. 13 above, the National Laser Users' Facility-Users' Guide is a booklet available to users of LLE for purposes of familiarization and was (and is) not used operationally.

**REQUEST FOR ADMISSION NO. 15:** AWE, Plc. was a user of the LLE on August 6, 2008, as the term "user" is used in the University of Rochester's National Laser Users' Facility-Users' Guide.

**RESPONSE:** Denied.

**REQUEST FOR ADMISSION NO. 16:** Massachusetts Institute of Technology was a user of the LLE on August 6, 2006, as the term "user" is used in the University of Rochester's National Laser Users' Facility-Users' Guide.

**RESPONSE:** Denied.

**REQUEST FOR ADMISSION NO. 17:** As of August 6, 2008, the University of Rochester's National Laser Users' Facility-Users' Guide required at section 4.2 that "Users must comply with all relevant safety policies and procedures in place at the UR/LLE."

**RESPONSE:** Admits that section 4.2 of the National Laser Users' Facility-Users' Guide contains the quoted language. However, as noted in Response No. 13 above, the National Laser Users' Facility-Users' Guide is a booklet available to users of LLE for purposes of familiarization and was (and is) not used operationally. Neither the National Laser Users' Facility-Users' Guide nor the LFORM provided authority to a Principal Investigator employed by an entity other than UR to exercise control over the operation of the facility, including supervision of LLE employees, or the design, construction, installation, maintenance, repair or operation of the OMEGA laser or other associated diagnostics or equipment used at LLE. These responsibilities were reserved to employees of UR/LLE.

**REQUEST FOR ADMISSION NO. 18:** As of August 6, 2008, the University of Rochester's National Laser Users' Facility-Users' Guide at section 4.2 required that safety at the University of Rochester Laboratory for Laser Energetics "is the responsibility of each user, regardless of activities".

**RESPONSE:** Admits that section 4.2 of the National Laser Users' Facility-Users' Guide contains the quoted language. However, as noted in Response No. 13 above, the National Laser Users' Facility-Users' Guide is a booklet available to users of LLE for purposes of familiarization and was (and is) not used operationally. Neither the National Laser Users' Facility-Users' Guide nor the LFORM provided authority to a Principal Investigator employed by an entity other than UR to exercise control over the operation of the facility, including supervision of LLE employees, or the design, construction, installation, maintenance, repair or operation of the OMEGA laser or other associated diagnostics or equipment used at LLE. These responsibilities were reserved to employees of UR/LLE.

Dated: March 5, 2012

WARD GREENBERG HELLER & REIDY LLP

_____
Eric J. Ward

*Attorneys for Third-Party Defendant,*
*University of Rochester*
300 State Street
Rochester, New York 14614
Tel.: (585) 454-0714
Fax: (585) 231-1921
eward@wardgreenberg.com

7