UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SAMUEL M. ROBERTS,

        Plaintiff,

vs.

LOS ALAMOS NATIONAL SECURITY, LLC, AWE, PLC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY,

        Defendants,
        Third-Party Plaintiffs,

vs.

UNIVERSITY OF ROCHESTER

        Third-Party Defendant.

**RESPONSE TO PLAINTIFF'S AMENDED RULE 36 REQUESTS FOR ADMISSION**

Civil No. 11 CV 6206L

    Defendant/Third-Party Plaintiff, Los Alamos National Security, LLC (hereinafter "Los Alamos"), by and through its attorneys, Woods Oviatt Gilman LLP, responds to Plaintiff's Amended Rule 36 Requests for Admission as follows:

### PRELIMINARY STATEMENT

    By responding to Plaintiff's Amended Request for Admission, Defendant Los Alamos does not waive any objections it may have regarding the use of information or regarding the truth or accuracy of any characterizations or assumptions contained in the request. Defendant Los Alamos reserves its rights to make all objections identified herein or object on other grounds as to the use or admissibility of the information provided, in whole or in part, or the subject matter covered thereby, in any proceeding or trial or in any other action. Defendant Los Alamos reserves its right to object on any and all proper grounds and it, in no way, admits as to the

authenticity, competency, relevance, materiality or admissibility of any of the information provided herein.

The responses of Defendant Los Alamos are, and will be, based upon information acquired thus far, and Defendant Los Alamos reserves the right to amend or supplement its responses in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

## GENERAL OBJECTIONS

1. Defendant Los Alamos objects to each request, instruction or definition to the extent that any of them seek to impose any obligation beyond that required by the Federal Rules of Civil Procedure or the Local Rules of this Court.

2. Defendant Los Alamos objects to each request to the extent it could be construed to seek information which may be covered by the attorney-client privilege, the work-product privilege, or any other applicable privilege doctrine.

3. Defendant Los Alamos objects to each request to the extent that it may be construed to seek information which is proprietary and/or confidential or otherwise restricted from disclosure to the general public.

## RESPONSES TO SPECIFIC REQUESTS FOR ADMISSION

1. On August 6, 2008, the date of Plaintiff's injury, an experiment known as DT Ratio (hereinafter "DT Ratio") was being conducted at the University of Rochester Laboratory for Laser Energetics (hereinafter "LLE").

**Response:**

Denied. DT Ratio refers to an experimental campaign series, and not to any single

experiment.

2.     The first listed principal investigator for the DT Ratio experiment being conducted on August 6, 2008 was Dr. Hans W. Herrmann, an employee of Los Alamos National Security, LLC.

**Response:**

Pursuant to the Order dated August 8, 2012 granting Plaintiff's motion to compel, admits that Dr. Hans W. Herrmann, an employee of Los Alamos National Security, LLC, is listed first on the University of Rochester Shot Request Form annexed as Exhibit "A" to Docket #48.

3.     The second listed principal investigator for the DT Ratio experiment being conducted on August 6, 2008 was Dr. Colin Horsfield, an employee of AWE, Plc.

**Response:**

Pursuant to the Order dated August 8, 2012 granting Plaintiff's motion to compel, admits that Dr. Colin Horsfield is listed second on the University of Rochester Shot Request Form annexed as Exhibit "A" to Docket #48. Upon information and belief, Dr. Horsfield was affiliated with AWE, Plc. at the relevant time.

4.     The third listed principal investigator for the DT Ratio experiment being conducted on August 6, 2008 was Dr. Johan Frenje, an employee of Massachusetts Institute of Technology.

**Response:**

Pursuant to the Order dated August 8, 2012 granting Plaintiff's motion to compel, admits that Dr. Johan Frenje is listed third on the University of Rochester Shot Request Form annexed as Exhibit "A" to Docket #48. Upon information and belief, Dr. Johan Frenje was affiliated with

Massachussetss Institute of Technology at the relevant time.

5. The fourth listed principal investigator for the DT Ratio experiment being conducted on August 6, 2008 was Dr. George Kyrala, an employee of Los Alamos National Security, LCC.

**Response:**

Pursuant to the Order dated August 8, 2012 granting Plaintiff's motion to compel, admits that Dr. George Kyrala is listed fourth on the University of Rochester Shot Request Form annexed as Exhibit "A" to Docket #48.

