Exhibit A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SAMUEL M. ROBERTS,

                                   Plaintiff,

   -vs.-

LOS ALAMOS NATIONAL SECURITY, LLC.,
AWE, PLC., MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

                                   Defendants.

_____

**AMENDED COMPLAINT**

**Civil No. 11 CV 6206L**

The Plaintiff, by and through his attorney, Louis J. Micca, Esq., for his Complaint
against above-named Defendants, alleges as follows:

### PARTIES

1.    At all relevant times, Plaintiff, Samuel M. Roberts (hereinafter "Roberts")
was and is and individual, currently residing in the city of Rochester, State of New York.

2.    At all relevant times, and upon information and belief, the Defendant, Los
Alamos National Security, LLC., (hereinafter "Los Alamos") was and is a limited liability
company maintaining an office at 3747 West Jemez Road, Los Alamos, NM 87544.

3.    At all relevant times, and upon information and belief, Hans W. Herrmann,
PhD., (hereinafter "Dr. Herrmann") was an employee of the defendant Los Alamos and
was acting within the scope of his employment as a principal investigator of the DT
Ratio experiment being conducted at the University of Rochester Laboratory for Laser
Energetics on August 6, 2008.

4.    At all relevant times, and upon information and belief, George Kyrala,
(hereinafter "Dr. Kyrala") was an employee of the defendant Los Alamos and was acting

within the scope of his employment as a principal investigator of the DT Ratio experiment being conducted at the University of Rochester Laboratory for Laser Energetics on August 6, 2008.

5.     At all relevant times, and upon information and belief, the Defendant, AWE PLC, (hereinafter "AWE") was and is a professional liability company registered in England and Wales maintaining and office at Aldermaston, Reading, Berkshire, RG7 4PR, United Kingdom.

6.     At all relevant times, and upon information and belief, Colin Horsfield, (hereinafter "Dr. Horsfield") was an employee of the Defendant, AWE, and was acting within the scope of his employment as a principal investigator of the DT Ratio experiment being conducted at the University of Rochester Laboratory for Laser Energetics on August 6, 2008.

7.     At all relevant times, and upon information and belief, the Defendant, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, (hereinafter "MIT") was and is a university maintaining and office at 77 Massachusetts Avenue, Cambridge, MA 02139-4307.

8.     At all relevant times, and upon information and belief, Johan Frenje, (hereinafter "Dr. Frenje") was an employee of the Defendant, MIT, and was acting within the scope of his employment as a principal investigator of the DT Ratio experiment being conducted at the University of Rochester Laboratory for Laser Energetics on August 6, 2008.

9. At all relevant times, and upon information and belief, the University of Rochester owned and operated the OMEGA laser and associated equipment as part of its Laboratory for Laser Energetics located at 250 E. River Road, Rochester, New York 14623. (hereinafter "U of R").

10. At all relevant times, Roberts was an employee of the U of R assigned to work in the Laboratory for Laser Energetics as a technician.

11. On August 6, 2008, the OMEGA laser facility was in use as part of an experiment known as "DT Ratio".

12. Dr. Herrmann, Dr. Horsfield, Dr. Frenje, Dr. Kyrala and Vladimir Glebov (hereinafter "Dr. Glebov") were Principal Investigators of the DT Ratio experiment conducted on August 6, 2008.

13. Upon information and belief, Dr. Herrmann was the primary Principal Investigator of the DT Ratio experiment conducted on August 6, 2008.

14. Upon information and belief, Principal Investigators of experiments conducted within the Laboratory for Laser Energetics are jointly and severally responsible for ensuring the safe working environment for workers at the Laboratory for Laser Energetics including but not limited to the safety of the equipment present in the facility.

15. Upon information and belief, on August 6, 2008, during the DT Ratio experiment, an instrument called the High Yield Neutron Temporal Diagnostic, (otherwise known as the "Light Pipe") was being operated under pressure.

16.     On that date, at the direction and with the knowledge of Dr. Glebov, Roberts entered the target bay of the OMEGA laser for the purpose of adjusting the pressure on the Light Pipe.

17.     While Roberts was working below the Light Pipe, the Light Pipe and its support structure detached from the underside of the personnel platform structure where it was mounted causing it to fall. The Light Pipe and/or its structure struck Roberts on his head and face causing him serious personal injury.

18.     Upon information and belief, at the relevant time, the Light Pipe and its support structure was secured to the underside of the personnel platform by three stainless steel ¼ – 20 bolts.

19.     Upon information and belief, the mounting plate for the Light Pipe and its support structure was designed with four or five holes for mounting the structure to the underside of the personnel platform.

20.     Upon information and belief, the mounting plate for the Light Pipe and its support structure was designed to be mounted with larger diameter bolts than the ¼ - 20 bolts used to secure said mounting plate.

21.     Upon information and belief, the three ¼ - 20 bolts securing the mounting plate for the Light Pipe failed and the mounting plate, Light Pipe and supporting structure became detached from the underside of the personnel platform structure where it was mounted and fell injuring the Plaintiff.

22.     Upon information and belief, if the mounting plate for the Light Pipe and its supporting structure had been properly secured with the proper number and sized bolts,

the Light Pipe and its supporting structure would not have detached from the underside of the personnel platform where it was mounted and would not have injured Plaintiff.

23. Upon information and belief, at the relevant time, the equipment in use during the DT Ratio experiment was not properly designed, constructed and/or maintained for safe operation during said experiment.

24. Upon information and belief, the lack of proper design, construction and/or maintenance of the equipment in use during the DT Ratio experiment contributed to the failure of the bolts securing the Light Pipe mounting plate and support structure and the injuries sustained by Plaintiff.

## AS AND FOR PLAINTIFF'S CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF ALLEGES AS FOLLOWS:

24. Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "23" above as if set forth herein at length.

25. The Principal Investigators for the DT Ratio experiment being conducted on August 8, 2008 owed a duty to Roberts to ensure a safe working environment at the Laboratory for Laser Energetics during the DT Ratio experiment conducted on August 6, 2008.

26. Defendants, Los Alamos, AWE and MIT, as employers of principal investigators Dr. Herrmann, Dr. Kyrala, Dr. Horsfield and Dr. Frenje, are jointly and severally responsible for the negligent acts and omissions of its respective employees while performing their duties in the scope of their employment as Principal Investigators in connection with the DT Ratio experiment being conducted on August 6, 2008.

27. Defendants, Los Alamos, AWE and MIT breached their duty to ensure a safe working environment including but not limited to the safety of the equipment

present in the facility on August 6, 2008 by failing to take reasonable precautions to secure the Light Pipe and its support structure to the personnel platform above the area where Roberts was working and by otherwise failing to ensure that the equipment in use during the DT Ratio experiment was properly designed, constructed and/or maintained for safe operation during said experiment.

28.     The Defendants' actions and/or omissions constitute negligence.

29.     As a result of the Defendants' negligence, Roberts sustained serious personal injury including but not limited to a fracture of his spine rendering him a quadriplegic, loss of an eye, fractures of multiple facial bones, disfiguring facial scarring, and severe pain and suffering that are permanent and will continue for the remainder of Robert's life without any negligence on the part of the Plaintiff contributing thereto.

30.     As a further result of Defendants' negligence, Plaintiff has been damaged by reason of the uncovered cost of lost wages and decreased earning potential for the remainder of his life, as well as the uncovered cost of medical care and treatment and assistance with activities of daily living now required by reason of his injuries.

31.     By reason of the foregoing, Plaintiff has been damaged in an amount of up to $15,000,000.00 plus the cost of covered medical care and treatment and covered lost wages.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants herein for damages sustained under the cause of action set forth above and in the amount of up to $15,000,000.00 plus the cost of covered medical care and treatment and covered lost wages or such other amount as a jury shall find to be fair, reasonable, adequate and just based upon the damages and pain and suffering sustained by the Plaintiff herein;

6

together with the costs and disbursements of this action and for such other and further relief as to this Court may seem just and proper.

DATED:     July _26_, 2011
                Rochester, New York

                                LOUIS J. MICCA, ESQ.
                                Attorney for Plaintiff
                                11 State Street
                                Pittsford, New York 14534
                                Telephone: (585) 899-6031

# Exhibit B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SAMUEL M. ROBERTS,

                      Plaintiff,

      -against-

LOS ALAMOS NATIONAL SECURITY, LLC,
AWE, PLC, MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

                    Defendants.

11 CV 6206 (L)

**AWE, PLC'S ANSWER TO
AMENDED COMPLAINT
AND CROSS-CLAIM**

Defendant AWE, PLC (hereinafter "AWE"), by its attorneys, Holland & Knight LLP for its Answer to Plaintiff's Amended Complaint herein:

1.      Admits the allegations in Paragraphs "5" and "9".

2.      Denies knowledge or information sufficient to form a belief as to the allegations in Paragraphs "1", "2", "3", "4", "7", "8", "10", "11", "13", "15", "16", "17", "18", "19", "20", "21", "22", "23", and "24".

3.      Admits the allegations in Paragraph "6" that Dr. Horsfield was an employee of the Defendant, AWE, and was acting in the scope of his employment.  Denies the allegations in Paragraph "6" that Dr. Horsfield was acting within the scope of his employment as a Principal Investigator of the DT Ratio experiment being conducted at the University of Rochester on August 6, 2008.

4.      Denies the allegations in Paragraph "12" that Dr. Horsfield was a Principal Investigator of the DT Ratio experiment conducted on August 6, 2008.   Denies the knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph "12".

5.    Denies the allegations in Paragraphs "14" and "25" to "31" of the Amended Complaint.

6.    In response to the allegations in the second numbered Paragraph 24 of the Amended Complaint, defendant AWE repeats and realleges its responses to Paragraphs "1" to "24".

7.    Denies each and every other allegation not heretofore either specifically admitted or denied.

**AS AND FOR A FIRST SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE, DEFENDANT AWE, PLC, ALLEGES:**

8.    That the cause of action set forth in Plaintiff's Amended Complaint is barred by the applicable statue of limitations.

**AS AND FOR A SECOND SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE, DEFENDANT AWE, PLC, ALLEGES:**

9.    That the injuries and damages alleged in Plaintiff's Amended Complaint were caused or contributed to, in whole or in part, by the assumption of risk by the Plaintiff or by the conduct of others over whom AWE exercised no control.

**AS AND FOR A THIRD SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE, DEFENDANT AWE, PLC, ALLEGES:**

10.    That Plaintiff has failed to join necessary parties.

**AS AND FOR A FOURTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE, DEFENDANT AWE, PLC, ALLEGES:**

11.    That whatever damages Plaintiff may have sustained at the time and place alleged in the Amended Complaint were caused, in whole or in part, or contributed to by the culpable conduct of the Plaintiff or the negligence of others over whom AWE exercised no control, without there being any negligence or fault or lack of care on the part of AWE.

2

## AS AND FOR A FIFTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE, DEFENDANT AWE, PLC, ALLEGES:

12.     That, upon information and belief, the accident and the injuries complained of were caused or contributed to by Plaintiff's misuse of the equipment on which he was working and his failure to follow instructions and take the necessary precautions in connection with the work he was doing on the equipment in question.

## AS AND FOR A SIXTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE, DEFENDANT AWE, PLC, ALLEGES:

13.     That Plaintiff's Amended Complaint fails to state a cause of action upon which relief may be granted.

## AS AND FOR A SEVENTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE, DEFENDANT AWE, PLC, ALLEGES:

14.     That, upon information and belief, any past or future costs, expenses or damages incurred, or which will be incurred, by the Plaintiff as alleged in the Amended Complaint, have been or will be with reasonable certainty, replaced or indemnified, in whole or in part, from a collateral source, as that term is defined by Section 4545(c) of the New York Civil Practice Law and Rules.

15.     That, by reason thereof, if any damages are recovered against AWE, the amount of any such damages must be diminished by the amount of the reimbursement or indemnification which Plaintiff has or shall receive from such collateral source.

## AS AND FOR A EIGHTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE, DEFENDANT AWE, PLC, ALLEGES:

16.     That the Amended Complaint is barred, in whole or in part, or subject to reduction pursuant to the doctrines of superseding and/or intervening causes and/or negligence, insofar as

#10706256_v1

the actions or negligence of other persons or entities proximately caused or contributed to the alleged incident and/or the alleged damages.

### AS AND FOR A CROSS-CLAIM, DEFENDANT, AWE, PLC ALLEGES:

17.    That to the extent that the injury and damages alleged in Plaintiff's Amended Complaint were caused by the Co-Defendants, Los Alamos National Security, LLC ("LANS") and Massachusetts Institute of Technology ("MIT"), Defendant AWE is not liable under the common law of the State of the New York.

18.    That if any judgment for damages, costs or any other recovery is rendered against AWE, then the Co-Defendants, LANS and MIT are responsible, in whole or in part, and Defendant AWE is entitled to indemnity or contribution under the applicable statutes or common law from those Defendants for any such judgment.

**WHEREFORE**, Defendant, AWE, PLC demands judgment as follows:

    a.  Dismissing the Amended Complaint of Plaintiff herein;

    b.  Allocating the liability of the parties to this proceeding proportionate to the relative degree of culpability of Plaintiff, other contributing third-parties and AWE;

    c.  Awarding AWE the costs and disbursements of this action;

    d.  Awarding AWE attorney's fees; and

    e.  Awarding such other and further relief as to the Court may seem just and proper.

