UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SAMUEL M. ROBERTS,

        Plaintiff,

  vs.

LOS ALAMOS NATIONAL SECURITY, LLC, AWE,      **Civil No. 11 CV 6206L**
PLC., MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

        Defendants,
        Third-Party Plaintiffs,

  vs.

UNIVERSITY OF ROCHESTER

        Third-Party Defendant.

## AFFIDAVIT IN SUPPORT OF DEFENDANT/THIRD-PARTY PLAINTIFF'S MOTION TO STRIKE PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

STATE OF NEW YORK  )
COUNTY OF MONROE  ) ss:

    **Beryl Nusbaum,** being duly sworn, deposes and states:

    1.    That he is an attorney admitted to practice before the United States District Court for the Western District of New York and is a member of the firm of Woods Oviatt Gilman LLP, attorneys for the Defendant/Third-Party Plaintiff Los Alamos National Security, LLC ("LANL") and is familiar with the facts and circumstances of this case.

    2.    That this Affidavit is submitted in support of LANL's motion to strike portions of Plaintiff's Statement of Undisputed Material Facts.

3. That the United States District Court for the Western District of New York's Local Rule 56(a)(1), requires that summary judgment motions be accompanied by a party's Statement of Material Facts for which the party contends there is no genuine issue to be tried. Local Rule 56(a)(3) requires that all Statements of Material Facts be supported by citations to admissible evidence.

4. That as set forth more fully in LANL's accompanying Memorandum of Law, a party cannot deem a statement to be an "undisputed fact" simply by placing the statement in a Rule 56 Statement of Facts. Where the cited materials do not support the assertions of fact, it is proper for this Court to strike the Statement of Facts or, alternatively, to disregard those assertions that are not supported by the evidence.

5. That Plaintiff's Statement of Undisputed Material Facts is not supported in any manner by any Affidavit from anyone having personal knowledge of the management or operation of the Laboratory for Laser Energetics ("LLE") where Plaintiff's injury occurred, from anyone having personal knowledge of the practices of the LLE, its documentation and rules regarding qualification of diagnostics, or from anyone having personal knowledge of Plaintiff's accident, the control, supervision, or management of the equipment at the LLE, or the design, assembly, utilization, operation, or qualification of the diagnostic involved in the accident.

6. That Plaintiff's Statement of Undisputed Material Facts is also not supported by any Affidavit, statement, or documentation from Plaintiff himself, despite the fact that Plaintiff had been a ten-year employee of the LLE, had reported directly to Dr. Vladimir Glebov, the LLE Principal Investigator who sent him into the Target Bay on the date of the accident and who, in fact, entered the Target Bay at the LLE where the accident occurred and was the last person to perform services on the Light Pipe before the accident, the University of Rochester diagnostic, the failure of which caused Plaintiff's injuries.

7. That Plaintiff's counsel has no personal knowledge of the facts at issue, including the policies and procedures of the University of Rochester and the LLE.

8. That Plaintiff's Statement of Undisputed Material Facts (a copy of which is attached hereto as **Exhibit A**) is largely based on Plaintiff's counsel's conclusory arguments and unsupported interpretations of the documents prepared by the University of Rochester Laboratory of Laser Energetics ("LLE").

9. That in the instances where Plaintiff's counsel cites to sworn statements of individuals with personal knowledge of the relevant facts and the University's policies and procedures in support of his Statement of Undisputed Material Facts, Plaintiff frequently misquotes and/or misinterprets their statements or documents in order to fit the statements into Plaintiff's counsel's theory of the case.

10. That Plaintiff's counsel's theory of the case appears to be that Dr. Hans Herrmann, an employee of LANL and the Principal Investigator in connection with what was known as the "DT Ratio campaign", also acted as the Principal Investigator for the proprietary diagnostic known as a Light Pipe (which has been designed, assembled, installed, maintained, and serviced by the LLE) and that he had a duty to qualify that LLE diagnostic as safe for use at the LLE on August 6, 2008. Plaintiff's counsel's personal interpretation of the LLE's documents is the only submission that makes these arguments. Plaintiff provides no factual support from any person knowledgeable about the operation of the LLE to support these theories, or any other evidence in admissible form, and all persons with actual knowledge of the University of Rochester's rules, policies and internal regulations have consistently denied Plaintiff's counsel's assertions as being factually inaccurate.

