UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SAMUEL M. ROBERTS,

        Plaintiff,

vs.

LOS ALAMOS NATIONAL SECURITY, LLC, AWE, PLC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY,

**Civil No. 11 CV 6206L**

        Defendants,
        Third-Party Plaintiffs,

vs.

UNIVERSITY OF ROCHESTER

        Third-Party Defendant.

**DEFENDANT AND THIRD-PARTY PLAINTIFF, LOS ALAMOS NATIONAL SECURITY, LLC's RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

        Pursuant to Local Rule 56 of the Rules of Civil Procedure of the United States District Court for the Western District of New York, Defendant and Third-Party Plaintiff, Los Alamos National Security, LLC, hereby submits its response to Plaintiff's Statement of Undisputed Material Facts as follows:

1.     Denied in part. The original Affidavit of Samuel F.B. Morse (Dkt. No. 57), in paragraph 8 states that the LLE permits outside researchers from other organizations to propose experiments to be conducted using the lasers and ancillary equipment in the OMEGA Facility. It does not say that the OMEGA laser is made available to outside research laboratories such as Los Alamos for various experiments as set forth in Plaintiff's statement. In fact, no outside researchers are allowed access to the OMEGA Facility without direct control of LLE employees (Affidavit of Hans Herrmann, Dkt. No. 66-2 ¶

{1625459: }

7).

2. Admitted except that paragraph 19 of the Morse Affidavit (Dkt. No. 57) states that Dr. Herrmann submitted an experiment proposal on June 17, 2008, as part of a multi-year campaign originally proposed in 2006.

3. Admitted.

4. Denied in part. The response to Plaintiff's request for Admission No. 14 states that Los Alamos National Laboratories, LLC was an external user of the LLE on August 6, 2008, but, contrary to Plaintiff's request to admit to the University of Rochester, this experiment was not a National Laser Users Facility ("NLUF") experiment and the NLUF User's Guide did not apply (Affidavit of Samuel F.B. Morse, Dkt. No. 69-1 ¶ 13).

5. Admitted that the response to Interrogatory No. 8 by the University of Rochester states that the obligation of LANS, MIT and AWE personnel was to adhere to applicable provisions within the L-Form.

6. Admitted in part, and denied in part. Dr. Herrmann was not required to complete an OMEGA Familiarization Program in August 2008, but only at the time of his first experiment (Exhibit 17 Section 4.1) and this was not his first experiment.

7. Denied. The requirements of Section 4.2.1.7 of Exhibit 17 were the responsibility, in each case, of the particular Principal Investigator who served as the Principle Investigator of each separate diagnostic. Dr. Vladimir Glebov was the Principal Investigator for the light pipe and it was his responsibility to identify whether the Light Pipe was a qualified or non-qualified diagnostic (Affidavit of Samuel F. B. Morse Dkt. No. 69-1 ¶¶ 3, 4, 10). Dr. Herrmann's responsibility was limited to determining whether Los Alamos owned diagnostics were qualified or non-qualified. That, with respect to the Light Pipe, Dr. Herrmann requested the approval of Dr. Glebov to list the Light Pipe as a diagnostic on

      the Shot Request Form for August 6, 2008, and Dr. Glebov consented. If the Light Pipe had not been previously qualified it could not have appeared on the Shot Request Form ("SRF") (Affidavit of Samuel F.B. Morse, Dkt. No. 69-1 ¶¶ 3, 7).

8. Denied. The responsibility for qualifying the Light Pipe, per LLE Instruction 7700, was the responsibility of the Principal Investigator responsible for each particular diagnostic and that qualification was the responsibility of Dr. Vladimir Glebov for the Light Pipe as its Principal Investigator. In addition, the Light Pipe was not a new diagnostic in use for the first time on August 6, 2008, and its qualification was conducted by Dr. Glebov prior to its original use long before August 6, 2008 (Affidavit of Samuel F.B. Morse, Dkt. No. 69-1 ¶ 4).

9. Denied to the extent that it infers it was the obligation of Dr. Herrmann to qualify the Light Pipe prior to the August 6, 2008 experiment. The responsibility for qualifying the Light Pipe was solely on Dr. Vladimir Glebov, the Principal Investigator for the Light Pipe (Affidavit of Samuel F. B. Morse, Dkt. No. 69-1 ¶¶ 3, 4). The responsibility for complying with the procedures of LLEINST7700 Design of Integration and Equipment was the responsibility of Dr. Vladimir Glebov and the LLE staff (Affidavit of Samuel F. B. Morse, Dkt. No. 69-1 ¶¶ 9, 10, 11, 12). Exhibit 16, which is the Internal Preliminary LLE Incident Report, identifies, specifically in Section 2, "Identification of Apparent Cause", that the accident was caused by the failure of University of Rochester's management to comply with the requirements of LLEINST 3000 Laser Facility Organization and Regulation Manual, including the Experimental Operations Group Leader (Affidavit of Samuel F. B. Morse, Dkt. No. 69-1 ¶¶ 10, 11). In addition, the LLE maintained exclusive control and responsibility for its diagnostic, including the design, development, operation, repair, maintenance, and control. By policy and rule Dr.

      Herrmann was not authorized, as were no outside Principle Investigators, from having any contact with the proprietary diagnostic of the LLE (Affidavit of Samuel F.B. Morse Dkt. No. 69-1 ¶¶ 3, 4, 8, 10, 11, 14, 15).

