UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SAMUEL M. ROBERTS,

                Plaintiff,

vs.

LOS ALAMOS NATIONAL SECURITY, LLC, AWE, PLC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY,

                Defendants,
                Third-Party Plaintiffs,

vs.

UNIVERSITY OF ROCHESTER

                Third-Party Defendant.

**AFFIDAVIT OF HANS W. HERRMANN**

Civil No. 11 CV 6206L

STATE OF NEW YORK  )
COUNTY OF MONROE  ) ss:

Hans W. Herrmann., being duly sworn, deposes and states:

1. That I am employed by Los Alamos National Security, LLC (LANL), and I hold the position of R&D Scientist 4. I make this Affidavit based upon my own personal knowledge in opposition to Plaintiff's motion requesting an Order holding LANL in contempt of court and imposing sanctions, which should be denied.

**LANL'S GOOD FAITH COMPLIANCE WITH DISCOVERY**

2. As a Los Alamos employee who was involved with work conducted by LANL at the LLE on the day of the accident, I have worked with LANL's in-house legal department, as well as Los Alamos' litigation counsel, Woods Oviatt Gilman LLP, to collect documentation that may relate to this matter.

3. I have taken no steps to obstruct disclosure of relevant information in this case, and I have spent substantial amounts of time, including evenings and weekends, doing

{1645652:2 }

everything that I can to assist the attorneys in identifying material that is actually related to the requests from the Plaintiff.

4. I have reviewed thousands of documents both in paper and electronic form in order to identify information that may relate to this case.

## MOST OF PLAINTIFF'S EXHIBIT F, DKT. 65-7 IS NOT RESPONSIVE TO PLAINTIFF'S DISCOVERY DEMANDS TO LANL

5. I understand that Plaintiff's counsel claims that LANL should be held in contempt because LANL has not produced the same documents that the University of Rochester produced. I have personally reviewed the documents Plaintiff's counsel has attached to Plaintiff's motion for contempt at Exhibit F, Dkt. 65-7.

6. The vast majority of the documents included within that exhibit have nothing to do with either the experiments being conducted at the LLE on August 6, 2008, or with the cause of the Plaintiff's accident.

7. Many of the dates of the work being done that is reflected in the Exhibit F, Dkt. 65-7 has to do with other experiments, other shot days, some of which appear to be years before the date that the accident took place. In addition, the experiments that are discussed in those emails are different from the experiments that were to be conducted on the day of the accident at the LLE.

8. For example, Dkt. 65-7 pages 1 and 2, (Bates Nos. UR007846-UR007847) reflects correspondence between Mike Moran, who works for the Lawrence Livermore National Laboratory, and Vladimir Glebov of the University of Rochester, forwarding correspondence regarding a 2006 experiment. However, that experiment involved a different light pipe than the diagnostic involved in Plaintiff's accident. The correspondences reflected in Dkt. 65-7 with Mike Moran have nothing to do with the work being done on the day of the accident.

9. Dkt. 65-7 pages 3-9 (Bates Nos. UR007848-UR007866) appear to be emails

{1645652:2}

forwarded by Mike Moran of Lawrence Livermore National Laboratory to Vladimir Glebov of the University of Rochester in 2008, and no LANL employees were included in the 2008 transmittal of that correspondence. The forwarded emails relate to an experiment that was conducted on October 4, 2006, and not to any work being conducted at the LLE on August 6, 2008, nearly two years later.

10. Similarly, the email correspondence at Dkt. 65-7 pages 10 and 11 (Bates Nos. UR007869-UR007870) are forwarded correspondences between Mike Moran of Lawrence Livermore National Laboratory and Vladimir Glebov of the University of Rochester, but the underlying correspondence from calendar year 2006 discusses proposed shielding for a future experiment at the National Ignition Facility located at the Lawrence Livermore National Laboratory based upon prior experiments at the LLE, and has nothing to do with the work being conducted at the LLE on August 6, 2008.

11. Dkt. 65-7 pages 12-13 (Bates Nos. UR007887-UR007888) relate to collaboration between Lawrence Livermore National Laboratory and the University of Rochester's LLE with respect to experiments scheduled to take place on August 31, 2007, and not to the experiments being conducted on the date of Plaintiff's accident in 2008.

12. Dkt. 65-7 page 14 (Bates No. UR007890) relates to experiments scheduled to be conducted on September 2004. Dkt. 65-7 pages 15-16 (Bates Nos. UR007892-UR007893) relate to experiments being conducted in June 2005. Cindy Christiensen from LANL on this email was not involved in the experiments being conducted on the day of Plaintiff's accident in this case. The same is true with the correspondence relating to the July 2005 experiments at Dkt. 65-7 pages 17-20 (Bates Nos. UR007894-UR007897). Dkt. 65-7 pages 21-31 (Bates Nos. UR007898-UR007908) relate to experiments conducted in June 2007, and not to the experiments on the day of the accident.

13.     Dkt. 65-7 pages 35-40 (Bates Nos. UR007914-UR007919) appear to relate to an experiment referred to as NIC Diagnostic Development (DD) in 2007. I was not involved the work referred to here, nor does it appear to have anything to do with the experiments being conducted on the day of Plaintiff's accident.

14.     Dkt. 65-7 pages 41-43 (Bates Nos. UR007943-UR007945) relate to experimental work conducted on October 4, 2006 and not to the work done on the day of the Plaintiff's accident in 2008. This involved a different light pipe diagnostic than the diagnostic involved in the Plaintiff's accident.

15.     Dkt. 65-7 pages 44-46 (Bates Nos. UR007946-UR007948) relate to fabrication of parts and internal fabrication versus external purchase, none of which relates to the work being conducted nearly two years later at the time of Plaintiff's accident.

