UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SAMUEL M. ROBERTS,

Plaintiff,

DECISION AND ORDER

11-CV-6206L

v.

LOS ALAMOS NATIONAL SECURITY, LLC,

Defendant.

Plaintiff Samuel Roberts, an employee of the University of Rochester ("UR"), brings this action seeking compensation for serious injuries he received during an experiment with a High Yield Neutron Temporal Diagnostic (colloquially referred to as the "light pipe," after its most visible component) at the UR's Laboratory for Laser Energetics ("LLE") on August 6, 2008. While adjusting a pressure valve on the light pipe, it exploded, causing a support bracket to strike plaintiff's head and neck, and rendering him a quadriplegic.

The laser light pipe was a piece of diagnostic equipment owned by the LLE, which uses a streak camera and fast photo multiplier tube ("PMT") to gather data about the time interval between a laser shot and the resulting production of neutrons. Light was delivered from a scintillor or a pressurized carbon dioxide cell to the camera and PMT by means of a highly polished steel pipe approximately 2" in diameter, and the light pipe extended from a support bracket attached to a raised personnel platform similar to a catwalk inside the target bay, down through the floor of the target bay. The light pipe was kept in the LLE's OMEGA Laser Facility, and was made available to outside laboratories for various experiments. Although the outside laboratories could propose and outline the experiments they wished to have conducted and the information they wished to gather,

the laser shots themselves were conducted solely by UR employees under the control of a Shot Director. There were five scientists who were identified as "principal investigators" for the experiment in which plaintiff was injured: one from the UR, two from Los Alamos National Security, LLC ("Los Alamos"), one from AWE, PLC ("AWE"), and one from the Massachusetts Institute of Technology ("MIT").

Barred by New York Workers Compensation Law from bringing an action against his employer, UR, directly, plaintiff brings this negligence action against the employers of each the non-UR "principal investigators" who were associated with the experiment. Those defendants have, in turn, asserted claims against the UR as a third-party defendant.

The UR and the defendants have now filed summary judgment motions, primarily arguing that the UR is directly and solely responsible for the plaintiff's injuries, and that the defendants neither owed nor assumed a duty of care toward the plaintiff. Plaintiff has cross moved for summary judgment against Los Alamos alone, arguing, inter alia, that two Los Alamos employees were members of a particular UR oversight body, the Facilities Advisory and Scheduling Committee ("FASC") which was responsible to ensure that the light pipe had been properly "qualified" for use, and failed to do so.

The parties have also filed motions to strike. Plaintiff moves to strike Los Alamos's answer to the complaint. Los Alamos moves to strike plaintiff's Statement of Undisputed Facts in support of its motion for summary judgment against Los Alamos. The UR has moved to strike a surreply which plaintiff allegedly filed without leave of Court.

For the reasons that follow, the defendants' and UR's motions for summary judgment (Dkt. #56, #61, #66, and #75) are granted, and the complaint and cross claims are dismissed in their entirety. Plaintiff's motion for partial summary judgment against Los Alamos (Dkt. #63) is denied, and plaintiff's motion to strike Los Alamos's answer (Dkt. #65), Los Alamos's motion to strike plaintiff's statement of undisputed facts (Dkt. #80), and UR's motion to strike plaintiff's surreply (Dkt. #86) are denied as moot.

## DISCUSSION

Rule 56(c) provides that a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court's role in determining a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. When considering a motion for summary judgment, the Court must draw inferences from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587-88 (1986), *quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### I. Defendants' Motions for Summary Judgment

In order to establish his negligence claims, plaintiff must prove that for each defendant that it "owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate result of that breach." *King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997). Here, the initial and potentially dispositive question is whether, and to what extent, any of the defendants owed the plaintiff a duty of care.

Defendants and the UR argue that UR, and UR alone, bears the liability for plaintiff's injuries. Plaintiff has received substantial sums under UR's Workers Compensation policy, and will continue to do so. The UR employed both plaintiff and his supervisor Dr.Vladimir Glebov, the individual who asked plaintiff to make the pressure adjustment that resulted in his injuries. UR was solely responsible for the design, fabrication, installation, maintenance and use of the light pipe.

Plaintiff argues, however, that each of the "investigators" for the experiment that was taking place on August 6, 2008 were jointly and severally liable for his injuries. It is undisputed that none

of the investigators were permitted to, or attempted to, execute the experiment themselves: conducting the experiment was within the sole authority and control of the UR.

None of the investigators were present in the target bay where the OMEGA Laser was housed at the time of plaintiff's injuries, and none of the investigators had any interaction with plaintiff or any physical contact with, or control over, the light pipe. In fact, most of the investigators never even saw the light pipe in person before the accident. MIT "investigator" Johan Frenje was not even present at the OMEGA Laser Facility at the time of plaintiff's injury.

