UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

SAMUEL M. ROBERTS,

    Plaintiff,

        v.

LOS ALAMOS NATIONAL SECURITY, LLC,

    Defendant/Third-Party Plaintiff,

        v.

UNIVERSITY OF ROCHESTER,

    Third-Party Defendant.
───────────────────────────────

DECISION & ORDER
11-CV-6206

## Preliminary Statement

This lawsuit stems from injuries Samuel Roberts suffered while working at a laboratory at the University of Rochester. Mr. Roberts alleges that defendants acted negligently by failing to ensure a safe working environment and that, as a result, he suffered serious and permanent injuries. Defendants Los Alamos National Security, LLC and the University of Rochester deny responsibility for the accident.

Pending before the Court are Mr. Roberts' Motion to Compel (Docket # 128) and University of Rochester's Cross-Motion for a Protective Order (Docket # 131). Both relate to plaintiff's demand to depose Dr. Robert McCrory, the Vice President and Vice Provost of the University of Rochester.

## Relevant Facts

With the instant lawsuit, plaintiff seeks damages from defendant Los Alamos National Security ("Los Alamos") for injuries he sustained while working on a scientific experiment conducted by the Laboratory for Laser Energetics ("LLE") at the University of Rochester ("U of R"). See Am. Compl. (Docket # 8) ¶¶ 15, 17, 26-29. On August 6, 2008, the support structure of a High Yield Neutron Temporal Diagnostic ("HYNTD") detached and fell on Mr. Roberts' head and face. See id. Plaintiff alleges that the defendant acted negligently by failing to ensure a safe working environment; failing to take reasonable precautions to secure the HYNTD and its support structure to the personnel platform; and failing to ensure that the equipment used during the experiment was properly designed, constructed, and/or maintained for safe operation. Id. at ¶¶ 26-28. As a result of defendant's negligent acts and omissions, Mr. Roberts asserts that he suffered serious injuries, including a spinal fracture rendering him a quadriplegic, loss of an eye, multiple facial bone fractures, disfiguring facial scarring, severe pain, and permanent suffering. Id. at ¶ 29. In August 2011, after having been served a complaint by plaintiff, Los Alamos filed and served a third-party complaint seeking indemnification from U of R. See Third-Party Compl. (Docket # 10).

Plaintiff's current motion rests on his belief that Dr. McCrory possesses unique knowledge relevant to this case. Specifically, Mr. Roberts believes that Dr. McCrory wrote and reviewed LLE's Instruction 7700A, which contains rules for the qualification of diagnostics at the lab where the accident occurred. See Decl. of Louis J. Micca (Docket # 128-1) ¶¶ 3-4. As a result, Mr. Roberts asserts that Dr. McCrory can answer questions regarding the interpretation of the rules for qualification of LLE equipment – an issue plaintiff maintains is at the core of this case. Id. Moreover, Mr. Roberts claims that, in addition to being the Vice President of U of R, Dr. McCrory is the Project Director of LLE, where plaintiff worked at the time of the accident. Id. at ¶¶ 5-6. Thus, plaintiff believes that Dr. McCrory alone can provide information regarding the governance of the lab, the requirement to follow rules and regulations in the lab, the performance of his duties as Project Director, and the financial relationship between Los Alamos and U of R. Id. at ¶¶ 5-6. Plaintiff believes that obtaining information concerning the financial relationship between Los Alamos and U of R will allow him to establish that U of R has a financial incentive to prevent Mr. Roberts from obtaining a judgment against Los Alamos, an alleged source of LLE's funds. See id. at ¶ 6. Lastly, plaintiff notes that Dr. McCrory approved and signed the post-accident Incident Report,

3

allowing him to testify as to whether the report matched the facts elicited during the accident's investigation. Id. at ¶ 7.