6. The fifth listed principal investigator for the DT Ratio experiment being conducted on August 6, 2008 was Dr. Vladimir Glebov, an employee of the University of Rochester.

**Response:**

Pursuant to the Order dated August 8, 2012 granting Plaintiff's motion to compel, admits that Dr. Vladimir Glebov is listed fifth on the University of Rochester Shot Request Form annexed as Exhibit "A" to Docket #48. Upon information and belief, Dr. Vladimir Glebov was affiliated with the University of Rochester at the relevant time.

7. As of August 6, 2008, the University of Rochester maintained the Laser Facility Organization and Regulation Manual produced by the U of R at bates numbers UR 88 through UR 231.

**Response:**

Based upon information and belief from the discovery responses produced by the University of Rochester, admits that as of August 6, 2008, U of R bates numbers UR 88 through

UR 231 reflect the existence of a Laser Facility Organization and Regulation Manual.

8. As of August 6, 2008, the University of Rochester required Principal Investigators to comply with the regulations contained in the Laser Facility Organization and Regulation Manual produced by the U of R at bates numbers UR 88 through UR 231.

**Response:**

Upon information and belief, denied. According to the Laboratory for Laser Energetics' website, the Laser Facility Organization and Regulation Manual "sets the stage for formal operations." See http://www.lle.rochester.edu/pub/viewgraph/PDF/G6/G6738.pdf. Further, based upon the discovery produced in this matter, it appears that the University of Rochester did not require Principal Investigators to comply with the contents of the Laser Facility Organization and Regulation Manual at the relevant time.

9. As of August 6, 2008, the University of Rochester's Laser Facility Organization and Regulation Manual produced by the U of R at bates numbers UR 88 through UR 231, at section 4.1, required Principal Investigators to complete an OMEGA familiarization before conducting their first experiment.

**Response:**

Based upon information and belief from the discovery responses produced by the University of Rochester, admits that the full content of the referenced manual is contained within the manual and denies any summary or quotation of the contents inconsistent with the plain language of that manual or out of context of the whole.

10. As of August 6, 2008, the OMEGA familiarization referred to above included a briefing on OMEGA and/or OMEGA EP capabilities, a review of Principal Investigator

responsibilities, a safety briefing, a Tour of OMEGA/OMEGA EP, observation or operations, target metrology and positioning requirements, and a briefing on diagnostic procedures.

**Response:**

Upon information and belief, denied. Upon information and belief, the orientation process changed over time and upon information and belief, not all principal investigators completed the specific "OMEGA familiarization" described in the foregoing paragraph.

11. As of August 6, 2008, the University of Rochester's Laser Facility Organization and Regulation Manual produced by the U of R at bates numbers UR 88 through UR 231, at section 4.3.1.5, in part, that "During the actual execution of the experiments, the principal investigator will act as an advisor to the LLE Shot Director and may be called upon to render advice on whether to proceed with the planned experiments in the event of abnormal system performance."

**Response:**

Based upon information and belief from the discovery responses produced by the University of Rochester, admits this quotation is contained within the manual but states that this quotation does not reflect the full content of the relevant provisions of the manual.

12. As of August 6, 2008, the University of Rochester maintained the National Laser Users' Facility-Users' Guide produced by the U of R at bates numbers UR 232 through UR 434.

**Response:**

Based upon information and belief from the discovery responses produced by the University of Rochester, admits that as of August 6, 2008, U of R bates numbers UR 232 through UR 434 reflect the existence of a Laser Facility Organization and Regulation Manual.

13. As of August 6, 2008, the University of Rochester required users of the LLE to comply with the regulations contained in the National Laser Users' Facility-Users' Guide produced by the U of R at bates numbers UR 232 through UR 434.

**Response:**

Upon information and belief, denied. Based upon the discovery produced in this matter, it appears that the University of Rochester did not require users of the LLE to comply with the contents of the National Laser Users' Facility-Users' Guide at the relevant time.

14. Los Alamos National Laboratory, LLC was a user of the LLE on August 6, 2008, as the term "user" is used in the University of Rochester's National Laser Users' Facility-Users' Guide produced by the U of R at bates numbers UR 232 through UR 434.