4

Dated:  October 31, 2011
         New York, New York

                                    HOLLAND & KNIGHT LLP


                                    By: /s/ Christine Tramontano
                                    Sean C. Sheely, Esq.
                                    Christine Tramontano, Esq.
                                    *Attorneys for Defendant, AWE, PLC*
                                    31 West 52nd Street
                                    New York, New York 10019
                                    (212) 513-3200
                                    sean.sheely@hklaw.com
                                    christine.tramontano@hklaw.com


                                    Phillip T. Evans, Esq. (*pro hac vice* to be submitted)
                                    Harmony Loube, Esq.
                                    2099 Pennsylvania Avenue, N.W., Suite 100
                                    Washington DC 20006
                                    Phone 202-457-7043
                                    philip.evans@hklaw.com
                                    harmony.loube@hklaw.com


TO:    **VIA ECF**

       Louis J. Micca, Esq.
       *Attorney for Plaintiff*
       11 State Street
       Pittsford, New York 14534
       (585) 899-6031
       lmicca@msn.com

       Beryl Nusbaum, Esq.
       *Attorneys for Defendant Los Alamos National Security, LLC*
       700 Crossroads Building
       Two State Street
       Rochester, New York 14614
       (585) 987-2800
       bnusbaum@woodsoviatt.com

David Rothenberg, Esq.
Geiger and Rothenberg, LLP
*Attorneys for Defendant Massachusetts Institute of Technology*
45 Exchange Street, Suite 800
Rochester, New York 14614
Tel: (585) 232-1946
Fax: (585) 232-4746
drothenberg@geigroth.com

Eric J. Ward, Esq.
Ward Greenberg Heller & Reidy LLP
*Attorneys for University of Rochester*
300 State Street, 6th Floor
Rochester, NY 14614
eward@wardgreenberg.com

## <u>CERTIFICATE OF SERVICE</u>

I, Christine Tramontano, Esq. attorney of record for Defendant, AWE, PLC, in the above-styled and referenced matter, do hereby certify that on October 31, 2011, I caused to be electronically filed the Answer of Defendant AWE, PLC, using the CM/ECF system which served on and sent notification of such filing to the following:

> Louis J. Micca, Esq.
> *Attorney for Plaintiff*
> 11 State Street
> Pittsford, New York 14534
> 585.899.6031
> lmicca@msn.com
>
> Beryl Nusbaum, Esq.
> *Attorneys for Defendant,*
>   *Los Alamos National Security, LLC*
> 700 Crossroads Building
> Two State Street
> Rochester, New York 14614
> 585.987.2800
> bnusbaum@woodsoviatt.com
>
> David Rothenberg, Esq.
> Geiger and Rothenberg, LLP
> *Attorneys for Defendant Massachusetts Institute of Technology*
> 45 Exchange Street, Suite 800
> Rochester, New York 14614
> Tel: (585) 232-1946
> Fax: (585) 232-4746
> drothenberg@geigroth.com
>
> Eric J. Ward, Esq.
> Ward Greenberg Heller & Reidy LLP
> *Attorneys for University of Rochester*
> 300 State Street, 6th Floor
> Rochester, NY 14614

7

THIS, the 31st day of October, 2011.

HOLLAND & KNIGHT LLP


By: <u>/s/ Christine Tramontano</u>
Christine Tramontano, Esq.
*Attorneys for Defendant, AWE, PLC*
31 W. 52nd Street
New York, New York 10019
(212) 955-3000
christine.tramontano@hklaw.com

Exhibit C

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMUEL M. ROBERTS, | 11-cv-6206(L) |
| Plaintiff, | |
| -vs- | |
| LOS ALAMOS NATIONAL SECURITY, LLC, AWE, PLC, and MASSACHUSETTS INSTITUTE OF TECHNOLOGY, | |
| Defendants, | |
| AWE, PLC, | |
| Third-Party Plaintiff, | |
| -vs- | |
| University of Rochester, | |
| Third-Party Defendant. | |

## THIRD-PARTY COMPLAINT

Third-party plaintiff, AWE, PLC ("AWE"), for its third-party complaint against third-party

defendant, University of Rochester ("U/R"), alleges upon information and belief as follows:

### PARTIES

1.      Third-party plaintiff, AWE, is named as a defendant in an Amended Complaint

("Complaint") which was filed on July 26, 2011.

2.      Upon information and belief, third-party defendant, U/R is a New York educational

corporation with its principal offices in the State of New York, County of Monroe.

3.      The Plaintiff in the Complaint in this action, Samuel M. Roberts ("Plaintiff") alleges

that he was an employee of the U/R on August 6, 2008, when he was injured at the Laboratory for

Laser Energetics.

4.      In his Complaint, Plaintiff alleges that defendant and third-party plaintiff AWE is liable to him because AWE was supposedly "responsible for ensuring the safe working environment for workers at the Laboratory for Laser Energetics".   (Complaint, ¶ 14).

5.      In his Complaint, Plaintiff further alleges that third-party defendant U/R owned and operated the OMEGA Laser and associated equipment, as part of the Laboratory for Laser Energetics.

## THIRD-PARTY CLAIM

6.      Upon information and belief, Plaintiff sustained a grave injury, as defined by New York Workers Compensation Law, on August 6, 2008.

7.      The premises where Plaintiff's injury occurred were owned by and at all relevant times were under the exclusive control of third-party defendant U/R.

8.      The equipment that caused Plaintiff's injury was owned by and at all relevant times was under the exclusive control of third-party defendant U/R.

9.      AWE did not own or control either the premises where Plaintiff's injury occurred, or the equipment that caused Plaintiff's injury.

10.     Third-party defendant U/R was solely responsible for the maintenance and operation of the OMEGA Laser and the equipment that caused Plaintiff's injuries on August 6, 2008.

11.     Third-party defendant U/R was solely responsible for safety at the Laboratory for Laser Energetics.

12.     AWE had no responsibility for the operation or maintenance of the OMEGA Laser at the Laboratory for Laser Energetics.

13.    AWE had no responsibility for the safety of employees of the U/R, who were involved in the operation and/or maintenance of the OMEGA Laser at the Laboratory for Laser Energetics.

14.    Third-party defendant U/R was negligent in its maintenance and operation of the OMEGA Laser at the Laboratory for Laser Energetics.

15.    Third-party defendant U/R was negligent in its installation, maintenance, and operation of equipment associated with the OMEGA laser at the Laboratory for Laser Energetics.

16.    The negligence of third-party defendant U/R proximately caused plaintiff's injuries.

17.    The damages sustained by Plaintiff, if any, were caused solely by third parties, without any fault or liability on the part of AWE.

18.    In the event that Plaintiff establishes liability against defendant and third-party plaintiff AWE in the underlying action, third-party plaintiff will be entitled to contribution and/or indemnity from third-party defendant U/R.

**WHEREFORE,** in the event that a judgment is rendered against defendant and third-party plaintiff AWE, third-party plaintiff demands judgment against third-party defendant U/R, for contribution and/or indemnity, in an amount equal to any judgment in favor of the plaintiff, together with the costs and disbursements of this action.

Dated: November 14, 2011
      New York, New York

HOLLAND & KNIGHT LLP

By: /s/Christine Tramontano
Sean C. Sheely, Esq.
Christine Tramontano, Esq.
*Attorneys for Defendant, AWE, PLC*
31 West 52nd Street
New York, New York 10019
(212) 513-3200
sean.sheely@hklaw.com
christine.tramontano@hklaw.com

Phillip T. Evans, Esq. (*pro hac vice* to be submitted)
Harmony Loube, Esq.
2099 Pennsylvania Avenue, N.W., Suite 100
Washington DC 20006
Phone 202-457-7043
philip.evans@hklaw.com
harmony.loube@hklaw.com

## CERTIFICATE OF SERVICE

I, Christine Tramontano, Esq. attorney of record for Defendant, AWE, PLC, in the above-styled and referenced matter, do hereby certify that on November 14, 2011, I caused to be electronically filed the Third-Party Complaint of Third-Party Plaintiff AWE, PLC, using the CM/ECF system which served on and sent notification of such filing to the following:

Louis J. Micca, Esq.
*Attorney for Plaintiff*
11 State Street
Pittsford, New York 14534
585.899.6031
lmicca@msn.com

Beryl Nusbaum, Esq.
*Attorneys for Defendant,*
 *Los Alamos National Security, LLC*
700 Crossroads Building
Two State Street
Rochester, New York 14614
585.987.2800
bnusbaum@woodsoviatt.com

David Rothenberg, Esq.
Geiger and Rothenberg, LLP
*Attorneys for Defendant Massachusetts Institute of Technology*
45 Exchange Street, Suite 800
Rochester, New York 14614
Tel: (585) 232-1946
Fax: (585) 232-4746
drothenberg@geigroth.com

Eric J. Ward, Esq.
Ward Greenberg Heller & Reidy LLP
*Attorneys for University of Rochester*
300 State Street, 6th Floor
Rochester, NY 14614

THIS, the 14th day of November, 2011.

HOLLAND & KNIGHT LLP


By: /s/ Christine Tramontano
Christine Tramontano, Esq.
*Attorneys for Defendant, AWE, PLC*
31 W. 52nd Street
New York, New York 10019
(212) 955-3000
christine.tramontano@hklaw.com


#10752087_v1

AO440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMUEL M. ROBERTS, | |
| Plaintiff, | 11-cv-6206(L) |
| -vs- | **SUMMONS IN A CIVIL ACTION** |
| LOS ALAMOS NATIONAL SECURITY, LLC, AWE, PLC, and MASSACHUSETTS INSTITUTE OF TECHNOLOGY, | |
| Defendants, | |
| AWE, PLC, | |
| Third-Party Plaintiff, | |
| -vs- | |
| University of Rochester, | |
| Third-Party Defendant. | |

TO:      University of Rochester
         Rochester, NY 14627

**YOU ARE HEREBY SUMMONED** and required to serve on THIRD-PARTY PLAINTIFF'S ATTORNEY
(name and address)

> Christine Tramontano
> Holland & Knight LLP
> 31 W. 52nd Street
> New York, NY 10019

an answer to the complaint which is served on you with this summons, within ___21___ days after service of this summon on you, exclusive of the day of service.  If you fail to do so, judgment by default will b taken against you for the relief demanded in the complaint.  Any answer that you serve on the parties of this action must be filed with the Clerk of this Court within a reasonable period of time after service.

_____        _____
CLERK                                           DATE

_____
(By) DEPUTY CLERK

AO440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and complaint was made by me (1) | DATE |
| NAME OF SERVER (*PRINT*) | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify)

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
              Date                         *Signature of Server*

                               _____
                                *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

#9662749_v1

Exhibit D

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SAMUEL M. ROBERTS,

               Plaintiff,

    -vs-

LOS ALAMOS NATIONAL SECURITY, LLC,
AWE, PLC, and
MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

               Defendants,
               Third-Party Plaintiffs,

    -vs-

UNIVERSITY OF ROCHESTER,

               Third-Party Defendant.

_____

**AFFIDAVIT OF VLADIMIR GLEBOV IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Civil Case No.:  11-cv-6206(L)

STATE OF NEW YORK    )
COUNTY OF MONROE    )     ss.:

     Dr. Vladimir Glebov, being duly sworn, deposes and says:

    1.     I am a senior scientist at the Laboratory for Laser Energetics ("LLE").  I am employed by the University of Rochester ("University").

    2.     My area of expertise is neutron diagnostics, which is the measurement of neutrons produced by the fusion implosion that occurs when a laser is fired at a spherical target containing nuclear fuel.  I am the scientist responsible for the development and operation of neutron diagnostic instruments ("neutron diagnostics") for use in the LLE's Omega Laser Facility ("Omega Facility").  These neutron diagnostics include sophisticated scientific instruments used

during the execution of a laser shot to measure the amount of neutrons produced in that shot, as well as other shot parameters that can be inferred from their use.

3.      Given my expertise in neutron diagnostics, I am involved in the development and operation processes for most of the neutron diagnostics in use in the Omega Facility.  In addition, my responsibilities include ensuring that the neutron diagnostics are properly set up to optimize the collection of data during a shot.  Typically, I am included as a secondary principal investigator on Omega Facility experiments which anticipate the use of neutron diagnostics.

4.      One of the neutron diagnostics available in the Omega Facility is called the Neutron Temporal Diagnostic ("NTD").  The NTD records the temporal history of neutrons produced during a shot of the OMEGA laser – that is, the time interval between the laser hitting its target and the production of neutrons.  The NTD consists of a plastic scintillator located in the target chamber that produces light when neutrons interact with it, and an "optical relay" that transmits the light to a streak camera located in the target bay, which is used to record data.

5.      Certain laser shots produce high levels of free neutrons, which float around in the target bay of the Omega Facility.  Those neutrons interact with the NTD's streak camera, creating background levels that make the data recorded by the streak camera unusable.  Thus, in the summer of 2005, I proposed and was the principal investigator ("PI") for a new project to develop a new neutron diagnostic that would reduce neutron interaction with a streak camera and permit recording of useful experimental data in laser shots producing high levels of free neutrons.

6.      This new diagnostic, which is based on the same concepts as NTD but is useful for shots producing higher neutron yields, is a multi-purpose diagnostic called the High Yield

2

Neutron Temporal Diagnostic ("HYNTD").  It includes both a streak camera and a fast Photo Multiplier Tube ("PMT"), which can be used separately or simultaneously to gather data about the temporal history of neutrons produced by a shot.