11.     That LANL respectfully requests that this Court strike each of Plaintiff's statements of undisputed facts that are unsupported by the evidence submitted by Plaintiff's counsel and that are not specifically admitted.

12.     That many of the statements that Plaintiff purports to be undisputed are actually directly disputed by the evidence and/or by sworn statements of individuals with actual knowledge of the relevant facts.

13.     That Plaintiff's sixth "undisputed fact" is misleading in that this was not Dr. Herrmann's first experiment and the inference that he was required to participate in 2008 in a familiarization course prior to conducting this experiment, including a briefing on diagnostic qualifications procedures in August of 2008, or any inference that the requirement of a briefing on diagnostic qualifications procedures had any connection with the University of Rochester diagnostic, the Light Pipe in this case, is completely inaccurate. As set forth in the Affidavit of Dr. Vladimir Glebov who is employed by the University of Rochester at the LLE (Docket Number "Dkt. No." 58, ¶ 9), and was the LLE employee responsible for the development and operation of neutron diagnostic instruments, he was the Principal Investigator for the Light Pipe. Dr. Glebov also pointed out no one from LANL participated in any way in the design or approval process or the manufacturing or installation of the Light Pipe (Dkt. No. 58, ¶ 13). As set forth in the Affidavit of Samuel F. B. Morse, the OMEGA Facility Division Director at the LLE, the Light Pipe was not a new diagnostic and qualification was solely the responsibility of Dr. Glebov and LLE personnel (Dkt. No. 69-1, ¶¶ 4, 5, 6, etc.) and it was, in fact, previously qualified by Dr. Glebov. In addition, as set forth in Dr. Herrmann's affidavit (Dkt. No. 66-2, ¶ 10), only LLE personnel were authorized to have direct contact with the Light Pipe and it was included on the Shot Request Form ("SRF") as an applicable diagnostic only by Dr. Glebov's permission (Dkt. No. 66-2, ¶¶ 10, 11).

14.     That Plaintiff's seventh "undisputed fact", that the University of Rochester's rules required Dr. Herrmann to identify any nonqualified diagnostics before the experiment of August 6, 2008, is not supported even by the language of Section 4.2.1.7 cited by the Plaintiff and it is not correct that Dr. Herrmann had any responsibility to identify nonqualified diagnostics. As set forth in the Affidavit of Samuel F. B. Morse, paragraph 3 (Dkt. No. 69-1, ¶¶ 3, 14), Dr. Herrmann had no responsibility to qualify the Light Pipe nor did any University policy transfer responsibility to him. In paragraph 4 of the same affidavit he states that the responsibility for qualifying the Light Pipe was that of Dr. Glebov and that the Light Pipe had been previously qualified by Dr. Glebov. With regard to the citation of Section 4.2.1.7 Mr. Morse states that Dr. Herrmann did exactly what the L-Form required, designating Dr. Glebov as the Principal Investigator for the Light Pipe (Dkt. No. 69-1, ¶ 7).

15.     Plaintiff's eighth, ninth and tenth "undisputed facts" asserting it was Dr. Herrmann's responsibility to qualify new diagnostics two weeks before the date of an experiment, that Dr. Herrmann did not qualify the Light Pipe per LLE Instruction 7700, and that the Light Pipe was not qualified are both disputed and incorrect for many reasons. As previously set forth, Dr. Herrmann was not the Lead Principal Investigator for the Light Pipe, only for the DT Ratio campaign. As set forth in the Affidavits of Dr. Glebov and Mr. Morse, Dr. Herrmann was not responsible for and played no part in the qualification of the Light Pipe and the Light Pipe had already been qualified by Dr. Glebov (Samuel F. B. Morse Affidavit Dkt. No. 69-1, ¶ 4). In addition, as set forth in paragraphs 4 through 6 of the Supplemental Affidavit of Samuel F. B. Morse (Dkt. No. 69-1), LLE policies only require that new diagnostics be fully qualified and the Light Pipe, having been already qualified, was not required to be re-qualified. Finally, as set forth in paragraph 10 of the Supplemental Affidavit of Samuel F. B. Morse, only University of Rochester employees participate in the qualification process.