10. Denied to the extent it asserts the Light Pipe was not qualified prior to August 6, 2008. The Affidavit of Samuel F. B. Morse reports it was, in fact, qualified pursuant to LLE Instruction 7700 long prior to August 6, 2008 (Affidavit of Samuel F. B. Morse, Dkt. No. 69-1 ¶ 4). It is unknown to Los Alamos whether an operational readiness review was conducted, whether there were written fit and function tests and qualification test plans, since that was solely the responsibility and within the control of the LLE and the Principal Investigator responsible for the light pipe, Dr. Vladimir Glebov, and because Los Alamos was excluded from any involvement in any activity pertaining to the design, use, function, repair, or control of that diagnostic. However, the appearance of the Light Pipe on the SRF demonstrated that it had been qualified since it could not appear there until it was qualified (Affidavit of Samuel F. B. Morse, Dkt. No. 69-1 ¶ 7).

11. Denied in part. The principal cause of the failure of the light pipe structure was not the use of inadequate mounting bolts, but Los Alamos admits that the inadequate bolts contributed to the failure of the structure when a significant decompression occurred as a result of the over-pressurization of the light pipe which then resulted in a significant backward rocket effect which torqued the support structure in a manner that caused the bolts to be overstressed and sheared off. The structure did not just fall, it was disconnected by force (See Exhibit 16 (1) U of R "Description of Incident" and also Supplemental Affidavit of Dr. Hans Herrmann, Dkt. No. 73-1 ¶¶ 8 and 14).

12. Denied. The request by Dr. Herrmann that the light pipe be added to the Shot Form as an available diagnostic to the Shot Form for the DT Ratio Experiment scheduled for August

6, 2008, had nothing to do with the installation of the support structure or the pressure control system, both of which had been completed significantly before the preparation of the Shot Form for August 6, 2008. The Light Pipe was qualified before August 6, 2008, it could not have appeared on the Shot Form without its prior approval (Affidavit of Samuel F. B. Morse, Dkt. No. 69-1 ¶ 7). In addition, the installation, design, pressure control system, fittings, and regulator were all solely under the control and direction of Dr. Vladimir Glebov as Principal Investigator for the Light Pipe and Los Alamos had no authority or responsibility concerning it (Affidavit of Samuel F.B. Morse, Dkt. No. 69-1 ¶¶ 3, 4, 10, 14 and Supplemental Affidavit of Dr. Hans Herrmann, Dkt. No. 73-1 ¶¶ 9 and 10). Investigation reveals the Light Pipe was improperly adjusted, which adjustment significantly increased the pressure and which caused a decompression because of over-pressurization, a rocket effect which transmitted significant force to the support structure and torqued it (Supplemental Affidavit of Hans Herrmann, Dkt. No. 73-1 ¶¶ 8 and 14).

13. Admitted with qualification, because the term "PI" means different things depending on the context. It applies differently to diagnostic PIs as to experiment PIs (Affidavit of Samuel F.B. Morse, Dkt. No. 69-1 ¶ 6).

14. Denied. Exhibit 23 which consists primarily of the University of Rochester's answer to Plaintiff's Interrogatory No. 8 makes no such statement, but simply says that all personnel from LANS, MIT and AWE were required to adhere to applicable provisions of the L-Form.

15. Denied that Section 1.1.3 says anything about the governance of the FASC Committee. It merely states that the committee recommends OMEGA System time allocation, promotes an effective user community and reviews the facilities overall effectiveness for users.

16. Admitted that Section 3.1 includes, as the responsibility of the FASC Committee, reviewing experimental proposals for compatibility and safety and that Section 3.1.1 provides for, among other things, review of existing experimental capabilities, such as diagnostics and information availability, and recommend approvals where warranted.  It does not say anything about reviewing the functions of diagnostics, such as the Light Pipe, but merely experimental capabilities of such as diagnostics.

17. Admitted in part and denied in part.  Admitted that a LANS employee was a member of the Ignition Physics Sub-Committee and a member of the Weapons Physics Sub-Committee of the FASC, however, denied that they had any role whatsoever in approving the Shot Form or in the investigation of diagnostics.  Their role was simply to negotiate among the prospective users the scheduling of various experiments and fitting those experiments into the timeslots allocated by the LLE (Affidavit of Steven H. Batha, Dkt. No. 73-3 and Affidavit of Randall J. Kanzleiter, Dkt. No. 73-2).

Dated: November 14, 2012
      Rochester, New York

WOODS OVIATT GILMAN LLP

By:   /s/ Beryl Nusbaum
      Beryl Nusbaum, Esq.
      Greta K. Kolcon, Esq.
      *Attorneys for Defendant/Third-Party*
      *Plaintiff Los Alamos National Security LLC*
      700 Crossroads Building
      2 State Street
      Rochester, New York 14614
      585.987.2800

TO:   Louis J. Micca, Esq.
      *Attorneys for Plaintiff*
      11 State Street
      Pittsford, New York 14534
      585.899.6031

      HOLLAND & KNIGHT, LLP
      Christine Tramontano, Esq.
      *Attorneys for AWE, Plc.*
      31 West 52nd Street
      New York, New York 10019

      GEIGER AND ROTHENBERG, LLP
      David Rothenberg, Esq.
      *Attorneys for Massachusetts Institute of Technology*
      45 Exchange Street, Suite 800
      Rochester, New York 14614

      WARD, GREENBERG, HELLER & REIDY, LLP
      Eric J. Ward, Esq.
      *Attorneys for University of Rochester*
      300 State Street, 6th Floor
      Rochester, New York 14614