16.     The documents beginning at Dkt. 65-7 pages 47-57 (Bates Nos. UR007949-unstamped) relate to work conducted in early 2007 and a presentation of the Gamma Bang Time/Reaction History Diagnostic for the NIF Physics Review in February 2007. This material has no relationship to the experiments being conducted on the date of Plaintiff's accident in 2008.

17.     Dkt. 65-7 pages 58-60 (Bates Nos. UR008007-UR008009) relates to the history of experiments conducted in October 2006 and planning for experiments to be conducted in June 2007.

18.     Dkt. 65-7 page 61 (Bates No. UR008010) refers to a conceptual design that was never implemented and which is not related to the experiment on August 6, 2008.

19.     Dkt. 65-7 pages 62-65 (Bates Nos. UR008038-UR008084) which do not include attachments, appear to relate conference presentations approximately a year before the accident at issue.

20. Dkt. 65-7 page 66 (Bates Nos. UR008102) refers to a presentation by Lawrence Livermore National Laboratory in February 2008 for the National Ignition Facility. Similarly, Dkt. 65-7 page 67-85 (Bates Nos. UR008118-UR008132, UR008147-UR008150) summarizes experiments that Mike Moran of Lawrence Livermore National Laboratory conducted with Vladimir Glebov over a period of years prior to February 2008, including old data from prior experiments.

21. Dkt. 65-7 pages 86-87 (Bates Nos. UR008151-UR008152) is a copy of my correspondence relating to the results of experiments conducted on May 21 and 22, 2008 when LANL was a ride along on a University of Rochester shot day, as well as a discussion of experiment planning for work to be conducted on June 19, 2008, none of which has anything to do with the experiments conducted on the day of Plaintiff's accident.

22. Dkt. 65-7 page 88 (Bates No. UR008153) relates to planning for work to be conducted on June 19, 2008, and not the work to be conducted on August 6, 2008.

23. Dkt. 65-7 page 89 (Bates No. UR008159) references a LANL NIF nuclear diagnostics workshop report held at Lawrence Livermore National Laboratory in 2008. Dkt. 65-7 pages 90-91 (Bates Nos. UR008174-UR008175) discusses issues with a different diagnostic during a previous experiment.

24. Dkt. 65-7 pages 95 and 96 (Bates Nos. UR008209-UR008210) relate to planning for experiments to be conducted in November 2006. I am not listed as a recipient on this document and there is nothing in this document that would relate to the experiments on August 6, 2008.

25. Dkt. 65-7 page 97 (Bates No. UR008211) appears to be correspondence on which I was not copied, relating to comparisons conducted by the University of Rochester on various diagnostics, and this appears to relate to work done in 2006, as does Dkt. 65-7 pages 98 and 99

(Bates Nos. UR008212-UR008213). Dkt. 65-7 pages 100-106 (Bates Nos. UR008214, UR008215, UR008354, UR008355, UR008363, UR008364 and UR008365) relate to experimental work being conducted in 2006.

26. Dkt. 65-7 pages 107-108 (Bates Nos. UR008671-UR008672) relate to experimental work conducted in 2005. Similarly, Dkt. 65-7 pages 109-111 (Bates Nos. UR008681-UR008683) relate to discussions in 2005 relating to work involving Lawrence Livermore National Laboratory and specifically Mike Moran from that laboratory and Vladimir Glebov from the University of Rochester. I was not part of this project at that time.

27. Dkt. 65-7 pages 112-115 (Bates Nos. UR008818-UR008821) similarly appears to relate to correspondence between Lawrence Livermore National Laboratory and the University of Rochester that relates to a different light pipe diagnostic.

28. Dkt. 65-7 pages 116-120 (Bates Nos. UR008826-UR008829 and UR008867) appears to relate to work conducted in 2006 in a collaborative project between Lawrence Livermore National Laboratory and the University of Rochester. I was not a recipient of the document. However, it is my understanding that this project related to a different light pipe diagnostic than the light pipe diagnostic that was involved in the accident two years later which is the subject of this case. Dkt. 65-7 pages 121-124 (Bates Nos. UR008875, UR008876, UR008877 and UR008878) relate to a light pipe project being developed Vladimir Glebov in 2007, which relates to a different light pipe diagnostic than the diagnostic involved in Plaintiff's accident.

## LANL PRODUCED ITS OWN VERSIONS OF THE FEW RELEVANT DOCUMENTS IN EXHIBIT F, DKT. 65-7

29. Dkt. 65-7 page 32 (Bates No. UR007909) appears to be the University of Rochester's version of an email that I sent, and my email from my computer was produced as an exhibit to LANL's Second Supplemental Response to Plaintiff's Demand for Discovery.

{1645652:2 }

Similarly, Dkt. 65-7 page 92 (Bate No. UR008179) appears to be the University of Rochester's version of an email I sent, which is also attached as an exhibit to LANL's Second Supplemental Response to Plaintiff's Demand for Discovery.

## CONCLUSION

30. I am aware of no information that would respond to the Plaintiff's requests or the Court's prior Order on discovery that have been intentionally withheld. I am continuing to cooperate with LANL and LANL's counsel in complying with all requests in this litigation. Therefore, on behalf of LANL, I respectfully submit that Plaintiff's motion for contempt of court against LANL should be denied in its entirety.

_____
Hans W. Herrmann

Sworn to before me this
14th day of November, 2012.

_____
Notary Public

GRETA K. KOLCON
Notary Public, State of New York
Qualified In Monroe County
Reg. #02KO5046539
Commission Expires July 17, 20 17

{1645652:2}