While conceding that the AWE and MIT investigators do not appear to have played any appreciable role or exercised any authority with regard to the safety of the experiment, plaintiff argues that Dr. Hermann, a Los Alamos employee and the first-listed "principal investigator" for the experiment, assumed a duty to plaintiff pursuant to several provisions of the UR's OMEGA Laser Facility Organization & Regulation Manual ("LFORM"), various Instructions of LLE, and the Principal Investigator Eligibility Policy ("PIEP").[1] Specifically, plaintiff alleges that PIEP required Dr. Herrmann to "use all reasonable efforts to comply with the . . . policies . . . [of the UR]," including the need to "qualify" the light pipe prior to its use. (Dkt. #63-6). LLE Instruction 7700 provides specific procedures that a principal investigator must follow to fully qualify new equipment (referred to at "diagnostics") for use, including acquisition, assembly, fit and function tests and qualification testing, during which the laser equipment is operated under the anticipated shot conditions, and evaluated. (Dkt. #63-8 at UR8971-UR8977).

However, plaintiff's interpretation of Instruction 7700 fails to consider a key fact: the light pipe was not "new equipment." It appears undisputed that the light pipe had already been in use at the LLE for over two years prior to plaintiff's injuries. The light pipe was installed and was

---

[1] Los Alamos disputes that the principal investigator on the subject experiment was Dr. Herrmann, and avers that the principal investigator responsible for the experiment was UR's Dr. Robert McCrory, and Director of the Laboratory for Laser Energetics. However, for purposes of this motion, construing all inferences in plaintiff's favor, the Court will assume *arguendo* that Dr. Herrmann was, as plaintiff contends, the principal investigator, as that term is defined in the PIEP.

shepherded through the beginning stages of the qualification process in 2005-2006, when the relevant principal investigator was the UR's Dr. Glebov.

In arguing that complete qualification (or re-qualification) of the light pipe should have been performed in 2008, plaintiff relies heavily on the UR's own investigation and Incident Report concerning his accident, which identified the "failure of management to comply with the [LFORM] that requires all new diagnostics to be fully qualified two weeks before the date of an experiment" as one of the causes. The fact that the supporting facts which follow in the investigative report – "that the light pipe's design, assembly and installation were insufficient and done by inexperienced and unqualified personnel" – occurred in 2005-2006 suggests that the investigators were referring to the *initial* qualification procedures by UR "management" as incomplete. (Dkt. #63-1, Exh. 16).

The investigative report thus appears to place the responsibility for any oversight squarely on UR "management" in 2005-2006 when the light pipe was installed, and there is no indication that any of the non-UR principal investigators for the subject experiment in 2008 were considered responsible for the accident (nor is there evidence anywhere in the record that Dr. Herrmann or any other non-UR investigator had any knowledge that the light pipe was not fully qualified). This conclusion appears to be consistent with the LFORM and PIEP, which contain no requirement that non-UR principal investigators, such as Dr. Herrmann, confirm, re-assess or repeat qualification procedures for diagnostics that have already been put into use by the UR. To the contrary, although plaintiff contends that the Court should look to the LFORM in determining the responsibilities of the various parties, the LFORM explicitly places the "overall responsibility for the safe operation of the Laser Facility" squarely on the Laser Facility Manager and Laboratory Safety Officer employed by the UR. (Dkt. #63-3 at UR218). Indeed, it appears undisputed that non-UR employees seeking to use a diagnostic have no practical means to question whether it has completed UR's qualification process: rather, in describing the proposed experiment on UR's Shot Request Form, a principal investigator is simply presented with a list of diagnostics that are represented by the UR

as cleared and available for use, from which they can make selections. When Dr. Herrmann completed the Shot Request Form for the subject experiment, that list included the light pipe.

Moreover, assuming *arguendo* that Dr. Herrmann *was* required to confirm whether qualification procedures had been fully followed in 2006 and/or to complete the qualification process if it had not already been finished, there is no evidence that by not doing so here, he enhanced the risk to plaintiff. It is undisputed that the direct cause of plaintiff's injuries was the faulty installation (e.g., the use of incorrect bolts, shorter and fewer in number than those specified for the bracket) in a support bracket for the light tube, which caused the bracket to give way, and to a lesser extent, improper installation of the pressure control system and use of an insufficiently-rated regulating valve. It is also undisputed that these defects dated back to the light tube's initial installation in July 2006 that would have been invisible to the naked eye without disassembling the light pipe, and there is no evidence that these components would have been expected to be uninstalled, removed, disassembled and inspected as part of the qualification process.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

I accordingly conclude that plaintiff cannot demonstrate that Los Alamos's Dr. Herrmann or any of the other defendants had any control over the installation, repair, maintenance, service, design, qualification (or lack thereof) or hands-on use of the light pipe, nor did any of the defendants supervise, direct or control plaintiff, or otherwise assume a duty of care toward him. Defendants' motions for summary judgment are granted.