In opposition, the U of R claims that deposing Dr. McCrory will not produce any relevant or unique information, noting that plaintiff has already deposed nine individuals with personal knowledge of the issues in this case. See Mem. in Supp. of Def.'s Cross-Mot. for a Protective Order (Docket # 131-4) 1-2. U of R asserts that every topic that plaintiff intends to cover in Dr. McCrory's deposition has already been addressed in the nine previous depositions. Id. at 2-3. Additionally, U of R asserts that Mr. Roberts' motion mischaracterizes the extent of Dr. McCrory's relevant knowledge. Id. at 2. According to the defense, Dr. McCrory did not write Instruction 7700A, has never been involved in the qualification of an experiment, was not involved in the planning of the experiment at the time of the accident, never secured funds from Los Alamos, and did not investigate or help prepare the Incident Report produced after Mr. Roberts' accident. Id.

After evaluating the parties' proposed motions, the Court suggested a possible resolution of this discovery dispute allowing a short deposition of Dr. McCrory to determine what relevant information he possessed. See Decl. of Louis J. Micca (Docket # 128-1) ¶ 10. The parties, however, could not agree on the scope of the deposition. See id. Thus, the parties filed

4

and served the two motions currently pending before the Court: (1) plaintiff's Motion to Compel (Docket # 128), seeking to compel the deposition of Dr. McCrory; and (2) defendant U of R's Cross-Motion for a Protective Order (Docket # 131), seeking to bar plaintiff from deposing Dr. McCrory, grant U of R's request for reasonable costs, and grant U of R leave to submit evidence of its reasonable costs.

## Discussion

<u>Deposition of Dr. McCrory</u>: Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The burden to establish good cause is placed on the party seeking protection." <u>In re Zyprexa Injunction</u>, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007). A moving party demonstrates good cause "when [they] show that disclosure will result in a clearly defined, specific and serious injury." <u>Id.</u> Conclusory statements or "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning," for example, are insufficient to show good cause. <u>Id.</u> Determining the permissible scope of discovery in a given lawsuit is necessarily fact specific. As the Supreme Court noted, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what

5

degree of protection is required" to prevent unreasonably burdensome discovery. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

In the Second Circuit, discovery becomes unreasonably burdensome where

> (1) [it] is cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive or (2) the burden or expense of the discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Pullano v. UBS/Paine Webber, Inc., No. 03 Civ. 6313, p. 4 (W.D.N.Y. Mar. 21, 2007), aff'd 2007 U.S. Dist. LEXIS 38857 (May 29, 2007)(citing Treppel v. Biovail Corp., No. 03 Civ. 3002, 2006 WL 468314, at *1-3 (S.D.N.Y. Feb. 28, 2006)). In Pullano, this Court barred the deposition of Mark Sutton, the President and CEO of defendant UBS/Paine Webber, Inc., because he had no personal knowledge of the case. Id. Noting that the plaintiff had already deposed numerous witnesses who were involved in the case and that Mr. Sutton was decidedly uninvolved with the issues first-hand, this Court found that there was no basis for deposing him. Id. (citing In re Ski Train Fire of November 11, 2000 Kaprun Austria, No. MDL 1428, 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006) and Treppel, 2006 WL 468314, at *3).

6

This Court's decision in <u>Pullano</u> is not an isolated one - courts in the Second Circuit routinely grant protective orders to bar depositions of high-ranking officials (known as "Apex" depositions) with no personal or unique knowledge of relevant facts. <u>See</u> <u>Milione v. City University of New York</u>, 950 F.Supp.2d 704, 714 (S.D.N.Y. 2013)(precluding the deposition of CUNY Chancellor who affirmed by affidavit that he had no personal knowledge of the litigation); <u>Alliance Indus. v. Longyear Holding, Inc.</u>, No. 08 Civ. 490, 2010 WL 4323071, at *4 (W.D.N.Y. Mar. 19, 2010)(noting that an "Apex" deposition would be needlessly cumulative and barring plaintiff's request to depose defendant's president); <u>Diesel Props S.r.l. v. Greystone Bus. Credit II LLC</u>, No. 07 Civ. 9580, 2008 WL 5099957, at *1 (S.D.N.Y. Dec. 3, 2008)("[R]edundant depositions should be avoided, and senior executives should be deposed only if they possess unique personal knowledge related to the relevant issues in the case."); <u>In re Ski Train Fire</u>, 2006 WL 1328259, at *10 ("Courts disfavor requiring the depositions of senior executives unless they have personal knowledge of relevant facts or some unique knowledge that is relevant to the action."); <u>Harris v. Computer Assocs. Int'l Inc.</u>, 204 F.R.D. 44, 45-47 (E.D.N.Y. 2001)("When a vice president can contribute nothing more than a lower level employee, good cause is shown to not take the deposition."). Thus, if the party seeking a protective order can