**Response:**

Upon information and belief, denied. Based upon the various governing documents produced in discovery and the referenced guide, the term "user" appears to refer to specific researchers and collaborative teams who have submitted proposals in response to the Department of Energy (DOE) National Nuclear Security Administration (NNSA)'s call for proposals and whose proposals have been accepted by the National Laser Users' Facility Steering Committee, and not to the institutions with whom specific researchers and teams may be affiliated.

15. AWE, Plc. was a user of the LLE on August 6, 2008, as the term "user" is used in the University of Rochester's National Laser Users' Facility-Users' Guide produced by the U of R at bates numbers UR 232 through UR 434.

**Response:**

Upon information and belief, denied. Based upon the various governing documents

produced in discovery and the referenced guide, the term "user" appears to refer to specific researchers and collaborative teams who have submitted proposals in response to the Department of Energy (DOE) National Nuclear Security Administration (NNSA)'s call for proposals and whose proposals have been accepted by the National Laser Users' Facility Steering Committee, and not to the institutions with whom specific researchers and teams may be affiliated.

16.  Massachusetts Institute of Technology was a user of the LLE on August 6, 2006, as the term "user" is used in the University of Rochester's National Laser Users' Facility-Users' Guide produce by the U of R at bates numbers UR 232 through UR 434.

**Response:**

Upon information and belief, denied. Based upon the various governing documents produced in discovery and the referenced guide, the term "user" appears to refer to specific researchers and collaborative teams who have submitted proposals in response to the Department of Energy (DOE) National Nuclear Security Administration (NNSA)'s call for proposals and whose proposals have been accepted by the National Laser Users' Facility Steering Committee, and not to the institutions with whom specific researchers and teams may be affiliated.

17.  As of August 6, 2008, the University of Rochester's National Laser Users' Facility-Users' Guide produced by the U of R at bates numbers UR 232 through UR 434, required at section 4.2 that "Users must comply with all relevant safety policies and procedures in place at the UR/LLE."

**Response:**

Based upon information and belief from the discovery responses produced by the University of Rochester, admits this quotation is contained within the manual but states that this

Woods Oviatt Gilman LLP
700 Crossroads Building
2 State Street
Rochester, New York 14614

quotation does not reflect the full content of the relevant provisions of the manual.

18.   As of August 6, 2008, the University of Rochester's National Laser Users' Facility-Users' Guide produced by the U of R at bates numbers UR 232 through UR 434, at section 4.2 required that safety at the University of Rochester Laboratory for Laser Energetics "is the responsibility of each user, regardless of activities."

**Response:**

Based upon information and belief from the discovery responses produced by the University of Rochester, admits this quotation is contained within the manual but states that this quotation does not reflect the full content of the relevant provisions of the manual.

Dated: September 5, 2012
       Rochester, New York

WOODS OVIATT GILMAN LLP

By: _____
Greta K. Kolcon, Esq.
Beryl Nusbaum, Esq.
*Attorneys for Defendant/Third-Party Plaintiff Los Alamos National Security LLC*
700 Crossroads Building
2 State Street
Rochester, New York 14614
585.987.2800

TO:   Louis J. Micca, Esq.
      *Attorneys for Plaintiff*
      11 State Street
      Pittsford, New York 14534
      585.899.6031

# VERIFICATION

STATE OF NEW YORK  
COUNTY OF MONROE    ss:

  The undersigned, an attorney admitted to practice in the courts of New York State, shows: that Deponent is the attorney of record for Los Alamos National Security, LLC in the within action; that Deponent has read the foregoing Response to Plaintiff's Amended Rule 36 Requests for Admission and knows the contents thereof; that the same is true to Deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters Deponent believes it to be true. Deponent further says that the reason this verification is made by Deponent and not by a representative of Los Alamos National Security, LLC is that Los Alamos National Security, LLC is not located in the county in which your Deponent has an office.

  The undersigned affirms that the foregoing statements are true, under penalties of perjury.

                 _____  
                 Beryl Nusbaum, Esq.

Sworn to before me this  
5th day of September, 2012.

_____  
Notary Public

Amy L. Blakley  
Notary Public, State of New York  
No. 01BL6170635  
Qualified in Monroe County  
Commission Expires July 9, 201_

{1592942:}

Woods Oviatt Gilman LLP  
700 Crossroads Building  
2 State Street  
Rochester, New York 14614