7.      The HYNTD is designed to reduce neutron interaction with the streak camera and the PMT by locating them in area below the target bay called "La Cave," where the levels of free neutrons are much lower, and delivering the light from the scintillator to the streak camera and PMT via a highly polished steel pipe.   Because the steel pipe was the most visible part of the HYNTD, the entire diagnostic was colloquially called the "light pipe."   The light pipe is designed to be used with a scintillator producing near ultraviolet light ("scintillator mode") or with a pressurized $CO_2$ cell producing "Cherenkov" light ("$CO_2$ Cherenkov mode").

8.      In accordance with official LLE policy, all project proposals for new diagnostics to be used in experiments at the Omega Facility are approved by an LLE Division Director before they undergo a multi-stage design and review process that is required for all target diagnostics used in Omega Facility experiments.  A copy of that policy in effect at the time the diagnostic involved in plaintiff's accident was developed, entitled LLE Instruction 7700A, is attached at Exhibit 7.   In general, University employees are the only individuals who participate in the development process for internally-designed diagnostics, and that was the case with the light pipe.

9.      As the PI of the light pipe project, my responsibilities during its development included demonstrating how it would contribute to the Omega Facility's research program; scheduling, preparing, presenting, and publishing minutes from design reviews meetings

3

coordinated through and administered by the LLE System Engineering office; preparing and completing test plans and ensuring the project's timeline and budget goals were met.

10.     Plaintiff, a senior laboratory engineer employed by the University, was the project coordinator for development of the light pipe until Miguel Cruz, a University-employed laboratory engineer, assumed this role.   The project coordinator is responsible, under the direction of the PI, for administering and coordinating the project, and for overseeing the assembly and testing of the light pipe.  All of these individuals were University employees.

11.     During the development of the light pipe, Miguel Cruz and I occasionally consulted with Mike Moran, of Lawrence Livermore National Laboratory ("LLNL") because he had previously designed a light pipe of smaller diameter than the one we were building.  Dr. Moran's role was that of an informal consultant; neither he nor anyone else at LLNL designed the University's light pipe or participated in the design review process, fabrication or installation of the light pipe.

12.     As noted above, the light pipe went through design and review process as set forth in LLE Instruction 7700A.  Specifically, a project requirements review occurred on June 7, 2005 and a Fiscal Year 2006 budget request for the light pipe was submitted in September 2005.  On October 14, 2005, the light pipe underwent a conceptual design review.  The preliminary design review took place November 29, 2005.  The final design review occurred June 13, 2006.  Copies of my presentations, together with the design and review meeting minutes  are attached as follows:

> Exhibit 8:     Minutes from Project Requirements Review meeting
>
> Exhibit 9:     Fiscal Year 2006 Budget Request for New Project

4

Exhibit 10:    My presentation to, and minutes from Conceptual Design Review meeting

Exhibit 11:    My presentation to, and minutes from Preliminary Design Review meeting

Exhibit 12:    My presentation to, and minutes from Final Design Review meeting

13.    No one from defendants Los Alamos National Security LLC ("Los Alamos"), Massachusetts Institute of Technology, or AWE, PLC, was present at these meetings. Nor did any of the defendants play any role in or have any influence over any stage of the design and approval process, or on the manufacturing or installation of the light pipe. In fact, to my knowledge, prior to plaintiff's accident, none of the principal investigators listed on the shot request forms for the experiment that occurred August 6, 2008, other than me, had ever seen the light pipe, except perhaps the small portion that was located in La Cave.

14.    The mechanical aspects of the light pipe were designed by the LLE Mechanical Group, in particular, Chris Fullone, a University-employed laboratory engineer, Andy Dillenbeck, a University-employed senior laboratory engineer and Pat Ellsworth, a University co-op student.

15.    On June 28, 2006 and July 5, 2006, I observed as William (Jack) Armstrong (who is a deputy of the Experimental Operations Group Leader, a University employee) with the help of Miguel Cruz installed the light pipe in the target bay with the assistance of other University employees. They secured the light pipe to a support bracket that, in turn, was attached with several bolts to the underside of a raised personnel platform (similar to a catwalk) that encircles the target chamber. Once installed, a small, lower portion of the light pipe extended through the

5

floor of the target bay into La Cave. The streak camera and PMT were attached to the portion of the light pipe located in La Cave.

16. The light pipe successfully operated in the Omega Facility from July 2006 to August 6, 2008 both in scintillator and $CO_2$ Cherenkov modes and provided valuable scientific data.

17. On August 6, 2008, the Omega Facility executed a series of shots that previously had been proposed by Dr. Hans Herrmann, an employee of Los Alamos, as part of an ongoing experiment called the DT Ratio campaign. Dr. Herrmann was the lead principal investigator for the DT Ratio campaign.

18. I was designated on the shot request forms for the August 6 shots as a secondary principal investigator for this experiment because Dr. Herrmann sought to use several neutron diagnostics for which I was responsible, including the light pipe, and because I planned to use the August 6 shots to test and calibrate some of the neutron diagnostics. I reviewed the neutron diagnostic pages of the shot request forms and modified them as necessary to reflect the proper selection and set up of the neutron diagnostics that Dr. Herrmann had asked to use during the proposed shots.

19. One of the diagnostics Dr. Herrmann asked to use during the August 6, 2008 experiment was the light pipe. Specifically, Dr. Herrmann requested use of the light pipe in $CO_2$ Cherenkov mode. A true and correct copy of Dr. Herrmann's e-mail asking to use the light pipe is attached at Exhibit 13.

20. I accepted Dr. Herrmann's proposal that the light pipe be used in $CO_2$ Cherenkov mode, and was present in the control room on August 6, 2008 when the light pipe was in use. To

6

record additional scientific data during the course of the experiment, it was necessary to reduce the $CO_2$ pressure in the light pipe from 100 psi to 50 psi.

21.     I asked plaintiff whether he knew how to make the necessary pressure change to the $CO_2$ cell in the light pipe and plaintiff confirmed that he had the knowledge and experience to do so.  I then asked plaintiff to decrease the $CO_2$ pressure in the cell from 100 psi to 50 psi. After obtaining the approval of the Shot Director on duty, plaintiff entered the target bay to make the change; his accident took place while he was in the target bay.

22.     None of the defendants' employees participated in the decision to adjust the $CO_2$ pressure in the light pipe during the August 6, 2008 experiment, nor did any of the defendants' employees make any requests to plaintiff concerning the operation of the light pipe.


                                                        s/ Vladimir Glebov
                                                        Dr. Vladimir Glebov

Sworn to before me this

30th day of August, 2012


        /s Sarah J. Frasier

        Notary Public

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SAMUEL M. ROBERTS,

                    Plaintiff,

        -vs-

LOS ALAMOS NATIONAL SECURITY, LLC,
AWE, PLC, and
MASSACHUSETTS INSTITUTE OF              **Civil Case No.:  11-cv-6206(L)**
TECHNOLOGY,

                    Defendants,
                    Third-Party Plaintiffs,

        -vs-

UNIVERSITY OF ROCHESTER,

                    Third-Party Defendant.
_____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2012 I electronically filed the foregoing affidavit of

Vladimir Glebov with the Clerk of the District Court using the CM/ECF system, which sent

notification to attorneys for:


1.  Plaintiff:                      Louis J. Micca, Esq. (lmicca@msn.com);

2.  Defendant AWE, PLC:             Sean C. Sheely, Esq.(sean.sheely@hklaw.com),
                                    Christine Tramontano, Esq.
                                    (christine.tramontano@hklaw.com), and
                                    Philip T. Evans, Esq. (philip.evans@hklaw.com);

3.  Defendant Los Alamos            Beryl Nusbaum, Esq. (bnusbaum@woodsoviatt.com),
    National Security, LLC:         Greta K. Kolcon, Esq. (gkolcon@woodsoviatt.com);

4.  Defendant Massachusetts      David Rothenberg, Esq. (drothenberg@geigroth.com).
    Institute of Technology:


Dated: August 31, 2012                          s/ Eric J. Ward_____
                                                        Eric J. Ward
                                                Ward Greenberg Heller & Reidy LLP
                                                *Attorneys for Third-Party Defendant*
                                                        *University of Rochester*
                                                300 State Street
                                                Rochester, New York  14614
                                                (585) 454-0700
                                                eward@wardgreenberg.com

Exhibit E

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SAMUEL M. ROBERTS,

               Plaintiff,

     -vs-

LOS ALAMOS NATIONAL SECURITY, LLC,
AWE, PLC, and
MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

               Defendants,
               Third-Party Plaintiffs,

     -vs-

UNIVERSITY OF ROCHESTER,

               Third-Party Defendant.

---

**UNIVERSITY OF ROCHESTER'S
RESPONSE TO LOS ALAMOS
NATIONAL SECURITY, LLC'S
RULE 36 REQUESTS FOR
ADMISSION**


Civil Case No.:  11-cv-6206(L)

---

**Third-Party Defendant, University of Rochester** (the "University"), by its attorneys,

Ward Greenberg Heller & Reidy, LLP, responds to Defendant Los Alamos National Security

LLC's ("LANS") Rule 36 Request for Admission, as follows:

    **REQUEST FOR ADMISSION NO. 1:**    The premises where plaintiff's injury occurred were owned by the University of Rochester at all relevant times.

    **RESPONSE:** Admitted.

    **REQUEST FOR ADMISSION NO. 2:**    At no time did defendant, LANS ever own the premises where plaintiff's injury occurred.

    **RESPONSE:** Admitted.

    **REQUEST FOR ADMISSION NO. 3:**    The premises where plaintiff's injury occurred were under the exclusive control of the University of Rochester at all relevant times.

    **RESPONSE:** Admitted.

    **REQUEST FOR ADMISSION NO. 4:**    At no time were the premises where plaintiff's injury occurred within the control of defendant, LANS.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 5:**     The light-pipe diagnostic instrument alleged in paragraphs 18-22 of plaintiff's complaint was designed by the University of Rochester or its agents and employees.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 6:**     The light-pipe diagnostic instrument alleged in paragraphs 18-22 of plaintiff's complaint was not designed by defendants, LANS, or its agents and employees.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 7:**     The light-pipe diagnostic instrument alleged in paragraphs 18-22 of plaintiff's complaint was constructed by the University of Rochester or its agents and employees.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 8:**     The light-pipe diagnostic instrument alleged in paragraphs 18-22 of plaintiff's complaint was not constructed by defendant, LANS, or its agents and employees.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 9:**     The light-pipe diagnostic instrument alleged in paragraphs 18-22 of plaintiff's complaint was installed by the University of Rochester or its agents and employees.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 10:**     The light-pipe diagnostic instrument alleged in paragraphs 18-22 of plaintiff's complaint was not installed by defendant, LANS, or its agents and employees.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 11:**     At all relevant times, it was the responsibility of the University of Rochester to maintain the light-pipe diagnostic instrument alleged in paragraphs 18-22 of plaintiff's complaint, should any maintenance have been necessary.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 12:**   At no time was defendant, LANS, responsible for the maintenance of the light pipe diagnostic instrument alleged in paragraphs 18-22 of plaintiff's complaint.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 13**:   At all relevant times, it was the responsibility of the University of Rochester to repair the light-pipe diagnostic instrument alleged in paragraphs 18-22 of plaintiff's complaint, should any repairs have been necessary.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 14:**   At no time was defendant, LANS, responsible for the repair of the light pipe diagnostic instrument alleged in paragraphs 18-22 of plaintiff's complaint.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 15:**   At all relevant times, it was the responsibility of the University of Rochester to operate the light-pipe diagnostic instrument alleged in paragraphs 18-22 of plaintiff's complaint.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 16:**   At no time was defendant, LANS, responsible for the operation of the light pipe diagnostic instrument alleged in paragraphs 18-22 of plaintiff's complaint.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 17:**   Plaintiff was an employee of the University of Rochester.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 18:**   At no time during 2008 was plaintiff an employee of defendant, LANS.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 19:**   As an employer of the plaintiff, the University of Rochester was responsible for supervision of the plaintiff at the LLE.

**RESPONSE:** Admitted.

3

**REQUEST FOR ADMISSION NO. 20:**   At   no   time   was   defendant,   LANS, responsible for supervision of the plaintiff.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 21:**   As an employer of the plaintiff, the University of Rochester was responsible for training of the plaintiff at the LLE.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 22:**   At   no   time   was   defendant,   LANS, responsible for training the plaintiff.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 23:**   As an employer of the plaintiff, the University of Rochester was evaluation and review of the plaintiff's employment at LLE.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 24:**   At   no   time   was   defendant,   LANS, responsible for was evaluation and review of the plaintiff's employment or performance at LLE.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 25:**   Within the OMEGA facility and among the four parties named in this lawsuit as defendants and third-party defendant, the University of Rochester had the sole responsibility for safety.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 26:**   Defendant, LANS, was not responsible for safety within the OMEGA facility at LLE.

**RESPONSE:** Admitted.

4

Dated:    February 27, 2012

 

Eric J. Ward
Ward Greenberg Heller & Reidy LLP
*Attorneys for Third-Party Defendant,*
*University of Rochester*

300 State Street
Rochester, New York 14614
Tel.: (585) 454-0714
eward@wardgreenberg.com

TO:    Beryl Nusbaum, Esq.
       Greta K. Kolcon, Esq.