{1634627: }5

16. That Plaintiff's twelfth "undisputed fact", again asserting the responsibility of Dr. Herrmann to qualify the Light Pipe two weeks before August 6, 2008, is directly contradicted by Samuel F. B. Morse who wrote that Accident Investigation Report that Plaintiff cites in support of his statement. That, as set forth in paragraphs 8 through 12 of his Supplemental Affidavit (Dkt. No. 69-1), the University did not conclude that Dr. Herrmann bore any responsibility whatsoever related to the Light Pipe and that all references in the Report prepared by the University of Rochester were references to University of Rochester employees. In addition, Mr. Morse specifically states in paragraphs 3 and 4 of his supplemental affidavit (Dkt. No. 69-1) that Dr. Herrmann had no responsibility for qualifying the Light Pipe; that Dr. Glebov was responsible for qualifying the Light Pipe; and that the Light Pipe had been used in OMEGA experiments since being qualified in 2006.

17. That Plaintiff's thirteenth "undisputed fact" is misleading in that it infers that Dr. Herrmann had qualification duties and is not supported by the cited evidence and is contradicted by Samuel F. B. Morse. Plaintiff cites to paragraph 9 of the original Affidavit of Samuel F. B. Morse (Dkt. No. 57) to support his statement that the University of Rochester requires Principal Investigators to comply with the terms and conditions of all applicable University policies and procedures. Paragraph 9 of Samuel F. B. Morse's original affidavit (Dkt. No. 57) actually states that the LLE has "developed a process for submission, approval and execution of all proposed experiments", which is documented in the LLE Manual. Further, as set forth in paragraphs 13 and 14 of the Supplemental Affidavit of Samuel F. B. Morse (Dkt. No. 69-1), although all users of the LLE are required to adhere to the University's safety requirements, there is no University of Rochester policy that would transfer the University's responsibility to operate the OMEGA Facility or control the activities of University of Rochester personnel to an outside non-University entity.

18. That Plaintiff's fourteenth "undisputed fact", inferring that Dr. Herrmann had ultimate responsibility to comply with all applicable University of Rochester policies, rules and regulations, as they pertain to qualification of the Light Pipe, is contradicted by Samuel F. B. Morse. That, as set forth in paragraphs 14-16 of his Supplemental Affidavit (Dkt. No. 69-1), University employees, not Dr. Herrmann, retain overall control and "full and final responsibility" for the operation of the program, and that Dr. McCrory, the LLE director, was the Project Director with "full and final responsibility."

19. That because Plaintiff fails to provide or cite to evidence in admissible form to support many of the statements included in Plaintiff's Statement of Undisputed Material Facts, and because Plaintiff's statements are largely based on speculation and conclusory arguments made by Plaintiff's counsel, this Court should strike Plaintiff's Statement of Undisputed Material Facts or, in the alternative, strike all such statements that are not supported by admissible evidence, and grant such other and further relief to LANL as this Court deems just and proper.

/s/: Beryl Nusbaum  
Beryl Nusbaum, Esq.

Sworn to before me this  
14th day of November, 2012.

/s/: Amy L. Blakley  
Notary Public

Amy L. Blakley  
Notary Public, State of New York  
No. 01BL6170635  
Qualified in Monroe County  
Commission Expires July 9, 2015

**EXHIBIT A**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SAMUEL M. ROBERTS,

                              Plaintiff,

-vs.-

                                **Civil No. 11 CV 6206L**

LOS ALAMOS NATIONAL SECURITY, LLC.,
AWE, PLC., MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

                              Defendants,
                         Third-Party Plaintiffs,

-vs.-

UNIVERSITY OF ROCHESTER

                             Third-Party Defendant.