## II. Plaintiff's Cross Motion for Partial Summary Judgment Against Los Alamos

Plaintiff also notes that two Los Alamos employees were members of the FASC, a 12-member committee made up of UR personnel and UR facility "users" from other institutions, which performs scheduling functions, reviews experimental proposals, and evaluates the availability and effectiveness of the facility's existing equipment and diagnostics. Plaintiff contends that the FASC

had the duty and opportunity to review the safety of the light pipe and recommend improvements, and did not.

However, as Los Alamos notes, the FASC does not make, and is not responsible for making, safety-related recommendations concerning diagnostics. As set forth in the LFORM, the FASC recommends improvements to existing laboratory capabilities, such as the development or acquisition of new diagnostics. (Dkt. #63-3 at UR104-105). Although the FASC's general responsibilities include "review[ing] experimental *proposals* for compatibility and safety" (Dkt. #63-3 at UR104) (emphasis added), there is no indication in the LFORM or elsewhere that the FASC has any authority or responsibility to physically examine or assess the safety (or qualification status) of diagnostics, particularly diagnostics that are already in use. The review of diagnostics safety is a component of the qualification process, which is undertaken solely by UR employees. Assuming *arguendo* that the FASC did have the power or responsibility to review safety issues with existing equipment, it is undisputed that the FASC has no power or authority to implement any changes whatsoever. Such power and control lies exclusively with the UR.

As such, I conclude that the members of the FASC neither had nor assumed a duty of care toward UR employees such as plaintiff. Accordingly, plaintiff's cross motion for partial summary judgment against Los Alamos is denied.

## III. Plaintiff's Motion to Strike Los Alamos's Answer

Plaintiff moves to strike Los Alamos's answer for failure to comply with a court order under Fed. R. Civ. Proc. 37(b). Specifically, he argues that Los Alamos has failed to produce certain discovery, allegedly ordered by Magistrate Judge Feldman when he ordered Los Alamos generally to respond to plaintiff's requests for admission.

Los Alamos contends that it did respond to the requests for admission, as ordered. Upon review of the evidence, I am convinced that Los Alamos has, to the extent practicable, complied with plaintiff's requests for responsive data, including but not limited to e-mails and electronic data.

Although plaintiff suggests that Los Alamos's alleged withholding of pertinent documents may have impaired his ability to oppose summary judgment, insofar as further discovery could better establish plaintiff's allegation that Dr. Herrmann was the "lead principal investigator" responsible for the subject experiment, such discovery would not change the outcome of the instant decision. As discussed in detail above, even assuming that Dr. Herrmann was the "lead" principal investigator for the subject experiment, neither his undisputed actions nor UR's policies and procedures render him liable for plaintiff's injuries. Plaintiff's motion to strike (Dkt. #65) is denied.

## IV. Los Alamos's Motion to Strike Plaintiff's Statement of Undisputed Facts

Los Alamos moves to strike plaintiff's statement of undisputed facts, because it fails to cite to the record, or rely on persons with first-hand knowledge, and includes a number of misleading "undisputed facts." In response, plaintiff has attempted to identify the source for each of the undisputed facts he alleges. In reply, Los Alamos argues that several of plaintiff's "undisputed facts" do not jibe with the materials that allegedly support them. (For example, plaintiff erroneously attributes certain statements by the UR to Los Alamos's Dr. Herrmann).

The Court has considered the documentary and testimonial evidence supporting each of the undisputed facts alleged by plaintiff, and to the extent that misstatements of that evidence have been identified, I observe that they were likely unintentional, and have disregarded them and deferred to the evidentiary "primary sources" instead in rendering the instant decision. As such, Los Alamos's motion to strike (Dkt. #80) is denied as moot.

## V. UR's Motion to Strike Plaintiff's Surreply

The UR moves to strike plaintiff's reply papers (Dkt. #72) as a surreply which was submitted without leave of court. While acknowledging that Dkt. #72 should not have been filed without leave of Court, I note that the Court's consideration of that document, or lack thereof, would not alter the

outcome of the instant motions in any case. The motion to strike (Dkt. #86) is accordingly denied as moot.

**CONCLUSION**

For the foregoing reasons, the defendants' and UR's motions for summary judgment (Dkt. #56, #61, #66, and #75) are granted, and the complaint and defendants' third party claims are dismissed in their entirety. Plaintiff's motion for partial summary judgment against Los Alamos (Dkt. #63) is denied, and plaintiff's motion to strike Los Alamos's answer (Dkt. #65), Los Alamos's motion to strike plaintiff's statement of undisputed facts (Dkt. #80), and UR's motion to strike plaintiff's surreply (Dkt. #86) are denied as moot. The Clerk is directed to close the case.

IT IS SO ORDERED.

DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
April 26, 2013.