demonstrate that a proposed senior-official deponent has no personal or unique knowledge of the relevant facts, courts in this Circuit agree that the party may obtain that order. Malletier v. Dooney & Bourke, Inc., No. 04 Civ. 5316, 2006 WL 3476735, at *12 (S.D.N.Y. Nov. 30, 2006).

Here, U of R has established the good cause necessary for the Court to issue a protective order against much of plaintiff's motion to compel. It is essentially undisputed that Dr. McCrory is a high-ranking official at U of R for the purposes of an "Apex" deposition.[1] Thus, the analysis turns to whether Dr. McCrory - an "Apex" deponent - has unique or personal knowledge of the relevant facts in this case.

Plaintiff asserts that Dr. McCrory possesses unique knowledge about three main topics: (1) the Instruction 7700A; (2) the securing of funds for LLE and, ostensibly, the financial relationship between U of R and Los Alamos; and (3) the internal investigation into Mr. Roberts' accident. Having reviewed the papers submitted and after hearing the arguments of counsel, the Court determines that a deposition covering the first two topics - but not the third - would qualify as unreasonably burdensome to U of R. The Court addresses each in turn below.

---

[1] During the hearing for the instant motions, plaintiff's counsel objected to this concession. However, counsel's objection is belied by his response papers, which are bereft of a single argument against the "Apex" deposition defense forwarded by defendant.

8

1. <u>The Instruction 7700A</u>: Plaintiff believes that Dr. McCrory wrote and reviewed LLE's Instruction 7700A and, as a result, asserts that Dr. McCrory can answer questions about interpreting this rule to qualify LLE diagnostics. <u>See</u> Decl. of Louis J. Micca (Docket # 128-1) ¶¶ 3-4. During the hearing, plaintiff's counsel acknowledged that someone other than Dr. McCrory may have written the rule, but nevertheless claims that Dr. McCrory was in charge of implementing and promulgating it. When asked why these questions – namely, who authored Instruction 7700A and who implemented it – could not be adequately answered through an interrogatory or the deposition of a lower-ranking official, plaintiff insisted that Dr. McCrory alone, by virtue of his role at U of R and LLE, can explain the enforcement of Instruction 7700A. Plaintiff makes these claims despite Dr. McCrory's affidavit, in which he denies authoring Instruction 7700A and denies taking part in the qualification of any diagnostics pursuant to Instruction 7700A. Aff. of Robert L. McCrory (Docket # 128-3) ¶¶ 12-14. Put differently, Instruction 7700A devises a policy that Dr. McCrory neither wrote nor interpreted, but merely signed off on.

The defendant has made clear that Dr. McCrory, as Vice President and Vice Provost of U of R and CEO of LLE, can contribute nothing more to discovery on the 7700A instructions than lower-level employees plaintiff has already deposed.

9

Indeed, it seems apparent that a primary reason for seeking to depose Dr. McCrory is born out of Dr. McCrory's high-level positions at LLE and U of R and plaintiff's belief that, by virtue of those positions, Dr. McCrory must know something. This is precisely the sort of deposition that the "Apex" deposition rule is designed to prohibit: one used "as a form of leverage or harassment [that forces] senior officials to spend time in preparing for and attending a deposition when they have little or no pertinent testimony to offer." See Pullano, No. 03 Civ. 6313 at 4 (quoting Malletier, 2006 WL 3476735, at *12). Because Dr. McCrory has not been shown to have any unique or first-hand knowledge of the 7700A instruction that would be relevant to plaintiff's claims, his deposition on this topic is unnecessary.