       Woods Oviatt Gilman LLP
       *Attorneys for Defendant Los Alamos*
        *National Security, LLC*
       700 Crossroads Building
       Two State Street
       Rochester, New York 14614
       Tel: (585) 987-2800
       bnusbaum@woodsoviatt.com
       gkolcon@woodsoviatt.com

cc:    Louis J. Micca, Esq.
       *Attorneys for Plaintiff*
        *Samuel L. Roberts*
       11 State Street
       Pittsford, New York 14534
       Tel: (585) 899-6031
       Fax: (585) 383-6357
       lmicca@msn.com

5

Christine Tramontano, Esq.
Sean C. Sheely, Esq.
Philip T. Evans, Esq.

Holland & Knight LLP
*Attorneys for Defendant*
 *AWE, PLC*
31 West 52nd Street
New York, New York  10019
Tel: (212) 513-3200
Fax: (212) 385-9010
sean.sheely@hklaw.com
christine.tramontano@hklaw.com

2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, District of Columbia  20006
Tel: (202) 457-7043
Fax: (202) 955-3000
philip.evans@hklaw.com

David Rothenberg, Esq.

Geiger and Rothenberg, LLP
*Attorneys for Defendant Massachusetts*
 *Institute of Technology*
45 Exchange Street
Suite 800
Rochester, New York 14614
Tel: (585) 232-1946
drothenberg@geigroth.com

Exhibit F

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SAMUEL M. ROBERTS,

                                   Plaintiff,

        -vs.-

                                                                    **Civil No. 11 CV 6206L**

LOS ALAMOS NATIONAL SECURITY, LLC.,
AWE, PLC., MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

                                   Defendants,
                        Third-Party Plaintiffs,


        -vs.-

UNIVERSITY OF ROCHESTER

                        Third-Party Defendant.
_____

### PLAINTIFF'S RESPONSE TO AWE's INTERROGATORIES

        Plaintiff, by and through his attorney, Louis J. Micca, Esq., responds to the Interrogatories propounded by AWE, Plc., for the purposes of the pending action only, as follows:

### PRELIMINARY STATEMENT

        By responding to AWE's Interrogatories, Plaintiff does not waive any objections it may have regarding the use of information regarding the truth or accuracy of any characterizations or assumptions contained in the Interrogatories.  Plaintiff reserves its rights to make all objections indentified herein or object on other grounds as to the use or admissibility of the information provided, in whole or in part, or the subject matter covered thereby, in any proceeding or trial of in any other action.  Plaintiff reserves his

right to object on any and all proper grounds and it, in no way, admits as to the authenticity, competency, relevance, materiality or admissibility of any of the information provided herein.  The responses of Plaintiff are, and will be, based upon information acquired thus far, and Plaintiff reserves the right to amend or supplement its responses in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.  By responding to these Interrogatories, Plaintiff does not waive any objections he may have with regard to Defendants' use of the information or regarding t he truth or accuracy of any characterizations or assumptions contained in Defendant's Interrogatories.  Plaintiff reserves the right to make all objections identified herein or object on the grounds, comment as to the use or admissibility of information provided, in whole or in part, or the subject matter covered thereby, in any proceeding or trial or any other action.

## GENERAL OBJECTIONS

Plaintiff raises the same general objections raised by the Defendants in response to discovery demands served by Plaintiff.

## ANSWERS TO INTERROGATORIES

1.      Identify (a) by whom Plaintiff was employed in 2008, (a) Plaintiff's designated duties and responsibilities during the month of August, 2008 up to and including the Date of the Accident, and (c) the identify of Plaintiff's immediate supervisor(s).

RESPONSE:  Plaintiff was employed by the University of Rochester, his date of first employment by the U of R was April 5, 1999.  His duties and responsibilities include those of a Senior Lab Engineer including bringing projects from conception to

completion, developing diagnostics from conception to deployment, development and operation. Running diagnostics during shots of the laser.  Guiding, training and supervising junior lab engineers and students, acting as a liason between MIT engineers, staff and scientists and the U of R.  Collecting and analyzing data acquired by diagnostics.  Disseminating data to outside labs.  Rotating as an Experimental Systems Technician, training to become and Experimental Systems Operator. Developing and following shot plans and shot request forms for shots of the laser. Plaintiff's supervisors included Dr. Glebov, Senior Scientist; Michael Cruz, Laboratory Engineer, Christian Stoekle, Senior Scientist, Craig Sangster, Experimental Group Leader; David Meyerhofer, Director, Experimental Division, Richard Petrasso (MIT), Johan Frenje, (MIT), Chi Kang Li (MIT), Frederick Seguin (MIT), any and all principal investigators on shots when Plaintiff was present.

2.     State whether Plaintiff was directed or instructed by any person, directly or indirectly, to perform maintenance, repairs, adjustment, and/or other services on the Light-Pipe on the Date of the Accident.

RESPONSE:  Upon information and belief, Plaintiff was instructed to change the pressure of the carbon dioxide gas within the Light Pipe in between shots on the day of the accident.  Plaintiff's memory of the events of the day of his injury has been adversely affected by the severity of his injuries and he does not recall who instructed him to make the changes to the pressure within the Light Pipe.

3.     If the answer to the prior interrogatory is in the affirmative, describe in detail the specific maintenance, repairs, services, and/or adjustments Plaintiff was

instructed to perform on the Light-Pipe on the Date of the Accident and by whom he was instructed to conduct such activities.

RESPONSE:  See response to Interrogatory 2 above.

4.     State whether or not Plaintiff had performed any maintenance, service, adjustment, and/or repairs on the Light-Pipe prior to the Date of the Accident and, if so, the specific repairs, maintenance, adjustment, and/or services he had performed prior to the Date of the Incident, and by whom he was instructed to perform them.

RESPONSE:  Plaintiff had been instructed prior to the date of the accident to cut down a pipe section of the Light Pipe when the Light Pipe was first being assembled, change the pressure within the Light Pipe, set up and install the camera for the Light Pipe and set up and install the scintillator for the Light Pipe.  Instructions were received from Dr. Glebov, Michael Cruz, Christian Stoekle and set forth in various Shot Request Forms or Shot Plans developed by others including principal investigators.

5.     State the specific training, if any, Plaintiff had been given concerning performing maintenance, repairs, adjustments, and/or services on the Light-Pipe, when that training occurred, who trained him on each specific occasion, the nature of the training he received, and the number of occasions on which he was so trained.

RESPONSE:   Plaintiff received verbal and training by example regarding the Light Pipe from Dr. Glebov, Michael Cruz and Christian Stoekle.  Plaintiff cannot recall specific dates of training however the training did include instruction on the adjustment of pressure within the Light Pipe, how to set up and install the camera for the Light Pipe, and how to set up and install scintillators in the Light Pipe.

6.      State whether Plaintiff consulted with any person other than an employee of the LLE concerning the repairs, maintenance, adjustments, and/or services he performed on the Light-Pipe on the Date of the Accident and if applicable, the name and employer of the person with whom he consulted.

RESPONSE:   Plaintiff does not recall many of the events of the day of the accident including who he may have consulted regarding the adjustments he was instructed to make to the pressure within the Light Pipe, however, it is possible that changes to the pressure within the Light Pipe was discussed with the principal investigators of the shot including, Dr. Herrmann, Dr. Horsfield, Dr. Kyrala, Dr. Frenje and Dr. Glebov.

7.      State what repairs, maintenance, services and/or adjustments Plaintiff made on the Light-Pipe on the Date of the Accident prior to the occurrence of the Accident itself.

RESPONSE:  See response 4 above.

8.      State whether or not there was an explosion in the Light-Pipe or its related facilities at the time the accident occurred.

RESPONSE:  To the extent the term "explosion" infers the combustion of gases, no such explosion is believed to have occurred as the carbon dioxide gas in use within the Light Pipe is not combustible.  Upon information and belief, there was a rapid escape of pressurized carbon dioxide gas that some may have described as an "explosion".

9.      State whether any other persons were present in the Target Bay at the time Plaintiff started to perform maintenance, repairs, services and/or adjustments to the Light-Pipe at the time the accident occurred and the identity of such person.

RESPONSE:  Upon information and belief, Zaheer A. Ali, Scott Evans, Harold Beck and Kurt E. Herold were in the Target Bay at the time of the accident.

10.     State the facts on which Plaintiff will rely to establish that the Light-Pipe diagnostic was under the supervision, direction and/or control of any party other than the UR on the Date of the Incident.

RESPONSE:  Plaintiff will rely on the duties of all principal investigators regarding safety within the LLE as set forth in various manuals, guides, policies, rules and regulations governing the LLE and the fact that Dr. Hans Herrmann was the primary or first listed principal investigator with the ultimate responsibility for the conduct of the project and to use reasonable efforts to comply with the terms, conditions and policies of the U of R including such terms set forth in various manuals, guides, policies, rules and regulations. A laboratory environment, by definition, contains a substantial number of materials, processes, and equipment that represent potential hazards to health and safety. The multidisciplinary nature of the research conducted at the LLE facility makes it extremely important that each and every person working with hazardous materials, equipment, and processes be fully aware of the inherent risks and hazards associated with the conditions of his experiment, particularly when the experimental protocol involves hazards that fall outside their area of pervious training and expertise. In such a situation, lack of attention to safety issues, whether due to indifference, lack of information, excessive haste, improper or unsafe experimental design or protocol, or

6

faulty equipment, can have dire consequences.  Principal hazards that can be found in the LLE work environment include apparatus under pressure such as the Light Pipe. Principal investigators are responsible for ensuring that supervised personnel, such as Plaintiff, receive specific information and training on hazardous equipment with which they work and verifying that appropriate personal protective equipment is worn for all experimental activities.  The principal investigators are also expected to enforce the adoption of safe work practices in his work area including the Target Bay.  The primary principal investigator also has the ability to permit or reject the use of diagnostics proposed to be used during his shot including the Light Pipe.  All principal investigators are required to act as an advisor to the Shot Director and have the duty to advise the Shot Director to abort the shot in the event of an unsafe condition.   Principal investigators have aborted previous shots at LLE.  Dr. Hans Herrmann specifically requested the use of the Light Pipe with pressurized $CO_2$ for the series of shots to be completed on the date of the accident.  Dr. Hans Herrmann also expected Dr. Colin Horsfield to be interacting with the University of Rochester on the use of the Light Pipe with pressurized $CO_2$ as he had in past experiments conducted at LLE.

11.   Describe any and all communication Plaintiff had on the Date of the Accident with Dr. Colin Horsfield, or any other individual employed by AWE.

RESPONSE:  See response to Interrogatory 6 above.

12.   State all of the facts on which Plaintiff will rely to establish that he was under the supervision, direction and/or control of any of the Defendants, AWE, LAN and MIT on the date of the Accident.

RESPONSE:   See response 10 above.   As part of his duties, Plaintiff was required to take direction and did in fact take direction from principal investigators of experiments being conducted at LLE.   Therefore, Plaintiff was under the supervision, direction and control of each of the Defendants as well as the U of R in connection with the performance of his duties of employment which included the adjustment of the pressure within the Light Pipe on the day of the accident.

13.   Describe in detail the specific direction and/or instruction that Plaintiff claims to have received from Defendant AWE, from whom he received such direction and instruction, and when he received such direction and instruction.

RESPONSE:  See response 6 above.

14.   Set forth in detail all damages which Plaintiff seeks form the Defendants in this action.

RESPONSE:  Plaintiff seeks recovery for the injuries he sustained as set forth in his medical records produced in this action, his conscious pain and suffering, lost wages, and medical costs including all past, present and future such damages.

DATED:      April 30, 2012
            Rochester, New York

                                    LOUIS J. MICCA, ESQ.
                                    Attorney for Plaintiff
                                    11 State Street
                                    Pittsford, New York 14534
                                    Telephone:  (585) 899-6031

TO:

Sean C. Sheely Esq.
Christine Tramontano, Esq.
Holland & Knight, LLP
Attorneys for AWE, Plc.

31 West 52nd Street
New York, New York 10019

Beryl Nusbaum, Esq.
Woods, Oviatt, Gilman, LLP
Attorneys for Los Alamos National Security LLC
700 Crossroads Building,
Two State Street
Rochester, New York 14614


David Rothenberg, Esq.
Geiger and Rothenberg, LLP
Attorneys for Massachusetts Institute of
    Technology
45 Exchange Street, Suite 800
Rochester, New York 14614

Eric J. Ward, Esq.
Ward, Greenberg, Heller & Reidy, LLP
Attorneys for University of Rochester
300 State Street, 6th Floor
Rochester, New York 14614

## VERIFICATION

I, SAMUEL M. ROBERTS, PURSUANT TO 17 U.S.C. 1746, under penalty of perjury under the laws of the United States of America, verify that the foregoing Responses to AWE's First Set of Interrogatories to Plaintiff are true and correct.

Dated:  April 30, 2012

_____

SAMUEL M. ROBERTS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SAMUEL M. ROBERTS,

                              Plaintiff,

        -vs.-

                                                         **Civil No. 11 CV 6206L**

LOS ALAMOS NATIONAL SECURITY, LLC.,
AWE, PLC., MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

                              Defendants,
                    Third-Party Plaintiffs,


        -vs.-

UNIVERSITY OF ROCHESTER

                    Third-Party Defendant.