---

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS
PURSUANT TO LOCAL RULE 56**

**RESPONSE TO U OF R'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

       Pursuant To Local Rule 56 of the Rules of Civil Procedure for the United States District Court for the Western District of New York, Plaintiff, Samuel M. Roberts, responds to the U of R's Statement of Undisputed Material Facts as follows:

1. Undisputed.

2. Undisputed. However, other, non-LLE FASC members are welcome to attend meetings of the subcommittee if available on site. Plaintiff has not yet conducted depositions to determine whether any of the subcommittee meetings were attended by Los Alamos personnel and the U of R has not produce any minutes of any FASC subcommittee meetings. If the FASC delegated its duty to a subcommittee, the FASC

is responsible for the actions of its subcommittee. See Micca Declaration, Exhibit 17 Sections 1.1.3, 3.1, and 3.1.1.

3. Disputed. See 2 above.

4. Disputed. The U of R rules and regulations impose various responsibilities upon principal investigators that may not be U of R employees regarding both the experiments being conducted at the University of Rochester Laboratory for Laser Energetics "UR/LLE" and regarding ancillary equipment such as the High Yield Neutron Temporal Diagnostic "Light Pipe". See Micca Declaration, Exhibits 17, 19, 20, 21 and 22, Plaintiff's Memorandum of Law.

5. Undisputed.

6. Undisputed, however, the date was August 6, 2008.

7. Undisputed.

8. Undisputed

9. Disputed. Employees of the Defendant, Los Alamos National Security, LLC ("Los Alamos" hold two seats on the FASC which approved the DT Ratio campaign which included the experiment being conducted on August 6, 2008, the date of the accident. See Morse Affidavit paragraphs 11, 18 and 19; Micca Declaration Exhibit 17.

10. Undisputed. However, third-party Principal Investigators are required to ensure qualification of all new diagnostics (including the Light Pipe) pursuant to U of R, LLE Instructions 7700 prior to use in their experiments. See Micca Declaration, Exhibits 17 and 22.

11. Undisputed. See 10 above.

12. Undisputed.

13. Disputed. Plaintiff was required to take direction from Principal Investigators as part of his duties of employment by the U of R.

14. Disputed. Pursuant to the U of R rules and regulations, UR/LLE personnel may only modify a Shot Request Form with the concurrence of the Principal Investigator. Therefore, any change in carbon dioxide pressure within the Light Pipe between shots can only be made with the Principal Investigator's concurrence. See Micca Declaration, Exhibit 17 section 4010

15. Undisputed, however, the date was August 6, 2008.

16. Undisputed, however, the date was August 6, 2008.

17. Disputed. Plaintiff does not recall and depositions of the defendants have not yet been conducted.

**RESPONSE TO MIT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant To Local Rule 56 of the Rules of Civil Procedure for the United States District Court for the Western District of New York, Plaintiff, Samuel M. Roberts, responds to the MIT's Statement of Undisputed Material Facts as follows:

1. Undisputed.

2. Undisputed.

3. Disputed. All Principal Investigators had the duty to fully qualify the Light Pipe prior to conducting the experiment on the date of Plaintiff's injuries. See Plaintiff's Memorandum of Law.

4. Disputed. See 3 above.

5. Undisputed.

6. Undisputed.

7. Undisputed.

8. Undisputed.

9. Undisputed.

10. Undisputed.

11. Undisputed.

12. Undisputed.

13. Undisputed.

14. Undisputed.

15. Undisputed.

16. Undisputed.

17. Undisputed.

18. Undisputed.

19. Undisputed.

20. Undisputed.

21. Undisputed.

22. Undisputed.

23. Undisputed.

24. Undisputed.

25. Disputed. See 2 above.

26. Disputed. See 2 above.

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56 of the Rules of Civil Procedure for the United States District Court for the Western District of New York, Plaintiff, Samuel M. Roberts, hereby submits his Statement of Undisputed Material Facts to which it contends there is no genuine issue to be tried:

|   | **Undisputed Fact** | **Evidentiary Support** |
|---|---|---|
| 1. | The U of R makes the OMEGA Laser available to outside research laboratories, such as Los Alamos, for various experiments. | Morse Affd. ¶ 8. |
| 2. | Dr. Herrmann of Los Alamos proposed the experiment being conducted on August 6, 2008, the date of the accident. | Glebov Aff. ¶ 17. Morse Aff. ¶ 18, 19. |
| 3. | Dr. Herrmann of Los Alamos was the Lead Principal Investigator for the experiment being conducted on August 6, 2008, the date of the accident. | Glebov Aff. ¶ 17. |
| 4. | Los Alamos was a user of the OMEGA Laser on August 6, 2008, the date of the accident. | Micca Decl. Exhibit 18, Response to Request for Admission 14. |
| 5. | Los Alamos was required to adhere to applicable provision within the U of R's OMEGA Laser Facility Organization & Regulation Manual ("LFORM"). | Micca Decl. Exhibit 23, Response to Interrogatory No. 8. |
| 6. | The U of R's rules and regulations required Dr. Herrmann to complete an OMEGA familiarization prior to conducting his first experiment including a briefing on OMEGA capabilities, a review of Principal Investigator's responsibilities, a safety briefing, a tour of the OMEGA Laser and a briefing on diagnostic qualification procedures. | Micca Decl. Exhibit 17, Section 4.1. |
| 7. | The U of R's rules and regulations required Dr. Herrmann as Lead Principal Investigator to identify any non-qualified diagnostics he planned for use during his experiment conducted on the date of the accident. | Micca Decl. Exhibit 17, Section 4.2.1.7. |
| 8. | The U of R's rules and regulations required Dr. Herrmann as Lead Principal Investigator to qualify all new diagnostics as per LLE Instructions 7700 two weeks before the date of the experiment. | Micca Decl. Exhibit 17, Section 4.2.1.7. |
| 9. | Dr. Herrmann did not qualify the Light Pipe as per LLE Instructions 7700 prior to conducting his experiment on August 6, 2008, the date of the accident. | Micca Decl. Exhibit 16. |
| 10. | Since the Light Pipe was not qualified per LLE Instruction 7700 prior to August 6, 2008, an Operational Readiness Review that includes the preparation and completion of written fit and function tests, installation, and qualification test plans was not performed. | Micca Decl. Exhibit 22, Exhibit 16. |
| 11. | On August 6, 2008, the Light Pipe structure fell from its support due to the use of inadequate mounting bolts (three ¼ inch bolts rather than apparent design intent of five ½ inch bolts). | Micca Decl. Exhibit 16. |
| 12. | The desire of Dr. Herrmann as Lead Principal Investigator to use the Light Pipe in impending OMEGA experiments and his failure to comply with the | Micca Decl. Exhibit 16. |

| | | |
|---|---|---|
| | requirement that the Light Pipe be qualified two weeks prior to use caused the support structure to be installed with inadequate size and number of fasteners; the pressure control system to be installed without relief protection and with fittings and a regulating valve that was not rated for the industrial gas bottle pressure source; and the use of an incorrect procedures to operate the pressure regulation system that were not approved. | |
| 13. | The U of R rules and regulations require Principal Investigators to comply with the terms and conditions of all applicable U of R policies, rules and regulations. | Morse Affd. ¶ 9, Micca Decl. Exhibit 23, Response to Interrogatory No. 8, and Exhibit 20. |
| 14. | The U of R rules and regulations state that when there are "Co-" Principal Investigators, the first-named individual on the project proposal (in this case Dr. Herrmann) shall be the person with the ultimate responsibility to comply with all applicable U of R policies, rules and regulations. | Micca Decl. Exhibit 23. |
| 15. | The OMEGA Facility is governed in part by the OMEGA Facility Advisory and Scheduling Committee (FASC). | Micca Decl. Exhibit 17, Sections 1.1.3. |
| 16. | The FASC is responsible to review experimental proposals for compatibility and safety, and to review diagnostics such as the Light Pipe and recommend improvements where warranted. | Micca Decl. Exhibit 17, Sections 3.1, 3.1.1. |
| 17. | Two members of the 12 member FASC are employed by Los Alamos. | Micca Decl. Exhibit 17, Sections 3.1.1.1. |

DATED:    Pittsford, New York
              October 5, 2012

                                    ___s/Louis J. Micca_____
                                    Louis J. Micca, Esq.
                                    *Attorney for Plaintiff Samuel M. Roberts*
                                    11 State Street
                                    Pittsford, NY 14534
                                    Telephone: (585) 899-6031
                                    Facsimile: (585) 383-6357
                                    E-mail: lmicca@msn.com