    2. The Securing of Funds for LLE: Plaintiff similarly believes that Dr. McCrory has unique and personal knowledge regarding the financial relationship between U of R and Los Alamos and, more pointedly, the fallout between the two that might occur if Mr. Roberts obtains a judgment against Los Alamos. See Decl. of William Clauss (Docket # 133) ¶¶ 15-17. The basis for plaintiff's claim in this issue appears to be speculative at best, and its implication - that the U of R has a motive to lie in the instant litigation - unfounded. Moreover, Dr. McCrory flatly denied that a judgment against Los Alamos

10

would jeopardize the future funding of LLE and, by extension, U of R. See Aff. of Robert L. McCrory (Docket # 131-3) ¶ 5. Though Dr. McCrory acknowledges that he is "LLE's primary interface" with the government regarding funding, he maintains that there is no connection between the present litigation and LLE's future funding. See id. at ¶¶ 3-6. Further, plaintiff's speculation that there exists a "very strong financial incentive" for U of R to make sure Los Alamos "avoid[s] judgment", see Clauss Decl. at ¶ 15, is belied by the fact that the U of R has not hesitated to claim that it was the negligent and careless conduct of Los Alamos which actually caused plaintiff's injuries. See Exhibit "H" annexed to Clauss Decl. For these reasons, plaintiff's motion to compel the deposition of Dr. McCrory on this topic is denied.

3. The Accident's Incident Report: Finally, plaintiff argues that Dr. McCrory is uniquely qualified to comment on the validity of the facts and materials set forth in the post-accident Investigation Report – a report he ultimately reviewed and approved. See Decl. of Louis J. Micca (Docket # 128-1) ¶ 7. As the Court indicated at the hearing, this is a topic for which Dr. McCrory may have personal knowledge and a unique perspective that is unavailable from other witnesses. After the accident in which plaintiff was injured, and pursuant to U of R policy, Dr. McCrory convened and instructed a committee charged with

11

investigating the incident. Although Dr. McCrory avers he did not personally participate in the interviews that were conducted as part of the investigative process, a draft of the report was submitted to him for review and approval. Dr. McCrory concedes that it was "not customary" for him to review and approve such reports, but he was asked to be personally involved in the issuance of this report "in light of the severity of Mr. Robert's injuries." See Aff. of Robert L. McCrory (Docket # 128-3) ¶ 19. While plaintiff's counsel acknowledged that he deposed individuals on the investigation committee, he alleges that several of them testified that the report was incorrect.

Based on the foregoing, the Court finds that Dr. McCrory's personal involvement in the creation of the Incident Report is a relevant topic for inquiry at a deposition. Dr. McCrory convened the investigation committee, instructed them as to their duties and, contrary to customary practice, reviewed and approved their findings. As to the post-accident investigation and the creation and issuance of the investigative report, Dr. McCrory's involvement was both personal and unique. Accordingly, plaintiff's motion to compel his deposition on this topic is granted. Such deposition is limited to a maximum of two hours.

Sanctions: With respect to defendant's request for sanctions under Rule 37, it should be noted that the imposition of sanctions is a "harsh remed[y]" to be rarely used. See

<u>Update Art Inc. v. Modiin Publishing Ltd.</u>, 843 F.2d 67, 71 (2d Cir. 1988). In light of the fact that plaintiff's motion to compel was granted in part, the Court finds that imposition of sanctions is not appropriate or justified and therefore is denied.

## Conclusion

Plaintiff's Motion to Compel and defendant's Cross-Motion for Protective Order are **granted in part and denied in part**. Defendant's motion for sanctions is denied.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:    November 23, 2015
          Rochester, New York