---

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 25, 2012, I served a true and accurate copy of the foregoing Plaintiff's Responses to Interrogatories of AWE, by placing a true copy thereof enclosed in a post-paid wrapper in a depository, under the exclusive custody and control of the United State Postal Service, addressed to:

        Beryl Nusbaum, Esq.
        Woods, Oviatt, Gilman, LLP
        Attorneys for Los Alamos National Security LLC
        700 Crossroads Building,
        Two State Street
        Rochester, New York 14614

        Sean C. Sheely Esq.
        Christine Tramontano, Esq.
        Holland & Knight, LLP
        Attorneys for AWE, Plc.
        31 West 52nd Street
        New York, New York 10019

David Rothenberg, Esq.
Geiger and Rothenberg, LLP
Attorneys for Massachusetts Institute of
    Technology
45 Exchange Street, Suite 800
Rochester, New York 14614

Eric J. Ward, Esq.
Ward, Greenberg, Heller & Reidy, LLP
Attorneys for University of Rochester
300 State Street, 6th Floor
Rochester, New York 14614

_____
Louis J. Micca

## VERIFICATION

I, SAMUEL M. ROBERTS, PURSUANT TO 17 U.S.C. 1746, under penalty of perjury under the laws of the United States of America, verify that the foregoing Responses to MIT's First Set of Interrogatories to Plaintiff are true and correct.

Dated:  April 17, 2012

_____
SAMUEL M. ROBERTS

Exhibit G

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

SAMUEL M. ROBERTS,

         Plaintiff,

   -vs-

LOS ALAMOS NATIONAL SECURITY, LLC,
AWE, PLC, and
MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

         Defendants,
         Third-Party Plaintiffs,

   -vs-

UNIVERSITY OF ROCHESTER,

         Third-Party Defendant.

─────────────────────────────────

**AFFIDAVIT OF SAMUEL F. B. MORSE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Civil Case No.:  11-cv-6206(L)

STATE OF NEW YORK    )
COUNTY OF MONROE    )    ss.:

    Samuel F. B. Morse, being duly sworn, deposes and says:

    1.     I am employed by the University of Rochester ("University") and work at the University's Laboratory for Laser Energetics ("LLE").

    2.     The LLE is an internationally recognized center for research, training, and education in high-power lasers, fusion, high-energy-density physics, and electro-optics technology.  The LLE has two lasers, the OMEGA laser and the OMEGA EP laser.  Those lasers, together with all of their ancillary components and equipment are referred to as the Omega Laser Facility (the "Omega Facility").  The Omega Facility is the second most powerful

operating fusion laser in the world and is used to conduct a variety of ignition physics, weapons physics and basic science experiments.

3.     The LLE houses the Omega Facility.   The National Nuclear Security Administration of the US Department of Energy ("DOE") provides the funding for the research and operation of the Omega Facility, and DOE owns the OMEGA and OMEGA EP lasers. However, the LLE buildings and grounds are University property, and the University owns the ancillary equipment and diagnostics used in conjunction with the lasers, including the light pipe, which is at issue in this case.  Further, all operation of the Omega Facility is performed solely by University personnel.

4.     The LLE Director, Dr. Robert L. McCrory, is responsible for the overall management, operation and direction of the LLE.   Dr. McCrory is a University employee selected by the University's President and approved by its Board of Trustees.

5.     I am the Omega Facility Division Director and am responsible for oversight and operation of the Omega Facility.  I report directly to Dr. McCrory.

6.      Broadly speaking, the components of the OMEGA laser – the laser that was used in the experiment being conducted at the time of plaintiff's accident – include a laser bay, capacitor bays, and a target bay, which houses a target chamber. The laser bay refers to the portion of the Omega Facility containing the OMEGA laser's individual laser beamlines, that is, the equipment that produces the actual laser beams.   The capacitor bay holds a series of capacitors which provide the power source for the OMEGA laser.  The OMEGA laser is shot into a target chamber, which is a vacuum-sealed vessel that contains targets used in an individual experiment. The target bay refers to an area of the Omega Facility that houses the target chamber

2

and contains most of the experimental diagnostic instruments ("diagnostics") which collect data from experiments performed with the OMEGA laser.

7.      Directly beneath the target bay is an area called "La Cave." La Cave has in it certain support systems for several diagnostics located in the target bay. A control room, from which University personnel operate the OMEGA laser, is adjacent to the target bay.

8.      In addition to conducting its own experiments, the LLE permits outside researchers from other organizations to propose experiments to be conducted using the lasers and ancillary equipment in the Omega Facility.

9.      The LLE has developed a process for the submission, approval and execution of all proposed experiments. This process is documented in the LLE's Laser Facility Organization & Regulation Manual (the "LFORM").

10.     As set forth in the LFORM, a Facility Advisory and Scheduling Committee (the "FASC") is responsible for recommending Omega Facility time allocation, promoting an effective user community, reviewing the facility's overall effectiveness for users, and reviewing experimental proposals for compatibility and safety. Section 1003 of the LFORM, entitled "FASC Roles and Responsibilities," sets forth the role of the FASC and is attached as Exhibit 1.

11.     The FASC meets annually in June to formulate and determine the general Omega Facility schedule for the next fiscal year and to evaluate the Omega Facility's performance from the previous year in the context of its scientific goals.

12.     Because the full FASC only convenes once a year, review and approval of individual experiment proposals is delegated to a group called the FASC Subcommittee. The FASC Subcommittee is composed of the LLE members of the FASC, including the Laser Facility Manager, the Experimental Operations Group Leader, the Experimental Division

3

Director, the Engineering Division Director, the Laboratory Safety Officer, the Omega Experiments Group Leader, the NLUF Manager, the Laser System Scientist and me (the OMEGA Facility Division Director). All of the members of the FASC Subcommittee are University employees. The FASC Subcommittee meets bi-weekly to, among other things, administer the Omega Facility schedule and to review, and ultimately approve if appropriate, proposed experiments. Exhibit 1, § 1003.1.3

13.     To propose an experiment, a researcher – commonly referred to as the lead principal investigator – submits an experiment proposal. This experiment proposal is an electronic document and contains a summary of the proposed experiment's objectives and provides an abbreviated description of the laser and diagnostic requirements and the type and number of targets. See § 1004.2 of the applicable portion of the LFORM, entitled "Experimental Proposals and Principal Investigator Roles and Responsibilities, Experimental Proposal," attached as Exhibit 2.

14.     The proposal template has a hyperlink to another required submission, known as Shot Request Forms (SRFs). The SRFs contain detailed scientific information about the experiment, including technical specifications for the OMEGA laser and its drivers, as well as specific information about the diagnostics and targets the principal investigator wishes to use. Together with the experiment proposal template, the lead principal investigator provides sample SRFs for every unique configuration planned for the shot day. See Exhibit 2. The FASC Subcommittee reviews the proposal template and the sample SRFs for system and experimental compatibility and safety, and approves or recommends changes to each proposal, as appropriate.

15.     In the event a proposal is not approved or a change in the protocol is required by the FASC subcommittee, a principal investigator may appeal the decision to the LLE Director, who has final authority for all experiment proposals.

16.     Once the FASC Subcommittee approves a proposed experiment, the lead principal investigator reviews the shot plan and sample SRFs with the Omega Facility managers (who are University employees). After this review, the lead principal investigator submits a full SRF for each shot.  Exhibit 2, § 1004.3.

17.     During this process, the lead principal investigator may identify additional researchers as principal investigators on the SRFs because those individuals have specific or specialized knowledge about diagnostics to be used, or as a mechanism to give them access to data collected in the experiment.  These additional researchers are known as "secondary principal investigators."

18.     The experiment that was under way on August 6, 2008 when the accident that injured plaintiff occurred was part of a multi-year experimental campaign known as "DT Ratio." This experimental campaign first was proposed in 2006 by Dr. Hans Herrmann, a research scientist at Los Alamos, and the first implementation of the experiment had taken place in June 2007.

19.     On June 17, 2008, Dr. Herrmann submitted an experiment proposal together with the corresponding sample SRFs for continuation of the DT Ratio campaign.  The experiment proposal is attached at Exhibit 3.

20.     On June 19, 2008, the FASC Subcommittee reviewed and approved the forms submitted by Dr. Herrmann and accepted the experiment and target shots, which were planned for August 6, 2008.  A copy of the FASC Subcommittee's approval is attached at Exhibit 4.  As

noted above, all of the individuals who reviewed and approved Dr. Herrmann's experiment proposal were University employees.

21.     Thereafter, Dr. Herrmann met with the Omega Facility Manager, reviewed the experiment and ultimately submitted detailed SRFs.  Copies of the SRFs for the shots that were conducted August 6, 2008 are attached as Exhibit 5.  On the SRFs, Dr. Herrmann identified four other individuals as secondary principal investigators for the shots to be conducted.  Those individuals were Dr. Vladimir Glebov, a University employee, Dr. Colin Horsfield, an employee of AWE, PLC, Dr. Johan Frenje, an employee of Massachusetts Institute of Technology ("MIT"), and Dr. George Kyrala, another employee of Los Alamos.

22.     As set forth in Dr. Glebov's affidavit, Dr. Glebov was included as a principal investigator because of his expertise in and responsibility for neutron diagnostics that Dr. Herrmann had listed for use during the shots for the experiment campaign.  The remaining individuals from AWE, Los Alamos and MIT were identified as principal investigators because they desired access to the data being collected, and Dr. Hermann granted that access.

23.     All shots at the Omega Facility are performed under the direction and control of a group called the Omega Facility Watch Organization (the "Watch Organization").  The Watch Organization is responsible for safety, shot execution and data collection. The members of the Watch Organization, called Watchstanders, are the operators and technicians who actually control the OMEGA laser and its ancillary systems during shot operations.  All Watchstanders must complete a rigorous qualification process and all of them must be University employees. Section 1005 of the LFORM, entitled "Laser Facility Operations Overview," Section 2000 of the LFORM, entitled "Watch Conditions" and Section 2001 of the LFORM, entitled "Shot Director (SD)," are attached at Exhibit 6.

24.     The Shot Director is the senior Watchstander.  In August 2008, the Shot Director reported directly to the Laser Facility Manager, who reported to me.  The Shot Director is in charge of the overall laser and target systems during a shot and has the power to abort a shot or an entire series of shots if personnel or equipment safety issues arise.  Exhibit 6, § 2001.  There is always a Shot Director, twenty-four hours per day, seven days per week, either on station or on call.  (A Shot Director would be on call when, for example the Omega Facility is closed.) Although the individual serving as the Shot Director can vary from experiment to experiment, or vary from day to day, he is always a University employee.

25.     Principal investigators are never part of the Watch Organization.  Although they may advise and consult with the Shot Director or Watchstanders concerning the scientific details of the experiment, the Shot Director retains complete control over the operation of the lasers and all ancillary equipment at all times, whether there is an experiment under way, maintenance under way, and even when the Omega Facility is not operating or closed.

26.     None of the defendants had any right or authority to conduct an experiment at LLE, nor change or modify the experiment, even as it was ongoing, without approval of LLE (University-employed) personnel.  Likewise, none of the defendants had the right or authority to operate or to direct the operation of any aspect of the Omega Facility at any time.

27.     None of the defendants had any right or authority to direct the activities of any University personnel, including plaintiff.  As plaintiff's employer, the University paid plaintiff's

salary and benefits, and had the exclusive right and sole discretion to set his work schedule, direct and control his work, furnish any equipment he might use in his job and, ultimately, if it so chose, terminate his employment.

s/ Samuel F. B. Morse
_____
Samuel F. B. Morse

Sworn to before me this

29th day of August, 2012

s/ Sarah J. Frasier
_____

Notary Public

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SAMUEL M. ROBERTS,

              Plaintiff,

   -vs-

LOS ALAMOS NATIONAL SECURITY, LLC,
AWE, PLC, and
MASSACHUSETTS INSTITUTE OF              **Civil Case No.: 11-cv-6206(L)**
TECHNOLOGY,

              Defendants,
              Third-Party Plaintiffs,

   -vs-

UNIVERSITY OF ROCHESTER,

              Third-Party Defendant.
_____

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on August 31, 2012 I electronically filed the foregoing affidavit of

Samuel F.B. Morse with the Clerk of the District Court using the CM/ECF system, which sent

notification to attorneys for:

1.  Plaintiff:                 Louis J. Micca, Esq. (lmicca@msn.com);

2.  Defendant AWE, PLC:     Sean C. Sheely, Esq.(sean.sheely@hklaw.com),
                                   Christine Tramontano, Esq.
                                   (christine.tramontano@hklaw.com), and
                                   Philip T. Evans, Esq. (philip.evans@hklaw.com);

3.  Defendant Los Alamos       Beryl Nusbaum, Esq. (bnusbaum@woodsoviatt.com),
    National Security, LLC:      Greta K. Kolcon, Esq. (gkolcon@woodsoviatt.com);

4.  Defendant Massachusetts      David Rothenberg, Esq. (drothenberg@geigroth.com).
    Institute of Technology:



Dated: August 31, 2012                          s/ Eric J. Ward
                                                      Eric J. Ward
                                                Ward Greenberg Heller & Reidy LLP
                                                *Attorneys for Third-Party Defendant*
                                                      *University of Rochester*
                                                300 State Street
                                                Rochester, New York  14614
                                                (585) 454-0700
                                                 eward@wardgreenberg.com

# Exhibit H

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SAMUEL M. ROBERTS,

                    Plaintiff,

        -vs-

LOS ALAMOS NATIONAL SECURITY, LLC,
AWE, PLC, and
MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

                    Defendants,
                    Third-Party Plaintiffs,

        -vs-

UNIVERSITY OF ROCHESTER,

                    Third-Party Defendant.

**UNIVERSITY OF ROCHESTER'S
RESPONSE TO SAMUEL M.
ROBERTS' RULE 36 REQUEST
FOR ADMISSION (SECOND)**

**Civil Case No.:  11-cv-6206(L)**

        **Third-Party Defendant, University of Rochester** ("UR"), by its attorneys, Ward Greenberg Heller & Reidy, LLP, responds to Plaintiff Samuel M. Roberts' Rule 36 Request for Admission (Second), as follows:

        **REQUEST FOR ADMISSION NO. 1:**    On August 6, 2008, there was a piece of diagnostic equipment known as the High Yield Neutron Temporal Diagnostic or otherwise known as the "Light Pipe" at the University of Rochester Laboratory for Laser Energetics ("LLE").

        **RESPONSE:** Admitted.

        **REQUEST FOR ADMISSION NO. 2:**    On August 6, 2008, the Light Pipe was designed to be operated while filled with pressurized carbon dioxide.

        **RESPONSE:** Denied, except admitted that the light pipe was designed to be gas tight so that it could be filled with pressurized carbon dioxide.

**REQUEST FOR ADMISSION NO. 3:**     On August 6, 2008, the Light Pipe was connected to a 50 pound cylinder of pressurized carbon dioxide.

**RESPONSE:** UR cannot admit or deny this statement.  Upon information and belief, the gas supplier, Airgas, would use the term "50 pound" to describe the cylinder to which the light pipe was connected.  Upon further information and belief, the subject cylinder was a 200-size cylinder.

**REQUEST FOR ADMISSION NO. 4:**     On August 6, 2008, there was a pressure regulator installed between the cylinder of pressurized carbon dioxide and the Light Pipe.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 5:**     The pressure regulator installed between the cylinder of pressurized carbon dioxide and the Light Pipe on August 6, 2008, had a specification for a certain maximum pressure.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 6:**     The specification for maximum pressure for the pressure regulator installed between the cylinder of pressurized carbon dioxide and the Light Pipe on August 6, 2008, was 300 pounds per square inch of gas.

**RESPONSE:** UR cannot admit or deny this statement because the exact make and model of the regulator cannot be confirmed.  Upon information and belief, the regulator was an Arrow Pneumatics R26 series regulator with 250 psig supply pressure.

**REQUEST FOR ADMISSION NO. 7:**     On August 6, 2008, the pressure existing in the cylinder of pressurized carbon dioxide exceeded the maximum pressure specification for the pressure regulator used.

**RESPONSE:** Admitted.

2

**REQUEST FOR ADMISSION NO. 8:**     On August 6, 2008, there was no pressure release valve installed between the pressurized carbon dioxide and the Light Pipe.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 9:**     On August 6, 2008, the Light Pipe was connected to a mounting plate which was attached to the underside of the personnel platform within the LLE Target Bay.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 10:**     On August 6, 2008, the mounting plate contained holes measuring approximately one-half inch designed for bolts to be used for the attachment of the mounting plate to the underside of the personnel platform structure within the LLE Target Bay.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 11:**     The mounting plate was designed to be mounted to the underside of the personnel platform within the LLE Target Bay with one-half inch bolts.

**RESPONSE:** Denied, except admitted that the holes in the mounting plate would accommodate 1/2 inch diameter bolts.

**REQUEST FOR ADMISSION NO. 12:**     The mounting plate was designed to be mounted to the underside of the personnel platform within the LLE Target Bay with five (5) one-half inch bolts.

**RESPONSE:** Denied, except admitted that the mounting plate had five 1/2 inch holes.

**REQUEST FOR ADMISSION NO. 13:**    On August 6, 2008, the mounting plate was attached to the underside of the personnel platform within the LLE Target Bay by three (3) one-quarter inch bolts.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 14:**    On August 6, 2008, the three (3) one-quarter inch bolts attaching the mounting plate to the underside of the personnel platform broke.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 15:**    On August 6, 2008, the Plaintiff was found injured in the LLE Target Bay with a portion of the Light Pipe on top of him.

**RESPONSE:** UR admits that plaintiff was injured at the time he was found in the Target Bay on August 6, 2008, but cannot admit or deny the remainder of this statement. UR admits that one of the first individuals on the scene after the incident of August 6, 2008 indicated that the Plaintiff was found with a portion of the light pipe on top of him.

**REQUEST FOR ADMISSION NO. 16:**    On August 6, 2008, the Light Pipe and its support structure fell on the Plaintiff resulting in Plaintiff's injuries.

**RESPONSE:** UR cannot admit or deny this statement. UR admits that plaintiff was injured, but states that the incident was unwitnessed.

4

Dated: March 12, 2012

WARD GREENBERG HELLER & REIDY LLP

By:_____

Eric J. Ward

*Attorneys for Third-Party Defendant,*
*    University of Rochester*
300 State Street
Rochester, New York  14614
Tel.:  (585) 454-0714
Fax:  (585) 231-1921
eward@wardgreenberg.com

TO:   Louis J. Micca, Esq.
      *Attorneys for Plaintiff*
      *    Samuel M. Roberts*
      11 State Street
      Pittsford, New York 14534
      Tel: (585) 899-6031
      Fax: (585) 383-6357
      lmicca@msn.com


      Christine Tramontano, Esq.
      Sean C. Sheely, Esq.
      Philip T. Evans, Esq.

      Holland & Knight LLP
      *Attorneys for Defendant*
      *    AWE, PLC*
      31 West 52nd Street
      New York, New York  10019
      Tel: (212) 513-3200
      Fax: (212) 385-9010
      sean.sheely@hklaw.com
      christine.tramontano@hklaw.com

      2099 Pennsylvania Avenue, N.W.
      Suite 100
      Washington, District of Columbia  20006
      Tel: (202) 457-7043
      Fax: (202) 955-3000
      philip.evans@hklaw.com

5

Beryl Nusbaum, Esq.
Greta K. Kolcon, Esq.

Woods Oviatt Gilman LLP
*Attorneys for Defendant Los Alamos*
  *National Security, LLC*
700 Crossroads Building
Two State Street
Rochester, New York  14614
Tel: (585) 987-2800
bnusbaum@woodsoviatt.com
gkolcon@woodsoviatt.com


David Rothenberg, Esq.

Geiger and Rothenberg, LLP
*Attorneys for Defendant Massachusetts*
  *Institute of Technology*
45 Exchange Street
Suite 800
Rochester, New York 14614
Tel: (585) 232-1946
drothenberg@geigroth.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2012, I served a true and accurate copy of the foregoing University of Rochester's Response to Samuel M. Roberts' Rule 36 Requests for Admission (Second) by depositing a true copy, enclosed in a post-paid, properly addressed wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York addressed to:

Louis J. Micca, Esq.
*Attorneys for Plaintiff*
*Samuel M. Roberts*
11 State Street
Pittsford, New York 14534

David Rothenberg, Esq.
Geiger and Rothenberg, LLP
*Attorneys for Defendant*
*Massachusetts Institute of*
*Technology*
45 Exchange Street
Suite 800
Rochester, New York 14614

Beryl Nusbaum, Esq.
Woods Oviatt Gilman LLP
*Attorneys for Los Alamos National*
*Security, LLC*
700 Crossroads Building
Two State Street
Rochester, New York 14614

Christine Tramontano, Esq.
Holland & Knight LLP
*Attorneys for Defendant AWE,*
*PLC*
31 West 52nd Street
New York, New York 10019

_____
Marjorie M. Collins

Exhibit I

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SAMUEL M. ROBERTS,

                 Plaintiff,

      -vs-

LOS ALAMOS NATIONAL SECURITY, LLC,
AWE, PLC, and
MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

                 Defendants,
                 Third-Party Plaintiffs,

      -vs-

UNITED STATES OF ROCHESTER,

                 Third-Party Defendant.

**UNIVERSITY OF ROCHESTER'S
RESPONSE TO THIRD-PARTY
PLAINTIFF AWE, PLC'S FIRST
SET OF INTERROGATORIES**

**Civil Case No.:  11-cv-6206(L)**

---

        Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and pursuant to the

Local Rules of Civil Procedure of the United States District Court for the Western District of

New York, Third-Party Defendant, University of Rochester ("UR") by its attorneys, Ward

Greenberg Heller & Reidy, LLP, responds to Third-Party Plaintiff AWE, PLC's ("AWE") First

Set of Interrogatories (the "Interrogatories"), as follows:

<u>**GENERAL STATEMENTS AND OBJECTIONS**</u>

      1.      The responses set forth below are based upon information currently known to UR.

UR submits these responses without waiving or intending to waive the right to object on any of

the following bases: competence, relevance, materiality, privilege or admissibility.  UR further

expressly reserves the right to object to the use of these responses as evidence for any purpose,

including but not limited to the use of these responses in any subsequent proceeding or in the

trial of this or any other action.

2.      Any objection, lack of objection or response to any portion of the Interrogatories shall not constitute an admission that UR has in its possession, custody or control any information sought by any particular interrogatory.  These responses are made without prejudice to UR's right to disclose, at a later date, subsequently discovered information.

3.      UR reserves the right to assert any and all additional objections that are appropriate under the circumstances.

4.      UR reserves the right to change or supplement its responses to the Interrogatories as additional facts are discovered, revealed, recalled, or otherwise ascertained, and as further analysis and research disclose additional facts, contentions, or legal theories that might apply.

5.      All specific responses are subject to the general objections and reservations of rights set forth herein.

6.      UR objects to the Interrogatories to the extent that they purport to require disclosure of documents, communications or information that are privileged or protected from disclosure as material prepared for or in anticipation of litigation, attorney work product, attorney-client communications, confidential settlement communications as defined by Federal Rule of Evidence 408, material governed by the common interest privilege, or any other applicable privilege or protection.  The inadvertent production of any privileged information shall not be deemed a waiver of any claim of protection or privilege that UR may have as to such information, and UR reserves the right to demand the return and/or destruction of all information inadvertently produced, including any copies or other materials based upon or derived from such information.

7.     UR objects to the Interrogatories to the extent they seek information already in the possession, custody, or control of defendant, or are as equally accessible to defendant as they are to UR, on the ground that the production of such information would be unduly burdensome.

8.     UR objects to the Interrogatories to the extent that they purport to inquire about issues, or seek information or require production of information, not within UR's possession, custody, or control.

9.     UR objects to the Interrogatories to the extent they demand information pertaining to ultimate factual and/or legal conclusions that can only be determined after a full and complete trial of the action.

10.     UR objects to the Interrogatories to the extent they are overly broad, vague, unduly burdensome, oppressive, seek information not material and necessary to the prosecution or defense of this action and/or not reasonably calculated to lead to the discovery of admissible evidence.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify all individuals involved with the design, manufacture, or assembly of the Light-Pipe and whether each such named person was an employee of the U of R at the time of the performance of his or her respective role.

### RESPONSE:

Subject to and without waiving the foregoing general objections, UR states that Chris Fullone, Andy Dillenbeck and Pat Ellsworth, a UR student co-op, designed the Light-Pipe. Miguel Cruz, Samuel Roberts, Jack Armstrong and Vladimir Glebov installed the Light-Pipe. All were UR employees at the relevant time.  Other UR employees may have provided additional

assembly or installation support, but UR has not been able to identify by name other such

employees.

## INTERROGATORY NO. 2:

Identify all individuals who were responsible for servicing, repairing, adjusting, and/or maintaining the Light-Pipe during the six months prior to and including the Date of the Accident and under whose supervision the servicing, repairing, adjusting, and/or maintaining of the Light-Pipe during that period was conducted.

## RESPONSE:

Subject to and without waiving the foregoing general objections, upon information and

belief, UR states that Samuel Roberts, Miguel Cruz and Vladimir Glebov were responsible for

servicing, repairing, adjusting and maintaining the Light-Pipe during the six months prior to and

including the Date of the Accident. The servicing, repairing, adjusting and maintaining of the

Light-Pipe was conducted under the supervision of Vladimir Glebov or the Shot Director on the

day of the Light-Pipe's use in an experiment. All were UR employees.

## INTERROGATORY NO. 3:

Identify all individuals who directed or instructed Plaintiff to perform any service, maintenance, adjustment, or repair to the Light-Pipe, or any portion of the Light-Pipe assembly, on the Date of the Accident and the title and authority of the person who directed or instructed the Plaintiff to do so.

## RESPONSE:

Subject to and without waiving the foregoing general objections, UR states that the

Vladimir Glebov, UR scientist, recommended that the Plaintiff make an adjustment to the Light-

Pipe on the day of the accident. Timothy Wilson, UR Shot Director, authorized Plaintiff to enter

the Target Bay to perform the adjustment.

**INTERROGATORY NO. 4:**

Describe the content of any instructions, whether oral or written, given to the Plaintiff concerning the circumstances under which he was permitted to repair, maintain, adjust, or service the Light-Pipe and when and by whom such instructions were provided.

**RESPONSE:**

UR objects to this Interrogatory as it is not limited in time and is therefore vague, and ambiguous. Subject to and without waiving the foregoing specific objection or general objections, UR states that on August 6, 2008, Plaintiff was orally instructed by Vladimir Glebov to reduce the pressure on the Light-Pipe from 100 psi to 50 psi. Dr. Glebov further asked Plaintiff whether he knew how to perform the task to which Plaintiff replied in the affirmative.

**INTERROGATORY NO. 5:**

Identify when the first Light-Pipe was installed at LLE in the OMEGA chamber, and any changes to the size or functionality of the Light-Pipe between the date of first use and the Accident.

**RESPONSE:**

UR objects to this Interrogatory on the grounds that the term "first Light-Pipe" is undefined and therefore vague and ambiguous. UR further objects to this Interrogatory on the grounds that the term "functionality" is undefined and therefore vague and ambiguous. Subject to and without waiving the foregoing specific objection or foregoing general objections, UR states, upon information and belief, that the reentrant tube was installed on June 28, 2006 and remaining components and peripherals were installed on July 5, 2006. Upon information and belief, the Light-Pipe was operated in $CO_2$ Cherenkov mode during shots on October 4, 2006, February 22, 2007 and August 6, 2008; the Light-Pipe was operated in scintillator mode during shots on July 19, 2006, January 17, 2007 and March 8, 2007.

**INTERROGATORY NO. 6:**

Identify the number of test shots in which the version of the Light-Pipe in place on the Date of the Accident was used between January 1, 2008 and the Date of the Accident.

**RESPONSE:**

UR objects to this Interrogatory on the grounds that the term "version of the Light-Pipe" is undefined and therefore vague and ambiguous. Subject to and without waiving the foregoing general objections, UR states that between January 1, 2008 and the Date of the Accident, the Light-Pipe was used in eight test shots. Prior to January 1, 2008, the Light-Pipe was used in fifty-two test shots.

**INTERROGATORY NO. 7:**

Describe in detail the terms and conditions under which AWE personnel were permitted to conduct, or participate in, experiments at LLE, and identify any contracts, agreements, or other documents which define or identify such terms and conditions.

**RESPONSE:**

UR objects to this Interrogatory on the grounds that the terms "conduct" and "participate in" are undefined and therefore vague and ambiguous. Subject to and without waiving the foregoing specific objection or general objections, UR states that there were no contracts or agreements between UR and AWE which defined or identified any terms or conditions under which AWE personnel were permitted to conduct or participate in experiments at the LLE. Non-UR personnel at the LLE were subject to the terms and conditions contained in the Laser Facility Organization & Regulation Manual during their time at the LLE.

**INTERROGATORY NO. 8:**

Identify all personnel who were permitted to access the Target Chamber on the Date of the Accident and, for each such individual named, identify their specific role, responsibility or authority within the Target Chamber and each individual's employer.

**RESPONSE:**

UR objects to this Interrogatory on the grounds that the term "Target Chamber" is incorrectly used. When responding to this Interrogatory, UR will assume the requesting party intended to use the term "Target Bay." Subject to and without waiving the foregoing specific objection or general objections, UR states that the following UR employees were permitted to access the Target Bay on August 6, 2008: Matt Maslyn and Ron Snyder, Experimental System Operators, Harold Beck and Kurt Herold, Experimental Systems Technicians, Samuel Roberts, Senior Research Engineer, Miguel Cruz, Laboratory Engineer. Additionally, on August 6, 2008, Zaheer Ali, National Securities Technologies LLC, and Scott Evans, Los Alamos National Security, LLC, were permitted access the Target Chamber only under the escort of UR personnel.

**INTERROGATORY NO. 7 [sic]:**

Identify all personnel who were permitted to access "La Cave" on the Date of the Accident and, for each such individual named, identify their specific role, responsibility, or authority within "La Cave" and each individual's employer.

**RESPONSE:**

Subject to and without waiving the foregoing general objections, UR states, upon information and belief that UR employees were permitted to access "La Cave' on the Date of the Accident pursuant to the terms of the Laser Facility Organization & Regulation Manual previously produced in this litigation. Non-UR personnel were permitted in "La Cave" only under the escort of a UR employee. Escorted non-UR personnel were not, however, permitted to modify or utilize any of the equipment contained in "La Cave."

**INTERROGATORY NO. 8 [sic]:**

Identify all rules, regulations and policies concerning access to the Target Chamber by non U of R personnel during shot days and which were in place up to and including the Date of the Accident.

**RESPONSE:**

UR objects to this Interrogatory on the grounds that the term "Target Chamber" is incorrectly used. When responding to this Interrogatory, UR will assume the requesting party intended to use the term "Target Bay." UR further objects to this Interrogatory on the grounds that the terms "rules, regulations and policies" are undefined and therefore vague and ambiguous. Subject to and without waiving the foregoing specific objections or general objections, UR states that all non-LLE personnel were required to adhere to the Laser Facility Organization & Regulation Manual concerning access to the Target Bay.

**INTERROGATORY NO. 9:**

Identify all rules, regulations, and policies concerning access to "La Cave" by non U of R personnel during shot days and which were in place up to and including the Date of the Accident.

**RESPONSE:**

UR objects to this Interrogatory on the grounds that the terms "rules, regulations and policies" are undefined and therefore vague and ambiguous. Subject to and without waiving the foregoing specific objection or general objections, UR states that all non-UR personnel were required to adhere to the Laser Facility Organization & Regulation Manual concerning access to "La Cave."

**INTERROGATORY NO. 10:**

State who at the LLE had overall authority and responsibility for safety at or in the Target Bay area where the Light-Pipe was located during the period one week before and including the Date of the Accident and identify the overall chain of command for safety practices at the LLE with regard to the Target Bay and the Light-Pipe.

8

**RESPONSE:**

UR objects to this Interrogatory on the grounds that "chain of command" is undefined

and therefore vague and ambiguous. UR further objects to this Interrogatory on the grounds that

it seeks information not relevant to a claim or defense in this lawsuit. Specifically, it seeks

information regarding the operational authority or responsibility for the Target Bay during

experiments unrelated to the DT Ratio experiment on August 6, 2008. Subject to and without

waiving the foregoing specific objections or general objections, UR states that Samuel Morse,

Omega Facility Division Director, Keith Thorp, Laser Facility Manager, Gregory Pien,

Experimental Operations Group Leader, and Steve Loucks, who had retired from the position of

LLE Chief Safety Officer on July 1, 2008 and continued in an interim role as of August 6, 2008,

had administrative responsibility for the safety of employees at or in the Target Bay.

Additionally, Diana Coppenbarger, Shot Director, had operational responsibility for the safety of

operations at or in the Target Bay on August 6, 2008 from 7:00 A.M. until 2:00 P.M. and

Timothy Wilson, Shot Director, had operational responsibility for the safety of operations at or in

the Target Bay on August 6, 2008 from 2:00 P.M. until 10:00 P.M.

**INTERROGATORY NO. 11:**

Identify all protocols or documents in effect on the Date of the Accident pertaining to
operations at the LLE which included any safety rules, policies, or regulations and state whether
such documents had been disseminated to LLE employees including the Plaintiff prior to the
Date of the Accident.

**RESPONSE:**

UR objects to this Interrogatory on the grounds that the terms "protocols" and

"documents" are undefined and therefore vague and ambiguous. Subject to and without waiving

the foregoing specific objection or general objections, UR states that all UR and non-UR

employees were required to adhere to the Laser Facility Organization & Regulation Manual. This

document was available to all personnel in a variety of locations, including on LLE's public website. The pertinent LFORM has previously been produced in this litigation.

**INTERROGATORY NO. 12:**

State the title and identity of all LLE employees or personnel with authority or responsibility for the imposition and enforcement of safety regulations in the Target Bay or elsewhere at the LLE during the period one week prior to and including the Date of the Accident and the area of responsibility of each such person.

**RESPONSE:**

UR objects to this Interrogatory on the grounds that the term "safety regulations" is undefined and therefore vague and ambiguous. UR further objects to this Interrogatory on the grounds that the term "elsewhere" includes areas other than the OMEGA target bay and therefore seeks information not relevant to a claim or defense in this action. Subject to and without waiving the foregoing specific objections or general objections, UR refers AWE to its response to Interrogatory No. 10.

**INTERROGATORY NO. 13:**

State whether any person other than an employee of the LLE or the U of R was authorized to utilize, repair, maintain, service, or adjust the Light-Pipe or any portion thereof at any time during the week prior to and including the Date of the Accident and if the answer is yes, provide the identity, title and authority of each such person.

**RESPONSE:**

UR objects to this Interrogatory on the grounds that the term "utilize" is undefined and therefore vague and ambiguous. Subject to and without waiving the foregoing specific objection or general objections, UR states that only UR personnel were authorized to repair, maintain, service or adjust the Light-Pipe or any portion thereof.

**INTERROGATORY NO. 14:**

State under what circumstances persons other than employees of the LLE were permitted to configure, adjust, or otherwise handle the Light-Pipe, whether any such person had been

authorized to configure, adjust, or otherwise handle the Light-Pipe during the week preceding and including the Date of the Accident, the identity of such persons, the circumstances under which such persons were permitted to utilize the Light-Pipe, and of what that use consisted.

**RESPONSE:**

UR objects to this Interrogatory on the grounds that the term "utilize" is undefined and therefore vague and ambiguous. Subject to and without waiving the foregoing specific objection or general objections, UR states that use of the light pipe in an experiment was subject to the provisions of the Laser Facility Organization & Regulation Manuel which has been previously produced in this litigation.

**INTERROGATORY NO. 15:**

Identify any reports concerning the Accident including, but not limited to, reports relating to the performance or failure of the Light-Pipe, the Light-Pipe assembly or the failure of its connection to the ceiling plate, and the cause or occurrence of the Accident.

**RESPONSE:**

UR objects to this Interrogatory on the grounds that it seeks information or documents created in anticipation of litigation, attorney work product or attorney-client communications, or any other applicable privilege or protection. UR will identify such reports on a privilege log at the conclusion of its privilege review of responsive documents. Subject to and without waiving the foregoing specific objection or general objections, UR states that relevant and non-privileged reports will be produced in response to AWE's document demands.

**INTERROGATORY NO. 16:**

Identify any documents or reports prepared subsequent to the Accident concerning the cause of the accident or concerning compliance with or violation of any safety rules or regulations at the LLE.

**RESPONSE:**

UR objects to this Interrogatory on the grounds that it seeks information or documents created in anticipation of litigation, attorney work product or attorney-client communications, or any other applicable privilege or protection. UR will identify such reports on a privilege log at the conclusion of its privilege review of responsive documents. Subject to and without waiving the foregoing specific objection or general objections, UR states that relevant and non-privileged reports and documents will be produced in response to AWE's document demands.

**INTERROGATORY NO. 17:**

Identify any reports concerning investigations conducted by the LLE or any governmental agency concerning the cause and occurrence of the Accident involving the Plaintiff.

**RESPONSE:**

UR objects to this Interrogatory on the grounds that it seeks information or documents created in anticipation of litigation, attorney work product or attorney-client communications, or any other applicable privilege or protection. UR will identify such reports on a privilege log at the conclusion of its privilege review of responsive documents. Subject to and without waiving the foregoing specific objection or general objections, UR states that relevant and non-privileged reports will be produced in response to AWE's document demands.

Dated: April 20, 2012

WARD GREENBERG HELLER & REIDY LLP


_____
Eric J. Ward

*Attorneys for Third-Party Defendant,*
  *University of Rochester*
300 State Street
Rochester, New York  14614
Tel.:  (585) 454-0714
Fax:  (585) 231-1921
eward@wardgreenberg.com

TO:   Christine Tramontano, Esq.
      Sean C. Sheely, Esq.
      Philip T. Evans, Esq.

      Holland & Knight LLP
      *Attorneys for Defendant*
        *AWE, PLC*
      31 West 52nd Street
      New York, New York 10019
      Tel: (212) 513-3200
      Fax: (212) 385-9010
      sean.sheely@hklaw.com
      christine.tramontano@hklaw.com

      2099 Pennsylvania Avenue, N.W.
      Suite 100
      Washington, District of Columbia 20006
      Tel: (202) 457-7043
      Fax: (202) 955-3000
      philip.evans@hklaw.com

cc:   Louis J. Micca, Esq.
      *Attorneys for Plaintiff*
        *Samuel M. Roberts*
      11 State Street
      Pittsford, New York 14534
      Tel: (585) 899-6031
      Fax: (585) 383-6357
      lmicca@msn.com

      Beryl Nusbaum, Esq.
      Greta K. Kolcon, Esq.

      Woods Oviatt Gilman LLP
      *Attorneys for Defendant Los Alamos*
        *National Security, LLC*
      700 Crossroads Building
      Two State Street
      Rochester, New York 14614
      Tel: (585) 987-2800
      bnusbaum@woodsoviatt.com
      gkolcon@woodsoviatt.com

David Rothenberg, Esq.

Geiger and Rothenberg, LLP
*Attorneys for Defendant Massachusetts*
  *Institute of Technology*
45 Exchange Street
Suite 800
Rochester, New York 14614
Tel: (585) 232-1946
drothenberg@geigroth.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2012, I served a true and accurate copy of the foregoing University of Rochester's Response to Third-Party Plaintiff AWE, PLC's First Set of Interrogatories by depositing a true copy, enclosed in a post-paid, properly addressed wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York addressed to:

Louis J. Micca, Esq.
*Attorneys for Plaintiff*
*Samuel M. Roberts*
11 State Street
Pittsford, New York 14534

David Rothenberg, Esq.
Geiger and Rothenberg, LLP
*Attorneys for Defendant*
*Massachusetts Institute of*
*Technology*
45 Exchange Street
Suite 800
Rochester, New York 14614

Beryl Nusbaum, Esq.
Woods Oviatt Gilman LLP
*Attorneys for Defendant Los*
*Alamos National Security, LLC*
700 Crossroads Building
Two State Street
Rochester, New York 14614

Christine Tramontano, Esq.
Holland & Knight LLP
*Attorneys for Defendant AWE,*
*PLC*
31 West 52nd Street
New York, New York 10019

_____
Marjorie M. Collins

Exhibit J

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

SAMUEL M. ROBERTS,

            Plaintiff,

    -vs-

LOS ALAMOS NATIONAL SECURITY, LLC,
AWE, PLC, and MASSACHUSETTS
INSTITUTE OF TECHNOLOGY,

            Defendants,

 

AWE, PLC,

            Third-Party Plaintiff,

    -vs-

UNIVERSITY OF ROCHESTER,

            Third-Party Defendant.

11-cv-6206(L)

**RESPONSES AND OBJECTIONS
OF DEFENDANT/THIRD-PARTY
PLAINTIFF AWE, PLC TO THE
FIRST SET OF
INTERROGATORIES OF
PLAINTIFF**

Defendant, AWE Plc ("AWE"), by its attorneys, Holland & Knight LLP, hereby responds

to the First Set of Interrogatories ("Interrogatories") of Plaintiff Samuel M. Roberts ("Plaintiff")

as follows:

**GENERAL OBJECTIONS**

AWE makes the following objections with respect to the Interrogatories and incorporates

by reference said objections into each response as if set forth fully therein:

    1.      AWE objects to any interrogatory to the extent that it seeks to expand the scope

of, or imposes upon AWE, obligations greater than those required by the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the Western District of New York, or any applicable Orders of this Court.

2.      AWE objects to any interrogatory to the extent that it seeks disclosure of information that is not confined to the relevant issues in this case, is beyond the scope of the pleadings, is irrelevant to the subject matter of this action, or is not reasonably calculated to lead to discovery of relevant admissible evidence.

3.      AWE objects to any interrogatory to the extent that it is overbroad, unduly burdensome, and oppressive.

4.      AWE objects to any interrogatory to the extent that it is vague, ambiguous, unintelligible, or unclear; AWE reserves the right to assert specific objections in the event the interrogatory is clarified.

5.      AWE objects to any interrogatory to the extent that it is unlimited in time or otherwise not limited to a time frame relevant to this litigation and to the issues involved in this case on the grounds that such interrogatory seeks information neither relevant to the subject matter of the litigation, nor reasonably calculated to lead to the discovery of admissible evidence.

6.      AWE objects to any interrogatory to the extent that it seeks information not within AWE's possession, custody, or control, or which is within the knowledge, possession, custody, or control of University of Rochester ("U of R"), Plaintiff, or a third party, or is otherwise accessible to Plaintiff from other sources with substantially the same or greater facility than AWE.

7.      AWE objects to any interrogatory to the extent that it attempts to elicit protected documents or information subject to, among other things, the attorney-client privilege, the work

2

product doctrine, the confidentiality of documents containing the impressions, conclusions, opinions, legal research or theories of AWE or its attorneys, or seeks information prepared in anticipation of litigation or information that is proprietary in nature. Furthermore, AWE objects to any interrogatory to the extent it requests information from any and all agents, attorneys, investigators, consultants, experts, and other representatives that AWE has retained. AWE asserts each and every one of the foregoing privileges and protections applicable to the information sought to the fullest extent provided by law, applicable rules, and current and future case management orders. In the event any privileged information is produced by AWE, its production is inadvertent and does not constitute a waiver of any privilege.

8.      AWE objects to any interrogatory to the extent that it seeks documents or information constituting trade secrets, or other confidential, research, development, commercial, financial, personal, and/or proprietary information.

10.     AWE's responses are made without waiving or intending to waive, but rather preserving and intending to preserve:

   a. All objections to the relevance, authenticity or admissibility of any information. The supplying of any such information does not constitute an admission by AWE that such information is relevant, authentic or admissible;
   b. The right to object to the use of any document or thing in any aspect of this action or any other judicial or administrative proceeding or investigation;
   c. The right to object at any time to a demand for any further responses to the First Interrogatories or any other request for disclosure; and
   d. The right at any time to supplement or amend these responses.

12.     Neither the fact that any objection is interposed to a particular interrogatory nor the fact that no objection is interposed necessarily means that responsive information or documents exist.

14.     All objections and responses are based on AWE's knowledge, information and belief at this time. AWE has made a reasonable and good faith effort to respond. However,

3

AWE has not completed preparation for trial.  AWE specifically reserves the right to amend these responses should additional information and/or documents become available and to use such information at trial.  AWE further reserves the right to raise any additional objections deemed necessary or appropriate.

**SPECIFIC OBJECTIONS AND RESPONSES**

**INTERROGATORY 1:**      Identify any employee of AWE that was a principal investigator for the Experiment being conducted at the LLE on August 6, 2008.

**RESPONSE:** AWE objects to this interrogatory on the basis that the term "principal investigator" is not defined, and the interrogatory is, therefore, vague and ambiguous.  AWE also objects to this interrogatory on the ground that "Experiment", as defined, encompasses any scientific study at the LLE, and the interrogatory refers to "the" Experiment, but fails to identify the specific scientific study to which it refers.  Notwithstanding, and without waiving, its general and specific objections, AWE states that no employee of AWE was a principal investigator for any experiment conducted at the LLE on August 6, 2008.  Dr. Colin J. Horsfield was the senior AWE employee on site at LLE on August 6, 2008, and he was accompanied by 3 other AWE employees: Mike Rubery, Dave Drew and Warren Garbett.

**INTERROGATORY 2:**      Identify any employee of AWE who was a principal investigator for any Experiments conducted at LLE prior to August 6, 2008.

**RESPONSE:** AWE objects to this interrogatory on the basis that it seeks information that is not relevant to this litigation and not likely to lead to relevant information.  Notwithstanding, and without waiving, its general and specific objections, AWE respectfully refers Plaintiff to the documents AWE produced on March 9, 2012 (AWE 000003 - 15).  AWE further states that no

AWE employee served as a principal investigator for Experiments conducted at LLE on August 6, 2008.

**INTERROGATORY 3:**    State which Experiments referred to in response to Interrogatory 2 above were conducted when the Light Pipe was in use.

**RESPONSE:** AWE objects to this interrogatory on the basis that it seeks information that is not relevant to this litigation and not likely to lead to relevant information.  Notwithstanding, and without waiving, its general and specific objections, AWE respectfully refers Plaintiff to the documents AWE produced on March 9, 2012 (AWE 000325-409), and further states that the Light Pipe in place at LLE on August 6, 2008 was not used in any experiments in which AWE personnel participated prior to August 6, 2008.

**INTERROGATORY 4:**    State whether or not any employees of AWE identified in response to Interrogatories 1 or 2 above were aware that the Light Pipe in use at LLE on or prior to August 6, 2008 was operated with the use of pressurized gas.

**RESPONSE:** AWE states that the Light Pipe, as configured and in place at LLE on August 6, 2008, was not used in any experiments in which AWE personnel participated in prior to August 6, 2008.  One or more of the AWE personnel identified in response to Interrogatory No. 1 may have been aware that the Light Pipe used on August 6, 2008 was operated with pressurized gas, but no AWE personnel were responsible for any calibration, configuration or operation of pressure related devices in connection with the Light Pipe.

**INTERROGATORY 5:**     State whether or not any employees of AWE entered the Target Bay (with or without an escort) when the Light Pipe was present in the Target Bay at any time on or before August 6, 2008.

**RESPONSE:** AWE states that no AWE personnel identified in response to Interrogatory No. 1 entered the Target Bay any time after the installation of the Light Pipe as configured and used on August 6, 2008.


**INTERROGATORY 6:**     Identify the employee(s) of AWE that have seen or observed the Light Pipe and/or its pressurized gas system on or prior to August 8, 2008.

**RESPONSE:** AWE states that no AWE employee saw or observed the configuration of the Light Pipe in place August 6, 2008 in the Target Bay any time after its installation, nor did any AWE employee observe the pressurized gas system in place with the August 6, 2008 Light Pipe. Some or all of the AWE personnel identified in response to Interrogatory No. 1 may have observed that portion of the Light Pipe which extended into "La Cave" on August 6, 2008.


**INTERROGATORY 7:**     Identify any and all manuals, guides, policies, rules or regulations relating to the LLE that were provided to AWE on or before August 6, 2008.

**RESPONSE:** AWE respectfully refers Plaintiff to the documents AWE produced on March 9, 2012, as well as documents that U of R has produced in this litigation.  AWE further states that additional documents responsive to this request may have been made available to AWE through the U of R website that are no longer accessible to AWE and it is, therefore, unable to fully answer this interrogatory.

**INTERROGATORY 8:**     State all facts upon which AWE will rely to establish that AWE is entitled to indemnification and/or contribution from the U of R as set forth in paragraph 18 of AWE's Third-Party Complaint.

**RESPONSE:**  AWE objects to this interrogatory on the basis that it is premature because discovery is still ongoing.  Notwithstanding, and without waiving, its general and specific objections, AWE respectfully refers plaintiff to the U of R's Response to Plaintiff's Rule 36 Request for Admission (Third).


**INTERROGATORY 9:**     Identify and state all documents or facts upon which AWE will rely to establish the terms of the contractual relationship between AWE and the U of R.

**RESPONSE:**  AWE has not, at present time, alleged a defense based on contractual indemnity, and on that basis, AWE objects to this interrogatory on the ground that it seeks information that is not relevant to this litigation and not likely to lead to relevant information.  AWE further objects to this interrogatory on the basis that discovery in this matter is ongoing, and this interrogatory is, therefore, premature.


**INTERROGATORY 10:**     State whether or not AWE took any steps on or before August 6, 2008 to determine whether or not the Light Pipe was safe for use under pressurized gas.

**RESPONSE:** AWE states that it had no control over the design, construction, installation, maintenance, repair, or operation of any diagnostics or equipment used at LLE, including the Light Pipe - at any point in time, and as configured on August 6, 2008.  AWE further states that it had no reason to believe that the Light Pipe was unsafe for use, with or without pressurized

gas.  AWE relied upon LLE to ensure that all elements of the laboratory, including the various

diagnostics, were designed and operated in accordance with appropriate safety protocols.

Dated: April 12, 2012
      New York, New York

                            HOLLAND & KNIGHT LLP

                            By: /s/Christine Tramontano
                            Sean C. Sheely, Esq.
                            Christine Tramontano, Esq.
                            *Attorneys for Defendant, AWE, PLC*
                            31 West 52nd Street
                            New York, New York 10019
                            (212) 513-3200
                            sean.sheely@hklaw.com
                            christine.tramontano@hklaw.com

                            Philip T. Evans, Esq. (admitted *pro hac vice*)
                            2099 Pennsylvania Avenue, N.W., Suite 100
                            Washington DC 20006
                            Phone 202-457-7043
                            philip.evans@hklaw.com

8

**<u>VERIFICATION</u>**

I, TIMOTHY GOLDSACK, pursuant to 17 U.S.C. 1746, under penalty of perjury under the laws of the United States of America, verify that the foregoing Responses to Plaintiff's First Set of Interrogatories to AWE plc are true and correct.

Executed on _____11 April 2012_____

_____
TIMOTHY GOLDSACK

9

## CERTIFICATE OF SERVICE

I, Christine Tramontano, Esq. attorney of record for Defendant, AWE, PLC, in the above-styled and referenced matter, do hereby certify that on April __, 2012, I served the Responses and Objections of Defendant/Third-Party Plaintiff AWE, PLC to Plaintiff's First Set of Interrogatories via electronic mail and first class mail to the following:

Louis J. Micca, Esq.
*Attorney for Plaintiff*
11 State Street
Pittsford, New York 14534
585.899.6031
lmicca@msn.com

Beryl Nusbaum, Esq.
*Attorneys for Defendant,*
 *Los Alamos National Security, LLC*
700 Crossroads Building
Two State Street
Rochester, New York 14614
585.987.2800
bnusbaum@woodsoviatt.com

David Rothenberg, Esq.
Geiger and Rothenberg, LLP
*Attorneys for Defendant Massachusetts*
*Institute of Technology*
45 Exchange Street, Suite 800
Rochester, New York 14614
Tel: (585) 232-1946
Fax: (585) 232-4746
drothenberg@geigroth.com

Eric J. Ward, Esq.
Ward Greenberg Heller & Reidy LLP
*Attorneys for University of Rochester*
300 State Street, 6th Floor
Rochester, NY 14614
eward@wardgreenberg.com

THIS, the __th day of April, 2012.

HOLLAND & KNIGHT LLP

By: /s/ Christine Tramontano
Christine Tramontano, Esq.
*Attorneys for Defendant, AWE, PLC*
31 W. 52nd Street
New York, New York 10019
(212) 513-3200
christine.tramontano@hklaw.com

10

#11090217_v2